1   ANDREW R. MUEHLBAUER, ESQ.
    Nevada Bar No. 10161
2   **MUEHLBAUER LAW OFFICE, LTD.**
    7915 West Sahara Ave., Suite 104
3   Las Vegas, Nevada 89117
    Telephone: (702) 330-4505
4   Facsimile: (702) 825-0141
    andrew@mlolegal.com
5
    Charles H. Linehan, Esq. (pro hac vice forthcoming)
6   **GLANCY PRONGAY & MURRAY LLP**
    1925 Century Park East, Suite 2100
7   Los Angeles, California 90067
    Telephone: (310) 201-9150
8   Facsimile: (310) 201-9160
    Email: clinehan@glancylaw.com
9
    *Counsel for Plaintiff Marilyn Ezzes*
10
                    **UNITED STATES DISTRICT COURT**
11                      **DISTRICT OF NEVADA**

12

13  MARILYN EZZES, Individually and on Behalf     Case No.
    of All Others Similarly Situated,
14                                                **CLASS ACTION COMPLAINT FOR**
                    Plaintiff,                    **VIOLATIONS OF THE FEDERAL**
15                                                **SECURITIES LAWS**
            v.
16
    VINTAGE WINE ESTATES, INC.,
17  PATRICK RONEY, KATHERINE
    DEVILLERS, and KRISTINA JOHNSTON,
18
                    Defendants.
19

20

21

22

23

24

25

26

27

28

Plaintiff Marilyn Ezzes ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Vintage Wine Estates, Inc. ("Vintage Wine" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Vintage Wine; and (c) review of other publicly available information concerning Vintage Wine.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Vintage Wine securities between October 13, 2021 and September 13, 2022, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Vintage Wine is a vintner company that sells wines and spirits.

3. On September 13, 2022, Vintage Wine announced its financial results for fiscal year 2022. In its press release, the Company stated that it "recorded $19.1 million in non-cash inventory adjustments identified through efforts t[o] improve and strengthen inventory management, processes and reporting." The Company also stated that "the [fourth] quarter included approximately $6.8 million in overhead burden that was related to the first and second quarter of fiscal 2022, but not material to the respective periods."

4. On this news, the Company's share price fell $2.23, or 40.3%, to close at $3.30 per share on September 14, 2022, on unusually high trading volume.

5. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that, due to a material weakness related to its inventory controls and procedures, the Company lacked a reasonable basis to report inventory metrics; (2) that the Company understated its overhead burden in certain

quarters, thereby overstating its adjusted EBITDA; (3) that, as a result of the foregoing, Vintage Wine was reasonably likely to incur significant charges to restate prior reporting; and (4) that, as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

6.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

8.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

9.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

10.     Plaintiff Marilyn Ezzes, as set forth in the accompanying certification, incorporated by reference herein, purchased Vintage Wine securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

11.     Defendant Vintage Wine is incorporated under the laws of Nevada with its principal executive offices located in Incline Village, Nevada. Vintage Wine's common stock trade on the

2

1  NASDAQ exchange under the symbol "VWE," and its warrants to purchase common stock trade

2  under the symbol "VWEWW."

3        12.    Defendant Patrick Roney ("Roney") was the Company's Chief Executive Officer

4  ("CEO") at all relevant times.

5        13.    Defendant Katherine DeVillers ("DeVillers") was the Company's Chief Financial

6  Officer ("CFO") from June 2021 to March 7, 2022. Since March 7, 2022, DeVillers has served as

7  the Company's Executive Vice President of Acquisition Integrations.

8        14.    Defendant Kristina Johnston ("Johnston") has been the Company's Chief Financial

9  Officer ("CFO") since March 7, 2022.

10        15.    Defendants Roney, DeVillers, and Johnston (collectively the "Individual

11 Defendants"), because of their positions with the Company, possessed the power and authority to

12 control the contents of the Company's reports to the SEC, press releases and presentations to

13 securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The

14 Individual Defendants were provided with copies of the Company's reports and press releases

15 alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and

16 opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and

17 access to material non-public information available to them, the Individual Defendants knew that

18 the adverse facts specified herein had not been disclosed to, and were being concealed from, the

19 public, and that the positive representations which were being made were then materially false

20 and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

21                              **SUBSTANTIVE ALLEGATIONS**

22                                       **Background**

23        16.    Vintage Wine is a vintner company that sells wines and spirits.

