John C. Tang (*Pro Hac Vice*)
Dennis F. Murphy, Jr. (*Pro Hac Vice*)
JONES DAY
555 California Street, 26th Floor
San Francisco, California  94104
jctang@jonesday.com
dennismurphy@jonesday.com
Telephone:    +1.415.626.3939
Facsimile:     +1.415.875.5700

Michael J. Gayan (#11135)
Katrina Stark (#16006)
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV  89169
m.gayan@kempjones.com
k.stark@kempjones.com
Telephone:    +1.702.385.6000
Facsimile:     +1.702.385.6001

Attorneys for Defendants
VINTAGE WINE ESTATES, INC., PATRICK
RONEY, KATHERINE DEVILLERS, and KRISTINA
JOHNSTON

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MARILYN EZZES, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

VINTAGE WINE ESTATES, INC., PATRICK RONEY, KATHERINE DEVILLERS, and KRISTINA JOHNSTON,

Defendants.

Case No. 2:22-cv-01915-GMN-DJA

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 1

I.   THERE IS NO "PRESUMPTION AGAINST DISMISSAL" FOR A SECURITIES FRAUD COMPLAINT THAT FAILS TO PROPERLY ALLEGE SCIENTER. ................ 1

II.  PLAINTIFFS FAIL TO ALLEGE PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER. .......................................................... 3

   A.   The Unnamed Former Employees Have No Personal Knowledge of Any Individual Defendants' Mental State. .............................................................. 3

      1.   Three of the Four Former Employees Lack Personal Knowledge and Reliability. ........................................................................................ 3

      2.   None of the Former Employees Speaks to Defendants' Mental State. ................... 4

   B.   The Core Operations Doctrine Does Not Apply Because There Are No Specific Allegations About Defendants' Knowledge of the Relevant Facts. ............................... 6

   C.   The Personnel Changes Are Not Indicative of Fraud. ..................................... 8

   D.   Failing to Follow Accounting Guidelines Does Not Support an Inference of Scienter. ........................................................................................ 9

   E.   Plaintiffs' Allegations Are Not Sufficient Alone Or In Combination. ..................... 12

III. PLAINTIFFS' DERIVATIVE CONTROLLING PERSON CLAIM FAILS ..................... 12

CONCLUSION ............................................................................................................ 12

Reply in Supp. of Mot. to Dismiss Am. Class
Action Compl. 2:22-cv-01915-GMN-DJA

# TABLE OF AUTHORITIES

**Page**

Cases

*Cheng v. Activision Blizzard, Inc.*,
2023 WL 2136787 (C.D. Cal. Jan. 22, 2023) ....................................................5

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ..........................................................................2

*Gammel v. Hewlett-Packard Co.*,
905 F. Supp. 2d 1052 (C.D. Cal. 2012) ...........................................................7

*Glazer v. Cap. Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ............................................................................7

*In re China Educ. Alliance Sec. Litig.*,
2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) ...................................................2

*In re Commtouch Software Ltd. Sec. Litig.*,
2002 WL 31417998 (N.D. Cal. July 24, 2002) ...............................................10

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ...........................................................2

*In re Crocs, Inc. Sec. Litig.*,
774 F. Supp. 2d 1122 (D. Colo. 2011) ...................................................5, 8, 10

*In re Dothill Sys. Corp. Sec. Litig.*,
2009 WL 734296 (S.D. Cal. Mar. 18, 2009) ....................................................7

*In re Downey Sec. Litig.*,
2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ................................................11

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..........................................................11

*In re Immersion Corp. Sec. Litig.*,
2011 WL 6303389 (N.D. Cal. Dec. 16, 2011) ..................................................7

*In re Intel Corp. Sec. Litig.*,
2023 WL 2767779 (N.D. Cal. Mar. 31, 2023) ..................................................5

*In re Loudeye Corp. Sec. Litig.*,
2007 WL 2404626 (W.D. Wash. Aug. 17, 2007) ...........................................11

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
26 F. Supp. 3d 278 (S.D.N.Y. 2014) ................................................................8

*In re Maxwell Techs., Inc. Sec. Litig.*,
18 F. Supp. 3d 1023 (S.D. Cal. 2014) ..............................................................5

Reply in Supp. of Mot. to Dismiss Am. Class
Action Compl. 2:22-cv-01915-GMN-DJA

**TABLE OF AUTHORITIES**
(continued)

**Page**

*In re Medicis Pharm. Corp. Sec. Litig.*,
 2010 WL 3154863 (D. Ariz. Aug. 9, 2010)...................................................................10