3

**Materially False and Misleading**

**Statements Issued During the Class Period**

17.     The Class Period begins on October 13, 2021.[1] On that day, Vintage Wine filed its Form 10-K with the SEC for the period ended June 30, 2021 (the "2021 10-K"). Therein, the Company stated:

> Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, ***as a result of a material weakness in our internal control over financial reporting and discussed below, our disclosure controls and procedures were not effective as of June 30, 2021.*** Management's conclusion was based on discoveries and observations made during the fiscal 2021 audit.
>
> \*          \*          \*
>
> ***Material Weakness***
>
> ***Despite not conducting a formal assessment regarding internal control over financial reporting, management identified the material weakness described below during the fiscal 2021 audit.*** A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis.
>
> Control Activity—***The Company did not have effective business processes and controls to perform reconciliations of certain account balances related to inventory, and the received not invoiced and cellar accruals, on a regular basis.***
>
> The Company is actively pursuing resources necessary to remediate this deficiency in an effort to remediate this material weakness. We have engaged third party consultants to assist with business processes and control activities related to inventory and account reconciliations.

18.     The 2021 10-K reported the following about inventory:

Inventory consists of the following at June 30, 2021 and June 30, 2020:

| (in thousands) | June 30, | | | |
| --- | --- | --- | --- | --- |
| | | 2021 | | 2020 |
| Bulk wine and spirits | $ | 119,333 | $ | 124,944 |
| Bottled wine and spirits | | 90,083 | | 68,684 |
| Bottling and packaging supplies | | 10,482 | | 11,798 |
| Nonwine inventory | | 1,247 | | 1,032 |
| Total inventories | $ | 221,145 | $ | 206,458 |

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

During the year ended June 30, 2021, we recognized impairment of inventory of $3.3 million associated with inventory damage caused by the 2020 Northern California wildfires.

During the year ended June 30, 2020, we recognized an impairment of inventory of approximately $3.9 million associated with inventory damage caused by Northern California fires. In December 2020, we entered into a settlement agreement for $4.8 million in connection with the damaged inventory.

19.     On November 15, 2021, the Company published a press release announcing its financial results for the first quarter of fiscal 2022. It stated, in relevant part:

Operating expenses increased $3.3 million, or 23.6%, to $17.3 million. Higher selling, general and administrative expenses reflected approximately $1.8 million of incremental costs related to infrastructure required to be a public company, as well as the continued increased costs of labor, warehousing, freight, and insurance.

*          *          *

**Adjusted EBITDA increased to $11.8 million,** or 21.1% of net revenue, from $11.7 million, or 21.7% of net revenue, reflecting strong growth in DTC.

20.     On November 15, 2021, Vintage Wine filed its Form 10-Q for the period ended September 30, 2021 (the "1Q22 10-Q"), affirming the previously reported financial results. It stated that the previously disclosed material weakness had not been remediated.

21.     The 1Q22 10-Q reported the following about inventory:

A summary of inventory at September 30, 2021 and June 30, 2021 is as follows:

| (in thousands) | September 30, 2021 | | June 30, 2021 | |
|---|---|---|---|---|
| Bulk wine and spirits | $ | 103,857 | $ | 119,333 |
| Bottled wine and spirits | | 106,482 | | 90,083 |
| Bottling and packaging supplies | | 13,991 | | 10,482 |
| Nonwine inventory | | 1,486 | | 1,247 |
| Total inventories | $ | 225,816 | $ | 221,145 |

For the three months ended September 30, 2021 and 2020, the Company **did not recognize any impairment of inventory.**

22.     On February 14, 2022, the Company published a press release announcing its financial results for the second quarter of fiscal 2022. It stated, in relevant part:

Operating expenses increased $13.6 million, or 111.7%, to $25.8 million. Higher selling, general and administrative expenses reflected approximately $1.8 million of higher professional fees primarily related to public company costs, as well as investments in marketing and talent. In addition, variable selling expenses, which increase with volume and are typically approximately 10% of revenue, were $3.7 million in the quarter. Incremental SG&A from the acquisitions was $2.3 million and does not yet represent expected synergies.

5

1          *          *          *

***Adjusted EBITDA increased 137% to $20.2 million, or 24.2% of net revenue, from $8.6 million, or 13.6% of net revenue***, reflecting the overall strong performance of VWE in the quarter.

23.     On February 14, 2022, Vintage Wine filed its Form 10-Q for the period ended December 31, 2021 (the "2Q22 10-Q"), affirming the previously reported financial results. It stated that the previously disclosed material weakness had not been remediated.