*In re Medicis Pharm. Corp. Sec. Litig.*,
 689 F. Supp. 2d 1192 (D. Ariz. 2009)........................................................................6

*In re Molycorp, Inc. Sec. Litig.*,
 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) .............................................................5

*In re Paysign, Inc. Sec. Litig.*,
 2023 WL 1868476 (D. Nev. Feb. 9, 2023) ..................................................................4

*In re Quality Sys., Inc. Sec. Litig.*,
 865 F.3d 1130 (9th Cir. 2017)...................................................................................3

*In re Read-Rite Corp. Sec. Litig.*,
 335 F.3d 843 (9th Cir. 2003).....................................................................................6

*In re Silicon Graphics Sec. Litig.*,
 183 F.3d 970 (9th Cir. 1999).....................................................................................2

*In re Silicon Storage Tech., Inc*,
 2006 WL 648683 (N.D. Cal. Mar. 10, 2006)..............................................................5

*In re UTStar.com, Inc. Sec. Litig.*,
 617 F. Supp. 2d 964 (N.D. Cal. 2009) ........................................................................9

*In re Worlds of Wonder Sec. Litig.*,
 35 F.3d 1407 (9th Cir. 1994).....................................................................................10

*Jaeger v. Zillow Grp., Inc.*,
 2022 WL 17486297 (W.D. Wash. Dec. 7, 2022) ........................................................7

*Limantour v. Cray Inc.*,
 432 F. Supp. 2d 1129 (W.D. Wash. 2006)..................................................................11

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
 2017 WL 5635424 (C.D. Cal. Aug. 20, 2017)............................................................11

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*,
 --- F.4th ----, 2023 WL 5347887 (10th Cir. Aug. 21, 2023)...............................5, 7

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
 540 F.3d 1049 (9th Cir. 2008)...................................................................................4

*New York State Teachers' Ret. Sys. v. Fremont Gen. Corp*,
 2009 WL 3112574 (C.D. Cal. Sept. 25, 2009) ...........................................................2

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*,
 50 F. Supp. 3d 1328 (C.D. Cal. 2014) .................................................................10, 11

Reply in Supp. of Mot. to Dismiss Am. Class
Action Compl. 2:22-cv-02926-GMN-DJA

## TABLE OF AUTHORITIES
(continued)

**Page**

*Ricker v. Zoo Ent., Inc.*,
534 F. App'x 495 (6th Cir. 2013) ................................................................8

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ......................................................................8

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ...................................................................6, 8

*Scheller v. Nutanix, Inc.*,
450 F. Supp. 3d 1024 (N.D. Cal. 2020) ......................................................9

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ......................................................................2

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ...................................................................................2

*United States v. City of Redwood City*,
640 F.2d 963 (9th Cir. 1981) ......................................................................2

*Waterford Twp. Police v. Mattel, Inc.*,
321 F. Supp. 3d 1133 (C.D. Cal. 2018) ......................................................9

*Welgus v. TriNet Grp., Inc.*,
2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ..............................................11

*Zamir v. Bridgepoint Educ., Inc.*,
274 F. Supp. 3d 1057 (S.D. Cal. 2017) .....................................................11

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ..............................................................passim

Statutes

15 U.S.C. § 78u-4 ............................................................................................ 1

Rules

Fed. R. Civ. P. 8 ..............................................................................................2

Fed. R. Civ. P. 9 ..............................................................................................2

Reply in Supp. of Mot. to Dismiss Am. Class
Action Compl. 2:22-cv-02926-GMN-DJA

**INTRODUCTION**

The Private Securities Litigation Reform Act's heightened scienter pleading requirement is intended to weed out complaints that are predicated on mismanagement or growing pains rather than fraud – just like this one.  It's not a close call.  In a complaint based primarily on allegations attributed to four unnamed former employees, there is not a single allegation of any Defendant acknowledging that Vintage Wine Estates, Inc. was overvaluing its inventory or understating the cost of goods sold and refusing to disclose that to the public.  Similarly, there is not a single allegation of a report or meeting in which someone informed Defendants of a material divergence between the Company's financial statements and the reality on the ground.