24.     The 2Q22 10-Q reported the following about inventory:

Inventory consists of the following:

| (in thousands) | December 31, 2021 | | June 30, 2021 | |
|---|---|---|---|---|
| Bulk wine, spirits and cider | $ | 110,202 | $ | 119,333 |
| Bottled wine, spirits and cider | | 102,740 | | 90,083 |
| Bottling and packaging supplies | | 7,751 | | 10,482 |
| Nonwine inventory | | 1,648 | | 1,247 |
| Total inventories | $ | 222,341 | $ | 221,145 |

For the three months ended December 31, 2021 and 2020, respectively, the Company recognized impairment of inventory of zero and $3.3 million. ***For the six months ended December 31, 2021 and 2020, respectively, the Company recognized impairment of inventory of zero and $3.3 million.***

25.     On May 16, 2022, the Company published a press release announcing its financial results for the third quarter of fiscal 2022. It stated, in relevant part:

Income from operations during the quarter increased $0.7 million, or 380.4%, to $0.9 million in the third quarter of fiscal 2022. Operating margin for the quarter was 1.1%, compared with 0.4% in the prior-year period. Operating income and margin were impacted by the acquisitions, which have not yet been fully integrated, as well as inefficiencies related to labor, logistics and supply chain challenges.

*          *          *

***Adjusted EBITDA increased 38.2% to $14.0 million, from $10.1 million, on higher revenue.*** As a percentage of net revenue, adjusted EBITDA was 17.7% compared with 21.6% in the prior-year period as the combination of certain acquisitions not being fully integrated and higher costs not yet covered by pricing actions.

26.     On May 16, 2022, Vintage Wine filed its Form 10-Q for the period ended March 31, 2022 (the "3Q22 10-Q"), affirming the previously reported financial results. It stated that the previously disclosed material weakness had not been remediated.

27.     The 3Q22 10-Q reported the following about inventory:

Inventory consists of the following:

| (in thousands) | March 31, 2022 | | June 30, 2021 | |
|---|---|---|---|---|
| Bulk wine, spirits and cider | $ | 109,408 | $ | 119,333 |
| Bottled wine, spirits and cider | | 89,808 | | 90,083 |
| Bottling and packaging supplies | | 20,526 | | 10,482 |
| Nonwine inventory | | 1,522 | | 1,247 |
| Total inventories | $ | 221,264 | $ | 221,145 |

For the three months ended March 31, 2022 and 2021, respectively, the Company recognized no impairment of inventory. For the nine months ended March 31, 2022 and 2021, respectively, the Company recognized impairment of inventory of zero and $3.3 million.

28.    The above statements identified in ¶¶ 17-27 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that, due to a material weakness related to its inventory controls and procedures, the Company lacked a reasonable basis to report inventory metrics; (2) that the Company understated its overhead burden in certain quarters, thereby overstating its adjusted EBITDA; (3) that, as a result of the foregoing, Vintage Wine was reasonably likely to incur significant charges to restate prior reporting; and (4) that, as a result of the foregoing, Defendant's positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

29.    On September 13, 2022, Vintage Wine issued a press release announcing disappointing fourth quarter and full year fiscal 2022 financial results. Therein, the Company revealed it recorded $19.1 million in non-cash inventory adjustments which were "identified through efforts to improve and strengthen inventory management, processes, and reporting." The Company also stated that "the [fourth] quarter included approximately $6.8 million in overhead burden that was related to the first and second quarter of fiscal 2022, but not material to the respective periods." The press release stated, in relevant part:

Gross profit was down $11.1 million to $38 thousand reflecting adjustments identified through processes implemented to improve internal controls. Specifically, the Company recorded $19.1 million in non-cash inventory adjustments identified through efforts t[o] improve and strengthen inventory management, processes and reporting. This included physical inventory count adjustments of $12.4 million, $3.7 million related to the establishment of inventory reserves and $3.0 million related to the impact of additional remediation efforts. *In addition, the quarter included approximately $6.8 million in overhead burden that was related to the first and second quarter of fiscal 2022, but not material to the respective periods*. Also impacting gross profit were inefficiencies created by supply chain constraints and

inflation. These impacts were partially offset by gross profit contributions of the acquisitions and improved pricing in DTC.

Kristina Johnston, Chief Financial Officer, commented, "Since joining VWE in March, I have been impressed by this team of very dedicated people who are intent upon executing our strategy to drive growth and deliver on our mission to provide the finest quality wines and create incredible customer experiences. We are now diligently applying this focus and intensity in our financial processes in order to remediate our material weakness. We have instituted improved accountability metrics, updated assumptions for overhead absorption processes better reflecting the current business and created greater discipline around timeliness in reporting throughout the organization. ***The implementation of more stringent processes drove the adjustments in inventory, but we expect this will also drive greater transparency and better future results for the Company***."

30.     On this news, the Company's share price fell $2.23, or 40.3%, to close at $3.30 per share on September 14, 2022, on unusually high trading volume.

### CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Vintage Wine securities between October 13, 2021 and September 13, 2022, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Vintage Wine's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Vintage Wine shares were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Vintage Wine or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

35.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.   Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Vintage Wine; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

36.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.   Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.   There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

37.     The market for Vintage Wine's securities was open, well-developed and efficient at all relevant times.   As a result of these materially false and/or misleading statements, and/or failures to disclose, Vintage Wine's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Vintage Wine's securities relying upon the integrity of the market price of the Company's securities and market information relating to Vintage Wine, and have been damaged thereby.

38.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Vintage Wine's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Vintage Wine's business, operations, and prospects as alleged herein.

39.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Vintage Wine's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

40.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

41.     During the Class Period, Plaintiff and the Class purchased Vintage Wine's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

42.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were

materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Vintage Wine, their control over, and/or receipt and/or modification of Vintage Wine's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Vintage Wine, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

43.     The market for Vintage Wine's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Vintage Wine's securities traded at artificially inflated prices during the Class Period.  On January 3, 2022, the Company's share price closed at a Class Period high of $12.07 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Vintage Wine's securities and market information relating to Vintage Wine, and have been damaged thereby.

44.     During the Class Period, the artificial inflation of Vintage Wine's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Vintage Wine's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Vintage Wine and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

45.     At all relevant times, the market for Vintage Wine's securities was an efficient market for the following reasons, among others:

(a)     Vintage Wine shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Vintage Wine filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Vintage Wine regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Vintage Wine was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

46.     As a result of the foregoing, the market for Vintage Wine's securities promptly digested current information regarding Vintage Wine from all publicly available sources and reflected such information in Vintage Wine's share price. Under these circumstances, all purchasers of Vintage Wine's securities during the Class Period suffered similar injury through their purchase of Vintage Wine's securities at artificially inflated prices and a presumption of reliance applies.

47.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.   Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of

the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

<strong><u>NO SAFE HARBOR</u></strong>

48.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Vintage Wine who knew that the statement was false when made.

<strong><u>FIRST CLAIM</u></strong>

<strong>Violation of Section 10(b) of The Exchange Act and</strong>

<strong>Rule 10b-5 Promulgated Thereunder</strong>

<strong><u>Against All Defendants</u></strong>

49.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Vintage Wine's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

13

51.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Vintage Wine's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

52.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Vintage Wine's financial well-being and prospects, as specified herein.

53.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Vintage Wine's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Vintage Wine and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

54.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management

1   team, internal reports and other data and information about the Company's finances, operations, and

2   sales at all relevant times; and (iv) each of these defendants was aware of the Company's

3   dissemination of information to the investing public which they knew and/or recklessly disregarded

4   was materially false and misleading.

5       55.     Defendants had actual knowledge of the misrepresentations and/or omissions of

6   material facts set forth herein, or acted with reckless disregard for the truth in that they failed to

7   ascertain and to disclose such facts, even though such facts were available to them. Such defendants'

8   material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose

9   and effect of concealing Vintage Wine's financial well-being and prospects from the investing

10  public and supporting the artificially inflated price of its securities. As demonstrated by Defendants'

11  overstatements and/or misstatements of the Company's business, operations, financial well-being,

12  and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the

13  misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by

14  deliberately refraining from taking those steps necessary to discover whether those statements were

15  false or misleading.

16      56.     As a result of the dissemination of the materially false and/or misleading information

17  and/or failure to disclose material facts, as set forth above, the market price of Vintage Wine's

18  securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices

19  of the Company's securities were artificially inflated, and relying directly or indirectly on the false

20  and misleading statements made by Defendants, or upon the integrity of the market in which the

21  securities trades, and/or in the absence of material adverse information that was known to or

22  recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during

23  the Class Period, Plaintiff and the other members of the Class acquired Vintage Wine's securities

24  during the Class Period at artificially high prices and were damaged thereby.

25      57.     At the time of said misrepresentations and/or omissions, Plaintiff and other members

26  of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other

27  members of the Class and the marketplace known the truth regarding the problems that Vintage

28  Wine was experiencing, which were not disclosed by Defendants, Plaintiff and other members of

the Class would not have purchased or otherwise acquired their Vintage Wine securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

58.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

60.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

61.     Individual Defendants acted as controlling persons of Vintage Wine within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the

particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Vintage Wine and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 14, 2022             By:   /s/ Andrew R. Muehlbauer
                                          ANDREW R. MUEHLBAUER, ESQ.
                                          Nevada Bar No. 10161
                                          **MUEHLBAUER LAW OFFICE, LTD.**
                                          7915 West Sahara Ave., Suite 104
                                          Las Vegas, Nevada 89117
                                          Telephone: (702) 330-4505
                                          Facsimile: (702) 825-0141
                                          andrew@mlolegal.com

                                          **GLANCY PRONGAY & MURRAY LLP**
                                          Charles H. Linehan (pro hac vice forthcoming)

17

1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff Marilyn Ezzes*