Instead, the Amended Complaint spins a narrative of what Plaintiffs themselves repeatedly call "mismanagement."  Vintage Wine was a private company.  When it went public, and had to comply with more demanding control requirements,  it immediately identified a material weakness in internal controls and disclosed that weakness to investors.  Vintage Wine then initiated necessary remediation efforts and, during those efforts, identified inventory that had to be written off.  In their opposition, Plaintiffs do not even attempt to claim any of the Individual Defendants intended to defraud investors.  Instead, Plaintiffs' fallback argument is to claim that Defendants' conduct amounts to deliberate recklessness.  Not so.

Deliberate recklessness requires a *knowing* or *obvious* risk of an extreme departure from the standards of ordinary care.  Here, while Vintage Wine identified a weakness in *process* in its internal controls, there is not a single allegation suggesting Defendants had access to information that would have made it obvious the company's *financial statements themselves* were false.  The Amended Complaint must be dismissed.

**ARGUMENT**

**I.    THERE IS NO "PRESUMPTION AGAINST DISMISSAL" FOR A SECURITIES FRAUD COMPLAINT THAT FAILS TO PROPERLY ALLEGE SCIENTER.**

Defendants' motion explained that the Amended Complaint should be dismissed because Plaintiffs fail to "state with particularity facts giving rise to a strong inference" that Defendants acted with scienter, as required by the PSLRA.  15 U.S.C. § 78u-4(b)(2)(A).  In seeking to avoid

dismissal, Plaintiffs erroneously argue that dismissal here is proper "only under extraordinary circumstances." ECF No. 43 at 17:2-3 (quoting *In re China Educ. Alliance Sec. Litig.*, 2011 WL 4978483, at *3 (C.D. Cal. Oct. 11, 2011)). But the lone case cited by Plaintiffs' authority for that proposition—*United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1981)—involved application of the notice pleading requirements for *non*-fraud claims under Rule 8, not the higher pleading standards of Rule 9(b) or the stringent requirements of the PSLRA.

The PSLRA "ups the ante" by requiring that the allegations give rise to a *strong* inference that the defendant acted with scienter. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016). A securities fraud complaint may survive dismissal "only if a reasonable person would deem the inference of scienter cogent and **at least as compelling** as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007) (emphasis added). This standard "'is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it.'" *Schueneman*, 840 F.3d at 705 (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). To overcome the PSLRA's heightened scienter standard, Plaintiffs "must plead, in great detail, facts that constitute strong circumstantial evidence of **deliberately reckless or conscious misconduct**." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (emphasis added).

Plaintiffs do not, and cannot, argue that Defendants *intended* to deceive investors. Instead, Plaintiffs' fallback argument is that Defendants' conduct constitutes scienter because it was "severely reckless." ECF No. 43 at 9:6. That's the wrong standard. Scienter under the PSLRA is a mental state that covers *deliberate* (not severe) recklessness. *See Schueneman*, 840 F.3d at 705. The term "deliberate" is important: it connotes "a form of intentional or knowing misconduct." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Deliberate recklessness does not involve "simple, or even inexcusable negligence." *Id.* Indeed, the standard is not even satisfied by "loose [and] reckless mismanagement" (*In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1094 (N.D. Cal. 2005)), or by "profoundly misguided corporate mismanagement" (*New York State Teachers' Ret. Sys. v. Fremont Gen. Corp*, 2009 WL 3112574, at *7 (C.D. Cal. Sept. 25, 2009)). What is required, rather, is "an extreme departure from the standards of ordinary

care … which presents a danger of misleading buyers or sellers *that is either known to the defendant or so obvious that the actor must have been aware of it*." *Zucco*, 552 F.3d at 991 (emphasis added).   In effect, Plaintiffs seek to transform what Plaintiffs themselves call Defendants' "mismanagement" into intentional or knowing misconduct.   The Amended Complaint's allegations do not even come close to meeting the applicable pleading standard.

## II.   PLAINTIFFS FAIL TO ALLEGE PARTICULARIZED FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.

Plaintiffs argue that scienter can be inferred on four grounds:  (1) from allegations attributed to four unnamed former employees; (2) under the core operations doctrine; (3) from the timing of employment transitions by two Defendants; and (4) because Vintage Wine did not follow certain accounting guidelines.  Applicable case law and the PSLRA foreclose each of these theories.

### A.   The Unnamed Former Employees Have No Personal Knowledge of Any Individual Defendants' Mental State.

Plaintiffs' primary argument for scienter is based upon allegations attributed to four unnamed former employees.  None, however, has personal knowledge about the mental state of any Individual Defendant.  The theory of Plaintiffs' Amended Complaint is that Defendants overstated Vintage Wine's inventory during the fiscal year that ended June 30, 2022 by failing to account for inventory "that was damaged and/or destroyed" (ECF No. 36 ¶¶ 84-101) and understated the cost of goods sold for the quarter ended September 30, 2022 (*id.* ¶¶ 102-105).  To be probative of scienter, therefore, Plaintiffs must identify "particularized allegations" from the former employees that demonstrate the Individual Defendants "had actual access to the disputed information" – *i.e.*, had access to facts demonstrating that Vintage Wine was improperly valuing damaged or destroyed inventory, and understating costs.  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017).  Plaintiffs' allegations regarding the former employees do not even come close to meeting the requirements here.

#### 1.   Three of the Four Former Employees Lack Personal Knowledge and Reliability.

To begin, three of the four former employees do not have sufficient "reliability and personal knowledge" of the events they report; that should end the analysis as to them.  *In re Paysign, Inc.*

Reply in Supp. of Mot. to Dismiss Am. Class
Action Compl. 2:22-cv-01915-GMN-DJA

*Sec. Litig.*, 2023 WL 1868476, at *4 (D. Nev. Feb. 9, 2023).  FE1, FE2, and FE4 all allege they learned, through hearsay statements, that certain wine inventory was unavailable in the warehouse. *See* ECF No. 36 ¶¶ 42, 44-46, 48-51.  While a hearsay statement is "not automatically precluded from consideration to support allegations of scienter," it "may indicate that a confidential witnesses' report is not sufficiently reliable, plausible or coherent to warrant further consideration." *Zucco*, 552 F.3d at 998 n.4.  Here, there is no allegation that FE1, FE2, or FE4 ever visited any warehouse, let alone interacted with anyone responsible for the accounting of Vintage Wine's inventory. Repeating haphazard hearsay statements that a particular pallet or brand of wine was not available (out of 3 million cases annually) does not confer any of these former employees with personal knowledge about the accounting treatment of Vintage Wine's inventory.

**2.    None of the Former Employees Speaks to Defendants' Mental State.**

More importantly, the former employees' allegations simply "do not convey information sufficient to support the strong inference of scienter that the PSLRA requires." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1069 n.13 (9th Cir. 2008).  Fundamentally, they do not speak to the Individual Defendants' mental state.  The Amended Complaint contains just two weak allegations—two—from the former employees that even attempt to do this.  Plaintiffs allege that "FE 1's *understanding* is that Vintage Wine's upper management, including the Individual Defendants, were 'hyper aware' of the problems with its inventory management before taking the Company public."  ECF No. 36 ¶ 54.  And Plaintiffs allege that, according to FE1, unidentified "senior officers knew of the problem" relating to cost of goods sold.  *Id.* ¶ 58.  As explained in Defendants' motion, these fuzzy and "generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter." *Zucco*, 552 F.3d at 998.

Rather than dispute this point, Plaintiffs shift gears.  Plaintiffs argue that, regardless of what the Individual Defendants knew, scienter may be pled via the doctrine of *respondeat superior*. Therefore (according to Plaintiffs), it is sufficient to allege merely that non-defendant managers were aware of inventory issues and acknowledged problems with calculating the cost of goods sold. ECF No. 43 at 19:27-21:2.  Plaintiffs' reliance on *respondeat superior*, however, is dead wrong. The purported scienter of non-defendants "cannot be imputed to the Company as Plaintiffs do not

- 4 -

allege [they] made the statements at issue." *Cheng v. Activision Blizzard, Inc.*, 2023 WL 2136787, at *9 n.5 (C.D. Cal. Jan. 22, 2023). Plaintiffs' "claims are based upon statements by the individual defendants and in official filings signed by the individual defendants"; accordingly, Plaintiffs must prove "scienter as to the individuals who were responsible for the statements." *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1032 (S.D. Cal. 2014). Plaintiffs must also "plead facts showing scienter **as to each defendant individually**." *In re Silicon Storage Tech., Inc*, 2006 WL 648683, at *21-22 (N.D. Cal. Mar. 10, 2006) (emphasis added).

None of the former employees' allegations demonstrate that *anyone*, let alone the Individual Defendants, misstated Vintage Wine's inventory value and cost of goods sold knowingly or with deliberate recklessness. Plaintiffs argue that "high-level executives" knew of "significant problems with inventory management" because FE2 (a regional sales manager) had "discussions with his supervisors" about unidentified "inventory problems." ECF No. 43 at 20:14-18 (discussing ECF No. 36 ¶ 54). But those alleged discussions are utterly insufficient to support an inference of scienter because Plaintiffs do not allege they ever reached the ears of the Individual Defendants; the missing connection is fatal. *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, --- F.4th ----, 2023 WL 5347887, at *4 (10th Cir. Aug. 21, 2023). As Defendants have explained, cases like *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122 (D. Colo. 2011) and *In re Molycorp, Inc. Sec. Litig.*, 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015), establish that allegations regarding improperly managed inventory sound in mismanagement, not fraud. Defendants pointed to these cases in their motion; Plaintiffs ignored them, presumably because they cannot rebut them.

No more compelling is Plaintiffs' argument that Defendants were deliberately reckless because, according to FE1, certain non-defendant managers complained about the Company's formula for estimating the cost of goods sold. ECF No. 43 at 20:20-21:2 (discussing ECF No. 36 ¶¶ 57-61). There is no indication any of these complaints "made [their] way" to the Individual Defendants. *In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *23 (N.D. Cal. Mar. 31, 2023); *see also Meitav Dash*, 2023 WL 5347887, at *4. Even if they had, FE1's allegation "demonstrate[s] only that there was some disagreement within the corporation over its" costs calculations, not that

- 5 -

Vintage Wine's "management was deliberately reckless" in how it estimated costs. *Zucco*, 552 F.3d at 998; *see also In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1211 (D. Ariz. 2009) (allegations that "there was some disagreement and even concern about … accounting methodology" do not establish individual defendants were deliberately reckless). There is no allegation, for example, that Vintage Wine's auditors "counseled against" the company's original cost estimates or that the Individual Defendants "admitted or [were] aware that" their cost calculations were "improper." *Zucco*, 552 F.3d at 999.

That conclusion is all the stronger given that Plaintiffs' cost of goods narrative is predicated on a former employee who alleges the cost calculations were "screwed up" because they generated a cost of goods sold that was too *high*. *See* ECF No. 36 ¶¶ 56, 59-61. In reality, Vintage Wine made a disclosure on February 5, 2023 because it had *under*stated the cost of goods sold by $2.9 million—*i.e.*, the calculations were too *low*. *See id.* ¶ 71. Plaintiffs try to downplay this inconsistency, claiming it "obfuscate[s] the issue." ECF No. 43 at 23 n.8. In fact, however, the discrepancy proves that merely because there's a lack of consensus about a particular cost calculation, does not mean the CFO is on notice of (let alone perpetrated) a fraud. After all, those divergent opinions may be wrong (as FE1 apparently was).

**B.    The Core Operations Doctrine Does Not Apply Because There Are No Specific Allegations About Defendants' Knowledge of the Relevant Facts.**

Plaintiffs fare no better by invoking the core operations doctrine. Generally, a plaintiff may not simply allege "facts critical to a business's core operations or an important transaction generally are so apparent that their knowledge may be attributed to the company and its key officers." *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003) (quotation and emphasis omitted). The Ninth Circuit has identified two narrow exceptions to this general rule. Neither one applies here. *See S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008).

**1.** The first exception permits allegations about "management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements" to create a strong inference of scienter, but only when these allegations are buttressed with "***detailed and specific*** allegations about management's exposure to factual information within

Reply in Supp. of Mot. to Dismiss Am. Class
Action Compl. 2:22-cv-01915-GMN-DJA

the company" that contradicts the challenged statements. *Id.* at 785 (emphasis added); *Jaeger v. Zillow Grp., Inc.*, 2022 WL 17486297, at *8 (W.D. Wash. Dec. 7, 2022).

The Amended Complaint contains *zero* detailed allegations to suggest that Defendants Roney, DeVillers, or Johnston had access to factual information contradicting the Company's inventory and cost valuations. The Amended Complaint contains just two paragraphs (out of 155) that purport to show the Individual Defendants "knew or should have known the truth concerning the financial statements." ECF No. 36 ¶¶ 108-109. Neither paragraph references Defendants DeVillers or Johnston at all. And the unremarkable allegation that Defendant Roney was a "hands on" CEO is not sufficient to trigger the core operations doctrine. *See Glazer v. Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 746 (9th Cir. 2008). Contrary to Plaintiffs' argument (*see* ECF No. 43 at 22 n.7), it does not matter that Roney held himself out as being "hands on." *See, e.g.*, *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1078 (C.D. Cal. 2012) ("Apotheker's characterization of his management style as 'hands on' does not trigger the core operations inference."); *In re Immersion Corp. Sec. Litig.*, 2011 WL 6303389, at *6 (N.D. Cal. Dec. 16, 2011) (allegation that defendant stated he was "very hands-on" insufficient).

Plaintiffs alternatively argue that the core operations doctrine applies because the Individual Defendants "had access to information about the lack of adequate staff" in the accounting department. ECF No. 43 at 23:4-5. This argument is wrong on both the facts and the law. It is factually wrong because, despite Plaintiffs' allegation that Vintage Wine's accounting department was "plagued by frequent turnover, short staffing, and inadequate training" (ECF No. 36 ¶ 67), the Amended Complaint contains no specific allegations that the Individual Defendants *knew* the personnel they had were inadequate and recklessly disregarded that fact. *Meitav Dash*, 2023 WL 5347887, at *3 (to infer scienter, access to information must be combined with "particularized allegations that, if proven, would show a speaker's knowledge or reckless disregard of contradictory information"). It is legally wrong because "[s]imple awareness of the factors which led to the inaccuracies"—such as inadequate staffing—does not equate to knowledge that the financial statements are themselves false. *In re Dothill Sys. Corp. Sec. Litig.*, 2009 WL 734296, at *5 (S.D. Cal. Mar. 18, 2009). Stated another way, the fact that a lean accounting department

- 7 -

ultimately "proved ineffective" does not establish scienter, because "'[f]raud by hindsight is not actionable.'" *Id.* at *8 (quoting *Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001)).

Plaintiffs' argument that the core operations doctrine applies because the Individual Defendants had access to information about the lack of adequate accounting "procedures" is meritless for the same reasons. *See* ECF No. 43 at 23:4-5. Plaintiffs cite two paragraphs (ECF No. 36 ¶¶ 64-65), which allege only that Defendant DeVillers had authority to approve certain significant expenditures, and that Defendant Johnston began tracking the cost of producing products through a communal spreadsheet. The latter fact—that Defendant Johnston sought to institute an improved tracking system to track costs—"suggest[s] a motive to remedy problems, not to conceal them." *Crocs*, 774 F. Supp. 2d at 1147. Moreover, the question is not whether DeVillers and Johnston, as CFO, had access to certain inputs being used to calculate costs; the question is whether they had access to information revealing that the cost estimates were *wrong* as an accounting matter. Neither allegation speaks to the issue.

**2.** The second exception for invoking the core operations is where the nature of the relevant fact is of such prominence that it would be literally "absurd" to suggest management lacked knowledge. *Killinger*, 542 F.3d at 786. Plaintiffs argue that Vintage Wine identified a material weakness in internal controls, so it would have been "absurd" for the Individual Defendants not to know the Company's financial statements were inaccurate. ECF No. 43 at 23:17-20. But courts have rejected this exact argument: the most plausible inference is that Defendants "were in a constant game of 'Catch up'—acknowledging the company's material weaknesses and disclosing their continued efforts to resolve them, only to learn of yet more. While this pattern supports an inference of potentially poor accounting management, it does not support fraud." *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 297–98 (S.D.N.Y. 2014); *see also Ricker v. Zoo Ent., Inc.*, 534 F. App'x 495, 501 (6th Cir. 2013) (company's prior disclosure of material weakness "does not reasonably lead and certainly does not strongly lead to the inference that [Zoo] knew or should have known that the original financial statements were false").

**C.    The Personnel Changes Are Not Indicative of Fraud.**

Plaintiffs next argue that scienter can be inferred from the "abrupt removal" of Roney and

- 8 -

Reply in Supp. of Mot. to Dismiss Am. Class
Action Compl. 2:22-cv-01915-GMN-DJA

DeVillers. ECF No. 43 at 24:6, 24:17. Plaintiffs' argument misstates the Amended Complaint. The Amended Complaint does not, and cannot, allege that either Roney or DeVillers was removed. There is a difference between terminations, on the one hand, and voluntary resignations, on the other. *Scheller v. Nutanix, Inc.*, 450 F. Supp. 3d 1024, 1042 (N.D. Cal. 2020). The Amended Complaint alleges that Roney "elected to transition" from CEO to Chairman of the Board because the role changed significantly with the company going public, taking Roney away from what he enjoyed. ECF No. 36 ¶ 74. While Plaintiffs express contempt for this explanation, claiming it "strains all credulity," caselaw is uniform on this point: transitioning to a continuing role at the company is inconsistent with a finding that Roney was fired for conducting a fraudulent securities scheme. *Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1155 (C.D. Cal. 2018) (citing cases). Plaintiffs do not cite a single case that found an analogous transition supported an inference of scienter.[1]

Precedent likewise contradicts Plaintiffs' argument that scienter can be inferred because DeVillers transitioned from CFO to Executive Vice President and then left the company "right before the restatement and the need for remedial actions was disclosed." ECF No. 43 at 24:16-20. Again, the transition to another role weighs *against* scienter. And where a resignation occurs slightly before the defendant issues a restatement, the plaintiff, to adequately plead scienter, must allege facts refuting the reasonable assumption that a resignation occurred as a result of the restatement's issuance itself. *Zucco*, 552 F.3d at 1002. Plaintiffs plead *nothing* about DeVillers' resignation, such as whether "[s]he left to pursue other opportunities." *Id.* Thus, the fact of DeVillers' resignation "cannot support [Plaintiffs'] allegations of scienter." *Id.*

**D. Failing to Follow Accounting Guidelines Does Not Support an Inference of Scienter.**

Fourth, and finally, Plaintiffs argue that scienter should be inferred because they allege GAAP violations. But to rely on purported violations of GAAP, securities fraud plaintiffs must plead facts demonstrating that the defendants *knew* of the relevant principles and *knew* how the

---

[1] Instead, Plaintiffs cite a case where the defendant resigned at the same time her company revealed that SEC staff recommended the SEC file a civil injunctive action against her for fraud. *See In re UTStar.com, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-76 (N.D. Cal. 2009).

Reply in Supp. of Mot. to Dismiss Am. Class
Action Compl. 2:22-cv-01915-GMN-DJA

company was interpreting them; additionally, they must plead facts explaining why applying an incorrect interpretation was so unreasonable or so obviously wrong that it gives rise to a cogent inference of deliberate wrongdoing. *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328, 1361 (C.D. Cal. 2014). Plaintiffs plead no facts "demonstrating that defendants knew of the principles or knew they were being incorrectly interpreted and applied." *Id.* Instead, Plaintiffs purport to identify these four so-called "red flags" – none of which has merit.

**1.** Based purely on attorney argument, Plaintiffs declare that inventory accounting principles for wine distributors are "basic and straight-forward," so scienter can be inferred. ECF No. 43 at 26:9-11. But "[a] plaintiff … cannot merely point at a GAAP principle and contend that a correct interpretation was simple or obvious." *In re Medicis Pharm. Corp. Sec. Litig.*, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010). And, in fact, precedent recognizes that decisions about write-downs of inventory, as occurred here, are *not* straightforward, because they "involve the exercise of subjective judgments that do not lend themselves to allegations of securities fraud." *Crocs*, 774 F. Supp. 2d at 1150-51 (discussing cases).

**2.** Citing no authority, Plaintiffs next argue that scienter can be inferred from GAAP violations because the Company's stock price declined 40.3% and 27.6% upon disclosure. ECF No. 43 at 27:3-4. This argument erroneously conflates two different concepts. Some courts treat the size and scope of an earnings restatement as evidence of scienter where its magnitude either enhances the suspiciousness of the transaction at issue, or makes the overall fraud glaringly conspicuous. *See, e.g., In re Commtouch Software Ltd. Sec. Litig.*, 2002 WL 31417998, at *9 (N.D. Cal. July 24, 2002). At most, however, a drop in stock price following a disclosure suggests that the market considered the disclosed information important; the market's judgment of a particular item's importance does not bear on what any defendant might have known about it. If anything, the absence of any allegation that the Individual Defendants sold shares before the stock drop— and thus "ended up reaping the same large losses as did" other shareholders—sharply cuts against any inference in scienter. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 (9th Cir. 1994).

**3.** Next, Plaintiffs try to bootstrap the alleged GAAP violation to Vintage Wine's disclosure of its material weakness in internal control over financial reporting relating to the process and

Reply in Supp. of Mot. to Dismiss Am. Class Action Compl. 2:22-cv-01915-GMN-DJA

controls surrounding inventory.  But mere allegations that Vintage Wine "had deficient internal controls are insufficient to give rise to a strong inference of scienter." *IXIA*, 50 F. Supp. 3d at 1364. "Presumably every company that issues a financial restatement because of GAAP errors will cite as a reason lack of effective controls." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007).   That internal controls were inadequate "is perhaps an indication of incompetence, but incompetence, even gross incompetence, is no basis for a securities fraud claim." *In re Loudeye Corp. Sec. Litig.*, 2007 WL 2404626, at *7 (W.D. Wash. Aug. 17, 2007).

**4.**   For the same reason, courts in the Ninth Circuit "give[] no weight to … allegations concerning Defendants' false Sarbanes–Oxley certifications either individually or in the Court's holistic analysis." *Zamir v. Bridgepoint Educ., Inc.*, 274 F. Supp. 3d 1057, 1072 (S.D. Cal. 2017). If simply alleging that an individual defendants' signature appearing on a SOX certification created a strong inference of scienter, "scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA." *In re Downey Sec. Litig.*, 2009 WL 2767670, at *9 (C.D. Cal. Aug. 21, 2009).

SOX certifications can support an inference of scienter where the defendants "had actual knowledge of their false or misleading nature or were deliberately reckless in issuing such statements at the time." *Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1160 (W.D. Wash. 2006). That is not the case here.  Plaintiffs' argument that it was reckless to sign SOX certifications when Defendants knew the Company had internal control deficiencies makes no sense.  ECF No. 43 at 27:27-28.  Defendants certified that the information contained in Vintage Wine's filings presented "in all material respects, the financial condition and results of operations of the Company." *See, e.g.*, ECF No. 36 ¶ 92.  Those same filings *disclosed* that Vintage Wine had a material weakness in internal controls that it was seeking to remediate.  It is thus hard to understand how Plaintiffs can contend that Defendants "signed the SOX certifications while aware of any error." *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at *9 (N.D. Cal. Jan. 17, 2017); *see also M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635424, at *14 (C.D. Cal. Aug. 20, 2017) (SOX certifications insufficient to establish scienter where company disclosed material weakness related to acquiring

- 11 -

new companies and later reduced estimates due to acquisition).

**E.    Plaintiffs' Allegations Are Not Sufficient Alone Or In Combination.**

Each of Plaintiffs' allegations, considered alone, is insufficient to establish scienter. Plaintiffs argue that when considered holistically, the whole is greater than the sum of its parts. Here it is not.  At bottom, Plaintiffs paint a picture of a private company that, when transitioning into a public company, identified a material weakness in internal controls and responsibly disclosed and promptly went about remediating that weakness.  Those remediation efforts included bringing in senior managers with greater experience with public companies, while transitioning prior management to new roles where they could continue serving the company.  Contrary to Plaintiffs' narrative, Defendants did not turn a blind eye to these issues and mechanically certify financials; instead, the Individual Defendants adopted new processes to increase transparency and accuracy (which later identified additional issues that were in turn disclosed and became the focus of remediation).  This is the opposite of a scheme to defraud.  Even assuming some mistakes over inventory might be inferred at the warehouse level, such ground-level "mismanagement" (to use Plaintiffs' own word) does not come close to meeting the PSLRA's heightened pleading standard for scienter.  Particularly here, where there is no allegation any Defendant sought to profit or had any other reason to engage in the purported scheme, and where the Company was consistently open with investors about its challenges, any assertion of fraud is completely misplaced.

**III. PLAINTIFFS' DERIVATIVE CONTROLLING PERSON CLAIM FAILS.**

Because Plaintiffs have not pled a predicate section 10(b) claim, Plaintiffs' derivative section 20(a) claim also must fail.  *Zucco*, 552 F.3d at 990.

**CONCLUSION**

Plaintiffs took a second bite at the apple with their Amended Complaint.   But it fares no better than their first complaint.  The Court should dismiss the Amended Complaint with prejudice.

Dated:  September 25, 2023

KEMP JONES, LLP

By: */s/ Michael J. Gayan*

Michael J. Gayan, Esq., Bar No. 11135
Katrina Stark, Esq., Bar No. 16006
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

JONES DAY
John C. Tang, Esq., *Pro Hac Vice*
Dennis F. Murphy, Jr., Esq., *Pro Hac Vice*
555 California Street, 26th Floor
San Francisco, California 94104

Attorneys for Defendants
VINTAGE WINE ESTATES, INC., PATRICK
RONEY, KATHERINE DEVILLERS, and
KRISTINA JOHNSTON

- 13 -

**PROOF OF SERVICE**

I hereby certify that on the 25th day of September, 2023, I served a true and correct copy of the foregoing DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT via the United States District Court's CM/EMF electronic filing system to all parties on the e-service list.


/s/ Ali Lott
An employee of Kemp Jones, LLP