John C. Tang (*Pro Hac Vice*)
JCTang@jonesday.com
Dennis F. Murphy, Jr. (*Pro Hac Vice*)
dennismurphy@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:     +1.415.626.3939
Facsimile:     +1.415.875.5700

Michael J. Gayan (#11135)
m.gayan@kempjones.com
Katrina Stark (#16006)
k.stark@kempjones.com
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV  89169
Telephone:     +1.702.385.6000
Facsimile:     +1.702.385.6001

Attorneys for Defendants
VINTAGE WINE ESTATES, INC., PATRICK
RONEY, KATHERINE DEVILLERS, and KRISTINA
JOHNSTON

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARILYN EZZES, Individually and on Behalf of All Other Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VINTAGE WINE ESTATES, INC., PATRICK RONEY, KATHERINE DEVILLERS, and KRISTINA JOHNSTON,<br><br>Defendants. | Case No. 2:22-cv-01915-GMN-DJA<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Vintage Wine Estates, Inc., Patrick Roney, Katherine DeVillers, and Kristina Johnston (collectively, "Defendants") hereby move the Court for an order under Federal Rule of Civil Procedure 12 dismissing the Second Consolidated Amended Class Action Complaint. The motion is made on the ground that the Second Consolidated Amended Class Action Complaint fails to allege scienter with particularity, as required by the Private Securities Litigation Reform Act. The motion is based on the Notice of Motion, the Memorandum of Points and Authorities in support of this Motion, the concurrently filed Declaration of John C. Tang and exhibits attached thereto, the complete files and records in this action, oral argument of counsel, and such other and further matters as the Court may consider.

Dated: May 10, 2024

KEMP JONES, LLP

By: /s/ Michael Gayan

Michael Gayan, Bar No. 11135
Katrina Stark, Bar No. 16006
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169

JONES DAY
John C. Tang, *Pro Hac Vice*
Dennis F. Murphy, Jr., *Pro Hac Vice*
555 California Street, 26th Floor
San Francisco, California 94104

Attorneys for Defendants
VINTAGE WINE ESTATES, INC.,
PATRICK RONEY, KATHERINE
DEVILLERS, and KRISTINA
JOHNSTON

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    A.   Vintage Wine Identifies and Promptly Discloses a Material Weakness on September 29, 2021, Before the Class Period. ............................................................ 2

    B.   Between October 2021 and November 2022, Vintage Wine Updates Investors on its Efforts to Remediate the Material Weakness. ................................................... 3

    C.   First Alleged Corrective Disclosure: After Conducting an End-of-Year Physical Count, Vintage Wine Records an Adjustment to Non-Cash Inventory on September 13, 2022. ................................................................................................... 4

    D.   Second Alleged Corrective Disclosure:  On February 8, 2023, Vintage Wine Discloses an Accounting Error Relating to the Classification and Timing of Recording Certain Costs. ............................................................................................ 4

    E.   Procedural History. .......................................................................................................... 5

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ......................................................................................................................... 8

I.    THE AMENDED COMPLAINT FAILS TO PLEAD A CLAIM FOR SECURITIES FRAUD BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER. ........................................................................ 8

    A.   As With the Prior Complaint, the Statements of Alleged Anonymous Former Employees Fail to Establish Scienter. .......................................................................... 8

        1.   (*Same As Before*) Former Employee 1: None Of FE 1's Statements Link to a Single Named Defendant. ......................................................................... 9

        2.   (*Same as Before*) Former Employee 2: FE 2 Does Not Allege that Any Purported Concerns Were Relayed to Any Named Defendant. ...................... 10

        3.   (*Same as Before*) Former Employee 3:  FE 3 Fails to Establish That Any Defendant Had Access to and Disregarded Contradictory Information. ............... 11

        4.   (*Same as Before*) Former Employee 4: FE 4 Does Not Allege That He Was Ever Involved in Inventorying. ...................................................................... 13

        5.   (*Newly Added*) Former Employee 5: FE 5 Does Not Explain Any Connection Between Issues With Inventory Software and the Company's Financial Statements, or What Specific Information Was Conveyed to Defendants. ............................................................................................................... 13

        6.   (*Newly Added*) Former Employee 6:  FE 6 Does Not Allege that Any Purported Complaints Were Ever Relayed to Any Defendant. ....................... 15

        7.   The FE Statements Do Not Raise a Strong Inference of Scienter When Considered Holistically. .......................................................................................... 16

**TABLE OF CONTENTS**
(continued)

Page

B. The Court Correctly Rejected Plaintiff's Remaining Scienter Theories, Which Remain Unchanged in All Relevant Respects from the Prior Complaint.................... 19

    1. Plaintiffs' Reliance on the "Core Operations Doctrine" is Misplaced. ................. 19

        a. There Are No Specific Allegations About Defendants' Knowledge of the Relevant Facts. ................................................................................ 19

        b. The Nature of the Relevant Facts Are Not of Such Prominence That it Would Be "Absurd" to Suggest Management Lacked Knowledge. .............. 20

    2. Roney's Transition to His Present Role and DeVillers' Departure Do Not Support an Inference of Scienter. ....................................................................... 21

    3. Failing to Follow Accounting Guidelines Does Not Support an Inference of Scienter. ...................................................................................................... 22

II. PLAINTIFFS' DERIVATIVE CONTROLLING PERSON CLAIM SHOULD BE DISMISSED. .......................................................................................................... 24

III. FURTHER LEAVE TO AMEND SHOULD BE DENIED. ............................................... 24

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

Cases

*Abrams v. Baker Hughes Inc.*,
292 F.3d 424 (5th Cir. 2002)............................................................................... 15

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
827 F.3d 1229 (10th Cir. 2016)............................................................................ 10

*Benson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008)................................................................................ 21

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017)................................................................................ 12

*Curry v. Yelp Inc.*,
875 F.3d 1219 (9th Cir. 2017)................................................................................ 6

*Doyun Kim v. Advanced Micro Devices, Inc.*,
2019 WL 2232545 (N.D. Cal. May 23, 2019) ..................................................... 20

*DSAM Glob. Value Fund v. Altris Software, Inc.*,
288 F.3d 385 (9th Cir. 2002)................................................................................ 22

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ............................................................................................... 7

*Ferris v. Wynn Resorts Ltd.*,
462 F. Supp. 2d 1101 (D. Nev. 2020) .................................................................. 24

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002).................................................................................. 7

*In re Crocs, Inc. Sec. Litig.*,
774 F. Supp. 2d 1122 (D. Colo. 2011) ................................................ 11, 17, 18, 23

*In re Magnum Hunter Resources Corp. Securities Litigation*,
26 F. Supp. 3d 278 (S.D.N.Y. 2014)..................................................................... 21

*In re Medicis Pharm. Corp. Sec. Litig.*,
689 F. Supp. 2d 1192 (D. Ariz. 2009) .................................................................. 19

*In re Metawave Commc'ns Corp. Sec. Litig.*,
298 F. Supp. 2d 1056 (W.D. Wash. 2003)............................................................ 15

*In re Molycorp. Inc. Sec. Litig.*,
2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ................................................. 18, 23

*In re PetSmart Sec. Litig.*,
61 F. Supp. 2d 982 (D. Ariz. 1999)....................................................................... 18

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

**TABLE OF AUTHORITIES**
(continued)

Page

*In re PMC-Sierra, Inc. Derivative Litig.*,
  2008 WL 2024888 (N.D. Cal. May 8, 2008) ................................................................ 7

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ...................................................................................... 7

*In re Silicon Storage Tech., Inc*,
  2006 WL 648683 (N.D. Cal. Mar. 10, 2006) ............................................................. 7

*In re Solarcity Corp. Sec. Litig.*,
  274 F. Supp. 3d 972 (N.D. Cal. 2017) ...................................................................... 20

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...................................................................................... 3

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) .................................................................................. 19

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
  518 F. Supp. 3d 772 (S.D.N.Y. 2021) ...................................................................... 14

*McGovney v. Aerohive Networks, Inc.*,
  2019 WL 8137143 (N.D. Cal. Aug. 7, 2019) ........................................................... 20

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*,
  79 F.4th 1209 (10th Cir. 2023) ........................................................................... 12, 18

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ......................................................................... 9, 16, 24

*Nathanson v. Polycom, Inc.*,
  87 F. Supp. 3d 966 (N.D. Cal. 2015) ........................................................................ 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) .............................................................................. 19, 20

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ...................................................................................... 7

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776K (9th Cir. 2008) .................................................................................. 19

*Santa Fe Indus., Inc. v. Green*,
  430 U.S. 462 (1977) .................................................................................................. 23

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) ...................................................................................... 7

*Sgarlata v. PayPal Holdings, Inc.*,
  409 F. Supp. 3d 846 (N.D. Cal. 2019) ...................................................................... 16

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

**TABLE OF AUTHORITIES**
(continued)

Page

*Shenwick v. Twitter, Inc.*,
   282 F. Supp. 3d 1115 (N.D. Cal. 2017) ................................................................ 16

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
   552 U.S. 148 (2008) ................................................................................................ 6

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................................. 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .......................................................................................... 7, 23

*Waterford Twp. Police v. Mattel, Inc.*,
   321 F. Supp. 3d 1133 (C.D. Cal. 2018) ................................................................ 22

*Weiss v. Amkor Tech., Inc.*,
   527 F. Supp. 2d 938 (D. Ariz. 2007) .................................................................... 17

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ........................................................................... passim

Statutes

15 U.S.C. § 78t ...................................................................................................... 24

15 U.S.C. § 78u-4 .................................................................................................... 7

Rules

Fed. R. Civ. P. 9 ...................................................................................................... 6

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

**INTRODUCTION**

This case is about a young, fast-growing company's growing pains, not fraud. Vintage Wine Estate responsibly disclosed a material weakness relating to inventory, and promptly set about remediating it. Plaintiffs seek to recast this weakness as fraud, but cannot adequately plead scienter. This is unsurprising insofar as there are no indicia—*zero*—of fraud. Among other things, the Company repeatedly disclosed its efforts to remedy the problem both before and throughout the Class Period. At the same time, the Individual Defendants sold no stock during this time, or otherwise benefitted, from the conduct claimed to be wrongful.

The Court properly dismissed the last iteration of Plaintiffs' Complaint, finding that the facts pled failed to support a strong inference of scienter at least as compelling as the alternative innocent explanation. Plaintiffs' allegations "tell the story of a newly public company attempting quick growth via an acquisition strategy that is simply unable to keep up with the procedural demands of their achieved growth." ECF No. 45 at 32. Although Plaintiffs refer to statements by Former Employees that "may support a finding of negligence in the way Vintage Wine manages and tracks its inventory," there are no particularized allegations "that any single Defendant was intentionally fabricating the accounting misstatements, knew it was violating GAAP principles, or was deliberately reckless in not investigating inventory numbers further, the facts alleged are more indicative of the interpretation that Vintage Wine simply misreported its inventory numbers and costs of goods sold." *Id.* at 16, 32.

The Court's conclusions apply equally to Plaintiffs' Second Consolidated Amended Class Action Complaint ("SAC"). Indeed, Plaintiffs do not allege a single fact that bears on the state-of-mind of CFO Kristina Johnston, the architect of Vintage Wine's remediation efforts. Accordingly, Plaintiffs' claims against her should be dismissed out of hand. In fact, however, the entire SAC should be dismissed. Plaintiffs' SAC adds two new confidential witnesses, but neither fixes the fatal issues identified in the Court's prior analysis and dismissal order. Only two of the six confidential witnesses described by the SAC claim to have had any contact with the Individual Defendants, which include former CEO Patrick Roney and former CFO Katherine DeVillers. And *none* of them alleges *any* particularized facts indicating that Defendants had

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

access to contradictory inventory and costs data, let alone knew or recklessly disregarded that contradictory information. Plaintiffs' allegations support nothing more than an inference of innocent mistakes at a growing company that the company set upon to remedy as soon as they became known. Defendants' motion to dismiss should be granted, this time with prejudice.

# BACKGROUND

Plaintiffs Marilyn Ezzes and Jeffrey Davies seek to represent a class of stockholders against Vintage Wine Estates and three of its executives on behalf of persons and entities who purportedly acquired Vintage Wine common stock between October 13, 2021 and February 8, 2023. *See* SAC ¶ 1, ECF No. 48. The three defendant executives include Patrick Roney, who founded Vintage Wine and served as its CEO until February 8, 2023, when he transitioned to Executive Chairman of the Board of Directors; Katherine DeVillers, who served as CFO from August 2018 until March 7, 2022, and then served as Executive Vice President until her resignation on January 27, 2023; and Kristina Johnston, who became CFO on March 7, 2022. *Id.* ¶¶ 21-23, 86.

### A. Vintage Wine Identifies and Promptly Discloses a Material Weakness on September 29, 2021, Before the Class Period.

After fourteen years as a highly successful, privately owned wine producer and distributor, Vintage Wine went public in June 2021. SAC ¶¶ 2, 38-39. On September 29, 2021, before the Class Period, Vintage Wine disclosed publicly that during its financial close process, the Company "identified a material weakness in its internal control over financial reporting relating to the process and controls surrounding inventory." *Id.* ¶ 124. Vintage Wine also disclosed that it had discussed this material weakness with the Board's Audit Committee and its independent public accounting firm and was actively seeking to remediate the weakness. *Id.*

On October 13, 2021, Vintage Wine filed its first Annual Report on Form 10-K with the SEC, for the period ended June 30, 2021. SAC ¶ 96. The company announced that, as of June 30, 2021, it had "identified a material weakness in our internal control over financial reporting" relating to "process and controls regarding the tracking of costs through the various stages of inventory accounting, particularly as they pertain to bulk wine and spirits." *Id.* Moreover,

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

Vintage Wine informed the public that it "did not have effective business processes and controls to perform reconciliations of certain account balances related to inventory, and the received not invoiced and cellar accruals, on a regular basis." *Id.*  Vintage Wine reported that it was working to remedy these identified deficiencies and had "engaged third party consultants to assist with business processes and control activities related to inventory and account reconciliations." *Id.*

Plaintiffs allege that these statements in the Form 10-K were materially false and misleading because Vintage Wine failed to disclose it had not taken significant measures to remediate the material weakness.  SAC ¶ 97.  Plaintiffs also allege that due to inventory mismanagement, Vintage Wine's Form 10-K overstated inventory balances because it failed to reflect the value of inventory that was damaged or destroyed.  *Id.* ¶ 99.  Plaintiffs do not (and cannot) allege purposeful deceit or other wrongful intent.

**B.    Between October 2021 and November 2022, Vintage Wine Updates Investors on its Efforts to Remediate the Material Weakness.**

Following its initial disclosure of a material weakness, Vintage Wine's quarterly Form 10-Q disclosures provided updates to investors about the status of its internal controls.  Thus, on November 15, 2021, Vintage Wine announced that the disclosed weakness had not yet been remediated, but that the Company had recruited additional finance staff with expertise in wine industry inventory costs and assessed long-term staffing needs.  SAC ¶ 102; Declaration of John C. Tang ("Tang Decl.") Ex. 1 at 26.[1]  On February 14, 2022, Vintage Wine again announced that the material weakness had not been remediated, but that it had hired a Chief Information Officer and four more permanent finance employees with wine industry experience.  SAC ¶ 106; Tang Decl. Ex. 2 at 32.  And on May 16, 2022, Vintage Wine announced that the material weakness had still not been remedied, but that the Company had now hired nine finance employees with relevant experience and appointed a new CFO, Defendant Johnston, who had more experience

[1] Under the incorporation-by-reference doctrine, the Court may consider the entirety of this Form 10-Q—as well as the other Vintage Wine filings appended to the Tang Declaration—without converting this motion into one for summary judgment.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  As the Court previously held, Plaintiffs' complaint refers extensively to Vintage Wine's Form 10-Qs and the documents form the basis of Plaintiffs' claims.  *See* ECF No. 45 at 3 n.2.

Mot. to Dismiss Sec. Am. Class Action Compl. 2:22-cv-01915-GMN-DJA

with public company internal controls and accounting than the previous CFO.  SAC ¶ 110; Tang Decl. Ex. 3 at 34-35.

Plaintiffs allege that the three Form 10-Qs were materially false and misleading because Vintage Wine failed to disclose that:  (1) it had not taken significant measures to remediate the incorrect inventory balance; (2) because of mismanaged inventory, Vintage Wine's inventory balance did not reflect damaged inventory; and (3) its inventory balances were therefore overstated.  SAC ¶¶ 96-113.

### C.   First Alleged Corrective Disclosure: After Conducting an End-of-Year Physical Count, Vintage Wine Records an Adjustment to Non-Cash Inventory on September 13, 2022.

On September 13, 2022, Vintage Wine disclosed in a press release and Form 10-K that it "recorded $19.1 million in non-cash inventory adjustments identified through efforts t[o] improve and strengthen inventory management, processes, and reporting" and disclosed an additional $6.8 million in overhead burden.  SAC ¶¶ 80-81.  The $19.1 million adjustment broke down into $12.4 million for physical inventory count adjustments, $3.7 million to establish inventory reserves, and $3.0 million for additional remediation efforts.  *Id.* ¶ 81.  CFO Johnston explained that "[t]he implementation of more stringent processes drove the adjustments in inventory," and that the Company expected "this will also drive greater transparency and better future results."  *Id.* ¶ 80 (emphases omitted).  CEO Roney further explained that as part of efforts to remediate the material weakness identified in September 2021, Vintage Wine had implemented stronger processes and controls—including enhancing its accounting/finance team under a new CFO (Johnston)—and that these processes "drove the non-cash adjustments in the quarter."  Tang Decl. Ex. 4 at 5.  The next day, the price of Vintage Wine stock fell from $5.53 per share to $3.30 per share, a 40.3% decline.  SAC ¶ 82.

### D.   Second Alleged Corrective Disclosure:  On February 8, 2023, Vintage Wine Discloses an Accounting Error Relating to the Classification and Timing of Recording Certain Costs.

At the end of the next reporting cycle, on February 8, 2023, Vintage Wine disclosed in a

- 4 -

Form 8-K that the Audit Committee of the Board of Directors had determined that the Company's previously issued financial statements for the three months ending September 30, 2022 would be restated to correct an accounting error and should no longer be relied upon. SAC ¶ 83. The error related to "the classification of certain assets and the classification and timing of recording certain costs" for the reporting period. *Id.* The adjustment, which "did not involve any misconduct with respect to the Company, its management or employees," resulted in an approximately $800,000 decrease in net income, reducing earnings per share allocable to common stockholders from $0.02 to $0.00. *Id.* And in an attached press release, the Company announced that Defendant Roney elected to transition from CEO to Executive Chairman of the Board of Directors. *Id.* ¶ 86. The stock price declined $0.77 per share the following day, or 27.6%. *Id.* ¶ 87.

Plaintiffs allege that the February 8, 2023 announcement renders false and misleading Vintage Wine's prior Form 10-Q, filed with the SEC on November 9, 2022. SAC ¶ 114. In that Form 10-Q, Vintage Wine announced certain net revenue, cost of revenue, and net income. *Id.* According to Plaintiffs, those revenue and income figures were false and misleading because Vintage Wine failed to disclose (1) the Company had an accounting error relating to the classification of certain assets and the classification and timing of recording certain costs; and (2) as a result, the company's cost of goods sold and net revenue were understated, and its expenses and net income were overstated. *Id.* ¶ 115.

### E. Procedural History.

Plaintiff Marilyn Ezzes filed this action on November 14, 2022. ECF No. 1. The Court consolidated this action with a subsequently filed suit, captioned *Salbenblatt v. Vintage Wine Estates, Inc.*, No. 2:22-cv-01976-JAD-DJA, and appointed Ezzes and Davies as lead plaintiffs. *See* ECF No. 22.

On March 1, 2024, this Court granted Defendants' motion to dismiss the Consolidated Amended Class Action Complaint, holding that Plaintiffs failed to adequately allege scienter. ECF No. 45. With respect to four anonymous alleged former employees referenced in the complaint, the Court held that none of their purported statements supported the inference that the Individual Defendants had access to information demonstrating that Vintage Wine's inventory

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

numbers were overstated and that its costs were understated, and intentionally ignored that information and deliberately submitted incorrect numbers instead. *Id.* at 13, 15, 16. Although the FEs' statements "may support a finding of negligence in the way Vintage Wine manages and tracks its inventory, these statements do not imply that Defendants acted intentionally, or were deliberately reckless in not investigating overstated inventory numbers and understated costs." *Id.* at 16. The Court also held that Plaintiffs had not pled facts demonstrating Defendants knew GAAP principles were being incorrectly applied (*id.* at 20), that the core operations doctrine did not apply (*id.* at 23), and that neither Roney's job transition nor DeVillers' subsequent departure from the Company supported a compelling inference of scienter (*id.* at 29).

Having been granted leave to amend, Plaintiffs—after Defendants stipulated to a two-week extension (ECF No. 47)—filed the operative Second Consolidated Amended Class Action Complaint on April 5, 2024. ECF No. 48. Plaintiffs assert the same claims against the same Defendants, for: (1) violations of Section 10(b) of the Exchange Act and Rule 10b-5 against all Defendants and (2) violations of Section 20(a) of the Exchange Act against the Individual Defendants. *Id.* ¶¶ 152-169. A redline attached to the Declaration of John C. Tang shows the modest changes made in the SAC. *See* Tang Decl. Ex. 5.

## LEGAL STANDARD

Section 10(b) of the Exchange Act prohibits any act or omission resulting in fraud or deceit in connection with the purchase or sale of any security. "The elements that must be pleaded to state a claim for securities fraud are strenuous but well established." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017). To establish a violation of Section 10(b), a plaintiff must plead: (1) a material misrepresentation or omission made by the defendant; (2) scienter (i.e., intent); (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

A complaint stating claims under § 10(b) of the Exchange Act and Rule 10b–5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Pursuant to Rule

9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). This requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation marks and citation omitted).

Securities fraud complaints also are subject to the heightened pleading requirements of the PSLRA. *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002). The PSLRA requires that a complaint "'plead with particularity both falsity and scienter.'" *Id.* (quoting *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)). The particularity requirement means that "a plaintiff must provide a list of all relevant circumstances in great detail." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999).

To adequately establish scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The required state of mind under the PSLRA is a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 n.12 (1976). Thus, "the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432 (citation omitted). Further, a complaint must "show that each defendant had the requisite scienter." *In re PMC-Sierra, Inc. Derivative Litig.*, 2008 WL 2024888, at *3 (N.D. Cal. May 8, 2008). In other words, the plaintiff must "plead facts showing scienter as to each defendant individually." *In re Silicon Storage Tech., Inc*, 2006 WL 648683, at *21-22 (N.D. Cal. Mar. 10, 2006) (group pleading is improper).

The "strong inference" required by the PSLRA "must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

compelling as any opposing innocent inference." *Zucco Partners*, 552 F.3d at 991; *see also Tellabs*, 551 U.S. at 324 (same).

## ARGUMENT

### I.    THE AMENDED COMPLAINT FAILS TO PLEAD A CLAIM FOR SECURITIES FRAUD BECAUSE PLAINTIFFS DO NOT ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.

As in the prior iteration of the Complaint, Plaintiffs attempt to plead scienter primarily by relying on statements attributed to alleged Former Employees ("FEs").  Plaintiffs rely on the same four FEs (FE 1 through FE 4) that the Court previously found to be lacking, with minor embellishment.  To this, Plaintiffs add two new FEs (FE 5 and FE 6).  But Plaintiffs' modest new FE allegations repeat the same assertions that the Court previously rejected—that is, the new allegations add volume, not persuasion.  The fact remains that the FE "statements are either not indicative of scienter or so vague and of such unreliable origin as to be unpersuasive." *Zucco Partners*, 552 F.3d at 1000.  And Plaintiffs have added nothing to buttress their regurgitated and previously rejected theories regarding the core operations doctrine and executive transitions.  As the Court previously held, the most cogent and compelling inference remains that, while Vintage Wine may have negligently managed and tracked its inventory, Plaintiffs' allegations "do not imply that Defendants acted intentionally, or were deliberately reckless in not investigating overstated inventory numbers and understated costs."  ECF No. 45 at 16.

### A.    As With the Prior Complaint, the Statements of Alleged Anonymous Former Employees Fail to Establish Scienter.

To allege scienter based on statements attributed to confidential witnesses, two conditions must be satisfied:  "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." *Zucco Partners*, 552 F.3d at 995.  "Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Id.*  In effect, that means that here, the alleged statements Plaintiffs attribute to former employees must establish "that the named Defendants were aware of or encouraged fraudulent conduct related to" Vintage Wine's inventory and cost accounting.

- 8 -

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1069 (9th Cir. 2008).  None of Plaintiffs' confidential witness statements satisfy this two-prong test.

To begin, the SAC alleges *no facts* whatsoever about the state of mind of Defendant Johnston, so Plaintiffs' claims against her must be dismissed out of hand.  With respect to Defendants Roney and DeVillers, despite minor embellishment in the SAC (*see* Tang Decl. Ex. 5 ¶¶ 44, 47, 55, 59, 72-73, 76), the analysis the Court previously applied to FEs 1-4 applies again.  None of the purported statements attributed to FEs 1-4 are sufficient to establish their scienter.

### 1.  (*Same As Before*) Former Employee 1: None Of FE 1's Statements Link to a Single Named Defendant.

FE 1 was purportedly a brand manager at Vintage Wine responsible for the sourcing, compliance, and promotion of wine from February 2018 to September 2022.  SAC ¶ 25.  FE 1 alleges that Vintage Wine's Santa Rosa warehouse "was a mess," and now alleges that he visited the warehouse in 2018, observing that "[t]he racks were 3 deep per rack … but no rhyme or reason to the organization."  *Id.* ¶ 44.  FE 1 also alleges that he learned from a certain staff accountant that five pallets of Chardonnay had been located in the warehouse after having gone missing for five years.  *Id.* ¶ 48.  Plaintiffs, however, have added no allegations to cure the absence of "sufficient detail supporting a conclusion that FE 1 had knowledge of Defendants' state of mind" regarding inventory accounting.  ECF No. 45 at 11.  After all, Vintage Wine sells 2.5 million cases of wine per year (Tang Decl. Ex. 4 at 7); how does the alleged disorganization of racks in one warehouse, or the fate of five pallets of Chardonnay, demonstrate that Defendants deliberately or recklessly falsified the Company's entire inventory?

Moreover, "none of the allegations link FE 1 to a single named Defendant."  ECF No. 45 at 11.  Plaintiffs allege FE 1 had conversations with President Terry Wheatley (SAC ¶ 25), but the SAC "does not describe what these conversations were about or when they occurred," and Wheatley "is not a named Defendant."  ECF No. 45 at 11.  FE 1's conclusory allegation that the Individual Defendants were "hyper aware" of problems with inventory management (SAC ¶ 58) remains nothing more than a "generalized claim[] about corporate knowledge" that is not sufficient to create a strong inference of scienter.  *Zucco Partners*, 552 F.3d at 998.

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

FE 1 also makes statements relating to the accuracy of Vintage Wine's cost reporting. According to FE 1, Vintage Wine relied on "Microsoft NAV" as its primary inventory management system, which was based on cost formulas written by Vintage Wine employees. SAC ¶ 63. FE 1 alleges that the internal calculations on accrued costs "were screwed up," and Defendant DeVillers "received internal blame for the apparent shortcomings with Vintage Wine's calculations," with one colleague stating "'Kathy's numbers are screwed up.'" *Id.* ¶¶ 62-63. The Court previously observed that this hearsay statement is not sufficiently reliable, and Plaintiffs add no new facts regarding its provenance or context. *See* ECF No. 45 at 12.

The Court also held that FE 1's statements regarding costs were not indicative of scienter because even if other employees "found the calculations to be incorrect, none of FE 1's statements indicate that these complaints were relayed to CFO DeVillers." ECF No. 45 at 12. The SAC does nothing to cure this defect. Plaintiffs now allege that FE 1 stated DeVillers "was aware of the issues with COGS [costs of goods sold] and the formulas because it was her department and she was in charge." SAC ¶ 72. This conclusory allegation gets Plaintiffs nowhere. Statements by confidential witnesses who lack direct access to the CFO but claim the CFO "must have known" about misconduct "by virtue of their position" are insufficient to establish scienter. *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 980 (N.D. Cal. 2015) (citing cases). Put simply, FE 1 "does not allege anything more than speculation about the CFOs' state of mind." *Id.*; *see also Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1245 (10th Cir. 2016) ("We cannot infer scienter based only on a defendant's position in a company or involvement with a particular project.").

### 2. (*Same as Before*) Former Employee 2: FE 2 Does Not Allege that Any Purported Concerns Were Relayed to Any Named Defendant.

Plaintiffs' allegations regarding FE 2 remain materially unchanged from the prior iteration of the complaint. FE 2 was purportedly a regional sales manager at Vintage Wine from October 2018 until March 2022 who managed inventory and relationships with distributors. SAC ¶ 26. FE 2 reported that brands that were supposed to be in stock were not in stock, and inventory was sometimes unavailable for sale. *Id.* ¶ 49. FE 2 alleges that he had discussions with his

- 10 -      Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

supervisors about inventory problems—including Wheatley and her subordinate, Mike Gilboy who was Senior Vice President of Sales—but FE 2 does not allege that Gilboy or Wheatley shared his concerns with the Individual Defendants. *Id.* ¶ 59; ECF No. 45 at 13.

The Court previously held that FE 2's allegations were insufficient because he did not allege that any concerns were shared with Defendants, and that even assuming Wheatley or Gilboy told Defendants that certain wines were missing from the warehouse, "this knowledge is not enough to demonstrate that Defendants intentionally overstated inventory numbers." ECF No. 45 at 13. The only new allegation from FE 2 is that inventory issues were discussed on calls with nationwide sales staff, which were sometimes attended by Gilboy, Wheatley, and somebody named Jason Strobbe. SAC ¶ 59. Again, however, Plaintiffs do not allege that FE 2's concerns were ever shared with the Individual Defendants, and even if they had been, it is an unreasonable leap of logic to infer that mere knowledge about alleged discrete inventory problems translates into an intention to overstate all of the Company's inventory as contained in audited financial statements. *See In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1149 (D. Colo. 2011) (confidential witness statements that senior executives "did not know Crocs' own inventory" suggested mismanagement, not fraud).

### 3.   (*Same as Before*) Former Employee 3:  FE 3 Fails to Establish That Any Defendant Had Access to and Disregarded Contradictory Information.

FE 3 purportedly worked for Vintage Wine from 2007 to March 2023 as a winemaker. SAC ¶ 27. Plaintiffs now allege that FE 3 "had regular direct contact with CEO Patrick Roney and CFO Katherine DeVillers" (*id.*), and, based on that experience, FE 3 claims that Roney "was aware of what inventories were and how we were moving through them." *Id.* ¶ 120. FE 3, however, "supplies no basis for his claim." *Zucco Partners*, 552 F.3d at 996.

To the contrary, FE 3 states only that Roney helped to strategize how to increase inventory for popular brands, and how to not develop too much inventory for "sluggish brands." SAC ¶ 121. This is a total non sequitur. Even supposing that Roney was involved in setting basic inventory *strategy*, the allegation made does not yield any conclusion or even inference supporting Plaintiffs' cause of action.

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

To establish scienter, Plaintiffs must allege (1) that the Individual Defendants had "access to *contradictory* information"; and (2) particularized allegations that a speaker knew or recklessly disregarded that contradictory information. *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1216 (10th Cir. 2023) (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017)). The fact that Roney advocated for Vintage Wine to focus on popular wine brands is completely disconnected from the question of whether Roney received contradictory information about the Company's stated inventory, let alone whether Roney intentionally or recklessly disregarded that information.

The same applies to Plaintiffs' bald assertion that DeVillers "was very involved in the inventory process" because she had to approve significant expenditures by FE 3. SAC ¶ 122. There is simply no logical nexus between approving discrete expenditures for wine, and knowing that the Company-wide inventory count across the entire enterprise was overstated.

Plaintiffs also rely on FE 3 for an argument that the Individual Defendants intentionally understated the cost of goods sold. Plaintiffs allege that Vintage Wine used Microsoft NAV as its software to calculate the cost-of-goods for units of inventory, as well as volumes, sales prices, and estimated margins. SAC ¶ 63. FE 3 states that Roney received "NAV reports," without explaining what specific information the NAV reports contain. *Id.* ¶ 73. FE 3 also states that DeVillers approved his requests for significant expenditures, and from this, FE 3 leaps to the conclusion that DeVillers "was highly knowledgeable about the cost of goods sold." *Id.* ¶ 76.

As with the prior dismissed complaint, these allegations do not explain what information was available to the Individual Defendants that would lead to "knowledge that the cost of goods sold was incorrect." ECF No. 45 at 14-15. Even assuming Roney and DeVillers both had access to reports from Microsoft NAV, Plaintiffs do not allege that Vintage Wine reported costs inconsistent with what was contained in Microsoft NAV, or the magnitude or significance of any such inconsistencies. Nor do Plaintiffs allege that Roney and DeVillers had access to costs data in Microsoft NAV "but knew it was incorrect or [were] deliberately reckless in not knowing," or how this would impact the Company's costs of goods sold. *Id.* at 15. Again, FE 3 statements do

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

not demonstrate that the Individual Defendants had access to *contradictory* information, or that the Individual Defendants recklessly disregarded that contradictory information.

### 4. (*Same as Before*) Former Employee 4: FE 4 Does Not Allege That He Was Ever Involved in Inventorying.

FE 4 purportedly worked on direct-to-consumer email marketing campaigns from March 2019 to April 2022.  SAC ¶ 28.  The Court previously held that FE 4's statements regarding inventory at Vintage Wine were unreliable because he "did not allege that he was involved in the inventory counting or training processes."  ECF No. 45 at 15.  The Court also held that even if his statements were reliable, they do not "lead to a finding of scienter on the part of the Defendants."  *Id.* at 16.

In the SAC, FE 4 adds two new allegations (SAC ¶¶ 47, 55), but neither changes anything.  Once again, FE 4 does not allege that he was ever personally involved in inventorying.  In spite of this, as before, FE 4 declares that inventory was "mismanaged," and recounts that Vintage Wine employees from different departments helped to conduct the annual, physical inventory count.  *Id.* ¶ 47.  FE 4 continues to allege that he "learned" from other employees that some wine was missing, some missing wine was found, and that some inventory was not accurate.  *Id.* ¶ 55.  But FE 4 does *not* allege that the Individual Defendants were ever made aware of contradictory information regarding the amount of Vintage Wine inventory.  Accordingly, FE 4's statements remain both unreliable and unindicative of scienter.

### 5. (*Newly Added*) Former Employee 5: FE 5 Does Not Explain Any Connection Between Issues With Inventory Software and the Company's Financial Statements, or What Specific Information Was Conveyed to Defendants.

The SAC adds statements from FE 5, who purportedly worked as an "inventory management analyst" from August 2020 until July 2023.  SAC ¶ 29.  FE 5 reported to the Vice President of Finished Goods Supply Chain, and then the Director of Warehouse and Distribution; Plaintiffs do not allege where either supervisor ranked on the Company organization chart.  *Id.* FE 5 claims to have been responsible for working with marketing employees to ensure that

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

Vintage Wine had enough bottled wines to fulfill demand.[2]  *Id.*  FE 5 also allegedly coordinated shipments from a Company warehouse located in Ohio.[3]  *Id.*  FE 5 states that there were syncing, or "timing[,] issues" between two software systems:  Vintage Wine's Microsoft NAV software (with accounting and finance functionality) and CoreSense (which helped the Company manage inventory in shipping and warehouses).  *Id.* ¶ 64.  FE 5 claims that frequent manual adjustments were needed to make the systems "talk[]," which meant Microsoft NAV sometimes reported having wine that was obsolete, or not having wine that was in stock.  *Id.*  FE 5 claims this issue was mentioned on conference calls attended by Roney and DeVillers "sometimes," and that he was "occasionally" copied on emails sent by DeVillers related to discussions about inaccurate inventory data in Microsoft NAV.  *Id.* ¶¶ 65, 66.

One fatal flaw with FE 5's statements is that he does not tie the purported syncing issue to the inaccurate inventory figures corrected by the September 13, 2022 Form 10-K.  For example, Plaintiffs do not allege that the "syncing issue" was connected to, let alone the cause of, any overstatement of inventory (and if so how), or that Defendants intentionally or recklessly disregarded the syncing issue when issuing financial statements.  Indeed, Plaintiffs do not explain whether the two disparate software systems that address different aspects of inventory are even supposed to "sync" or not; and if so, whether discrepancies between such systems typically arise and/or the implications of same.  Again, the critical question is whether Defendants released inventory numbers knowing, or having reason to know, of the existence of information materially contradicting those numbers.  *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021).  FE 5 provides no evidence whatsoever that Defendants disclosed inventory numbers knowing that the source of those inventory numbers was materially inflated.  This is simply not a case where Defendants knew of inventory problems and deliberately overstated inventory to inflate the Company's financial results.  Rather, the nature of the

---

[2] It should be noted that the Company's disclosed material weakness concerned tracking costs in *bulk* wine and spirits, not bottled wine.  SAC ¶ 96.  FE 5 did not work on inventory matters for bulk wine used in wine production.  *Id.* ¶ 29.

[3] It should also be noted that Plaintiffs' allegations are about mismanaged inventory concerning "the Company's major warehouse in Santa Rosa, California," *not* Ohio.  SAC ¶ 43.

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

accounting problem here—an inventory writedown—"can easily arise from negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action." *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432-33 (5th Cir. 2002).  At best, FE 5's statements suggest that DeVillers was aware of "timing issues" between Microsoft NAV and CoreSense, but not that she recklessly ignored those issues or ever announced inaccurate inventory numbers because of those issues.

FE 5's statements also do not support a compelling inference of scienter because FE 5 does not relate *what* specific information Roney and DeVillers learned on the conference calls, or what specific information DeVillers relayed via email.  *See In re Metawave Commc'ns Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1083 (W.D. Wash. 2003) (rejecting inference of scienter from confidential witness's statement that individual defendants understated inventory reserve to make year-end numbers based on closed-door meetings because CW provided "no details regarding when these closed door meetings took place or what was specifically discussed").  Without such specificity, FE 5's statements in this regard go nowhere.

### 6. (*Newly Added*) Former Employee 6:  FE 6 Does Not Allege that Any Purported Complaints Were Ever Relayed to Any Defendant.

The SAC also adds statements from FE 6, who purportedly worked as a production logistics coordinator at a production facility in Hopland, California.[4]  SAC ¶ 30.  FE 6 was responsible for scheduling inbound shipments of dry goods (like glass bottles) and outbound shipments of finished goods (like wine) to distributors.  *Id.*  According to FE 6, employees at Hopland did not properly post shipments to the inventory system, and staff "frequently made mistakes" because employees did not follow the correct inventory process.  *Id.* ¶ 46.  FE 6 also states that he complained to his superiors that the Hopland facility was understaffed.  *Id.* ¶ 60.  These complaints were relayed to COO Zach Long, who is not a defendant.  *Id.*

FE 6's allegations are also easily dispensed with.  For starters, Plaintiffs do not allege that

---

[4] FE 6 allegedly worked as an assistant warehouse supervisor "for a few weeks" in March-April of 2023.  SAC ¶ 30.  Because this experience post-dated the Class Period (*see id.* ¶ 1), it is irrelevant.  *See Zucco Partners*, 552 F.3d at 996.

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

the Company's facility in Hopland has any nexus to the overstated inventory numbers.  Putting that aside, FE 6 provides no factual basis to explain how he knows the frequency with which warehouse workers in Hopland (such as "forklift drivers") allegedly made mistakes during the inventory process, or the nature, magnitude, or significance to the entire Company's financial statements of such mistakes.  SAC ¶ 46.  Most important, FE 6 never states that any of the complaints he describes were relayed to the Individual Defendants.  In short, FE 6 has no personal knowledge about any of the Individual Defendants' state of mind and the allegations should be dismissed.  *Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 856 (N.D. Cal. 2019) ("Confidential witness statements can create a strong inference of scienter only if the reporting witness has 'reliable personal knowledge of the defendants' mental state.'").

### 7.   The FE Statements Do Not Raise a Strong Inference of Scienter When Considered Holistically.

The Court must conduct a "holistic" review of the statements to determine whether the insufficient allegations combine to create a strong inference of scienter.  *See Zucco Partners*, 552 F.2d at 992.  Evaluating all statements together, however, they "do not convey information sufficient to support the strong inference that the PSLRA requires."  *See Metzler*, 540 F.3d at 1069 n.13.

Four of the six FEs had *no* interaction with the defendants.  Just two FEs—FE 3 and FE 5—even claim to have had any contact with the Individual Defendants.  The statements of FEs 1, 2, 4, and 6 are thus *per se* insufficient to give rise to an inference of scienter.  *See Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1149 (N.D. Cal. 2017) (CW allegations insufficient because, "[c]ritically, none of the CWs report communicating directly with" the individual defendants).

For his part, FE 3 (a winemaker) alleges only that he interacted with CEO Roney in setting strategy about which wine brands to increase in inventory, and which sluggish brands to reduce.  SAC ¶ 121.  These alleged interactions (which on their face are unremarkable) have nothing to do with Vintage Wine's alleged misstatements regarding inventory counts and cost of goods sold.  *See Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 954 (D. Ariz. 2007) (finding that confidential witness statements failed to meet the pleading standards mandated by the

- 16 -

PSLRA when they "merely reflect[ed] matters that companies deal with on a daily basis.").

FE 5 (an inventory management analyst at a warehouse in Ohio) claims that he was sometimes on conference calls where Defendants Roney or DeVillers "sometimes" were also on, and that he "occasionally" was copied on emails from DeVillers related to unspecified "inaccurate inventory data" in Vintage Wine's Microsoft NAV software. SAC ¶¶ 65-66. But these allegations—even considered in tandem with the remaining FEs' allegations regarding disorganization and mistakes within Vintage Wine's warehouse—do not create a cogent or compelling inference that the Individual Defendants intentionally or recklessly misstated the Company's inventory. The much more reasonable inference is, at most, of negligence and/or mismanagement of inventory. That is not enough to meet the pleading standard for scienter.

As the Court previously observed (ECF No. 45 at 17-18), the decision in *In re Crocs, Inc. Securities Litigation*, 774 F. Supp. 2d 1122 (D. Colo. 2011), is instructive. In *Crocs*, the plaintiff alleged that Crocs grew rapidly, failed to update its data management systems in an appropriate fashion, and, as a result, recorded inaccurate warehouse inventory. *Id.* at 1126-27. The individual defendants discussed this lack of accurate data, but failed to disclose that inventory was rapidly increasing, requiring a substantial write-down to reflect its value accurately. *Id.* at 1127, 1130. Considering the complaint in its entirety, the court inferred that Crocs grew so fast its size overtook the sophistication of its management systems, leading to statements in financial filings that were "not fully informed by accumulating logistical problems." *Id.* at 1146. Critically, however, the court held that use of primitive inventory software is indicative of mismanagement, not fraud. *Id.* at 1146-47. Given the absence of any statements from an employee in Crocs' accounting department regarding the reason for the inventory write-down or the way Crocs stated its inventory during the class period, the most cogent inference was that Crocs was negligent in maintaining its inventory – not that Crocs intentionally or recklessly engaged in a fraudulent scheme to overstate inventory. *Id.* at 1147, 1150-51; *see also In re Molycorp. Inc. Sec. Litig.*, 2015 WL 1097355, at *14-15 (S.D.N.Y. Mar. 12, 2015) (allegations that company's inventory was improperly organized and that operating conditions were "just chaos" failed to demonstrate "that any Defendant knew or had reason to know, or were reckless in

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

not knowing, that the numbers in the original 10-Q were incorrect").

The same can be said here.  Plaintiffs allege that Vintage Wine grew quickly between 2017 to 2022, acquiring fifteen wine and beverage entities in that five-year period, which caused Vintage Wine to struggle to maintain accurate records of its inventory as the accounting department was not robust enough to keep up with the increasing scale and complexity of the business.  SAC ¶¶ 41, 43.  While the allegations suggest that Roney and DeVillers at one point may have heard about unspecified syncing issues involving two disparate inventory software programs, that is a far cry from inferring reckless indifference as to whether inventory was accurate in the financial statements, let alone the existence of a fraudulent scheme.  The fact is that the SAC is bereft of any facts suggesting either Roney or DeVillers buried the issue or recklessly stated inventory levels.  Put simply, the SAC fails to provide "'particularized support regarding inventory levels, the defendants' knowledge, and approximately when plaintiffs think the write-down should have occurred.'"  *Crocs*, 774 F. Supp. 2d at 1150 (quoting *In re PetSmart Sec. Litig.*, 61 F. Supp. 2d 982, 993 (D. Ariz. 1999)).

No more compelling are the FEs' allegations regarding the costs of goods sold issue.  As before, Plaintiffs rely simply on the allegation that Defendants Roney and DeVillers had access to cost of goods information in Microsoft NAV and that DeVillers "received internal blame" for costs of goods calculations.  SAC ¶¶ 62-63, 73, 76.  Yet Plaintiffs still do not allege that any concerns about costs of goods calculations were relayed to DeVillers, or that Roney or DeVillers were aware that costs of goods calculations in Microsoft NAV were inaccurate.  ECF No. 45 at 12; *see also Meitav Dash*, 79 F.4th at 1219 ("No matter what FE7 or FE8 had heard, scienter would exist only if Mr. Gentile was aware of what the Boeing employees had said.").  Moreover, even if DeVillers was aware of "some disagreement within the corporation over its" costs calculations, it does not follow that she "was deliberately reckless" with respect to how the Company estimated costs.  *Zucco Partners*, 552 F.3d at 998; *see also In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1211 (D. Ariz. 2009) (allegations that "there was some disagreement and even concern about … accounting methodology" did not establish individual defendants were deliberately reckless).  After all, there is no allegation that external auditors

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

counseled against the Company's calculations or that DeVillers was aware the Company's methodology was improper. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1207 (9th Cir. 2016).

**B.   The Court Correctly Rejected Plaintiff's Remaining Scienter Theories, Which Remain Unchanged in All Relevant Respects from the Prior Complaint.**

Plaintiffs also continue to allege that scienter can be inferred under the core operations doctrine (SAC ¶¶ 120-126), from executive transitions at Vintage Wine (*id.* ¶¶ 127-128), and because Vintage Wine violated GAAP principles (*id.* ¶¶ 129-131). The court rejected these alternative theories before (ECF No. 45 at 20-31), and should do so here again because the relevant allegations have not changed in any relevant way.

**1.   Plaintiffs' Reliance on the "Core Operations Doctrine" is Misplaced.**

The core operations doctrine posits that "facts critical to a business's 'core operations' … are known to a company's key officers." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783 (9th Cir. 2008). Establishing scienter under the core operations doctrine "is not easy." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014). The doctrine supports a strong inference of scienter in only two circumstances: (1) the allegations are particular and suggest the defendants had actual access to the disputed information and (2) in even rarer circumstances, where the nature of the relevant fact is of such prominence that it would be literally "absurd" to suggest that management lacked knowledge of the matter. *Killinger*, 542 F.3d at 786. Neither circumstance is implicated here.

**a.   There Are No Specific Allegations About Defendants' Knowledge of the Relevant Facts.**

Plaintiffs allege that they satisfy the first prong of the core operations doctrine because Roney was involved in completely innocuous strategy discussions about how to increase inventory for successful brands while reducing inventory for struggling brands, and DeVillers was responsible for approving significant expenditures. SAC ¶¶ 120-122. This involvement, Plaintiffs allege, supports the inference that each knew or should have known the nature and scope of issues affecting the Company's inventory management system and costs of goods sold. *Id.* ¶ 123.

- 19 -

Yet Plaintiffs' unremarkable and mundane allegations do not demonstrate that either Roney or DeVillers had access to "any information rendering the Individual Defendants' statements false or misleading." *McGovney v. Aerohive Networks, Inc.*, 2019 WL 8137143, at *20 (N.D. Cal. Aug. 7, 2019); *see also Doyun Kim v. Advanced Micro Devices, Inc.*, 2019 WL 2232545, at *10 (N.D. Cal. May 23, 2019) (to satisfy core operations doctrine, complaint must contain "detailed allegations" about individual defendants' "actual exposure to [the allegedly concealed] information").

For example, participating in sales strategy is not connected to the Company's financial statement inventory calculation. The fact that Roney was involved in *strategy* decisions about increasing inventory for some brands and reducing inventory for others does not suggest that Roney had actual access to total inventory numbers different from those reported in the Company's financial statements. Likewise, being the person responsible for expense approvals does not equal having knowledge of the Company's costs of goods sold calculation in the financial statements. The fact that DeVillers approved significant expenditures for winemaking says nothing about whether DeVillers had access to information showing that Vintage Wine was erroneously classifying and timing certain costs. *See* SAC ¶ 83. Put simply, there is no allegation any individual defendant ever saw "'specific reports and their contents' that could have revealed the falsity of" their statements. *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 1013 (N.D. Cal. 2017) (quoting *Intuitive Surgical*, 759 F.3d at 1062).

### b. The Nature of the Relevant Facts Are Not of Such Prominence That it Would Be "Absurd" to Suggest Management Lacked Knowledge.

Under the second prong of the core operations doctrine, scienter may be inferred when the nature of the relevant fact is of such prominence that it would be "absurd" to suggest that management was without knowledge of the matter. *Zucco Partners*, 552 F.3d at 1001. As this Court recognized, this exception is limited to extraordinary circumstances, such as where executives make optimistic statements about their corporation's health even though several of their largest clients, representing 80% of revenue, recently issued stop-work orders. ECF No. 45 at 25 (discussing *Benson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008)).

- 20 -

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

Previously, Plaintiffs argued it would be "absurd" for Vintage Wine to make statements about its accounting remediation process having disclosed, before the Class Period, that the Company had "identified a material weakness in its internal control over financial reporting relating to the process and controls surrounding inventory." SAC ¶ 124. But as the Court recognized, the facts here suggest "it more likely that Defendants were in a game of 'catch up,' rather than acting with deliberate recklessness of intentionality." ECF No. 45 at 28. Plaintiffs allege that Vintage Wine disclosed a material weakness before the Class Period (SAC ¶ 124), announced that it was implementing remediation measures (*id.* ¶ 124; Tang Decl. Ex. 1 at 26, Ex. 2 at 32, Ex. 3 at 34-35), and then announced additional inventory and cost of goods sold issues. As the court explained in *In re Magnum Hunter Resources Corp. Securities Litigation*, 26 F. Supp. 3d 278 (S.D.N.Y. 2014), this series of events does not support an inference of scienter. *Id.* at 295 ("The fact that defendants recognized problems, announced that they were implementing effective controls and procedures, and then recognized more problems does not indicate that their statements were false at the time that they were made."). To the contrary, "it is equally plausible that defendants were in a constant game of 'Catch up'—acknowledging the company's material weaknesses and disclosing their continued efforts to resolve them, only to learn of yet more. While this pattern supports an inference of potentially poor accounting management, it does not support fraud." *Id.* at 297-98.

### 2. Roney's Transition to His Present Role and DeVillers' Departure Do Not Support an Inference of Scienter.

Plaintiffs allege that scienter can be inferred because Roney transitioned from CEO to Executive Chairman of the Board in February 2023, and DeVillers transitioned from CFO to Executive Vice President in March 2022, and ultimately resigned in January 2023. SAC ¶¶ 21-22, 127-128. The Court rejected these allegations last time, the SAC adds nothing new to change the Court's well-reasoned conclusion, and it would be preposterous to say these changes mean anything other than that the Company was acting to improve results. *See* ECF No. 45 at 29-31.

While Plaintiffs argue that Roney transitioned on the same day as the Company's restatement, this is the type of "mere conclusory allegation" that is insufficient to support an

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

inference of scienter.  ECF No. 45 at 30 (quoting *Zucco Partners*, 552 F.3d at 1002).  Moreover, Roney did not leave the Company, he transitioned to a different role as Executive Chairman of the Board.  "His decision to stay on in a major advisory role further diminishes the inference of scienter." *Id.* at 30; *see also Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1155 (C.D. Cal. 2018) (CEO's transition to Executive Chairman of the Board was "inconsistent with a finding that [he] was fired for conducting a fraudulent securities scheme").

The fact that DeVillers transitioned to another role, and that Vintage Wine replaced her with a CFO with more public company experience, likewise "cuts against the inference of scienter."  ECF No. 45 at 31.  While DeVillers ultimately resigned one month before a restatement, she was not CFO at the time and, in any event, "[w]here a resignation occurs slightly before … the defendant corporation issues a restatement, a plaintiff must plead facts refuting the reasonable assumption that the resignation occurred as a result of the restatement's issuance itself in order for a resignation to be strongly indicative of scienter." *Zucco Partners*, 552 F.3d at 1002. Plaintiffs' SAC does nothing to buttress their already rejected allegation that the transitions of Roney and DeVillers, and DeVillers' ultimate departure, are indicative of scienter.

### 3.   Failing to Follow Accounting Guidelines Does Not Support an Inference of Scienter.

Nor does the SAC buttress Plaintiffs' theory that scienter can be inferred based on the fact that Vintage Wine restated financials, which is an admission that its financial statements did not comply with GAAP.  SAC ¶¶ 129-131.

As this Court previously explained, "'the mere publication of a restatement is not enough to create a strong inference of scienter.'"  ECF No. 45 at 20 (quoting *Zucco Partners*, 552 F.3d at 1000); *see also DSAM Glob. Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) ("scienter requires more than a misapplication of accounting principles").  As before, Plaintiffs allege that Vintage Wine violated ASC 330-10-35-1B, which provides that "[w]hen evidence exists that the net realizable value of inventory is lower than its cost, the difference shall be recognized as a loss in earnings in the period in which it occurs."  SAC ¶ 91.  But as the Court observed, Plaintiffs fail to allege any facts demonstrating that Defendants knew the net realizable

- 22 -

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

value of its inventory was lower than its cost, or that the principle was being incorrectly applied. ECF No. 45 at 21. The SAC adds no new facts to cure this defect.

*****

In the end, when the Court "consider[s] plausible nonculpable explanations for the defendant's conduct" (*Tellabs*, 551 U.S. at 310), any inference of scienter created by Plaintiffs' allegations is not "as compelling as an alternative innocent explanation." *Zucco Partners*, 552 F.3d at 1006. The SAC tells "the story of a newly public company attempting quick growth via an acquisition strategy that is simply unable to keep up with the procedural demands of their achieved growth." ECF No. 45 at 32. Just months after going public, Vintage Wine "disclosed its material internal control failures and then set on a path to make things right by bringing in a CFO with public company experience and hiring more accounting staff." *Id.*

To be sure, Plaintiffs allege Vintage Wine mishandled some inventory, which Plaintiffs describe as "mismanagement." SAC ¶¶ 6, 43, 44, 47, 54, 56, 81, 99, 101, 103, 105, 107, 109, 111, 113. But mismanagement of inventory is not actionable as deceit under federal securities law. *Crocs*, 774 F. Supp. 2d 1122 at 1150-51; *Molycorp*, 2015 WL 1097355, at *15; *see also Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 473–79 (1977) (§ 10(b) does not regulate internal corporate mismanagement, when not accomplished through deception). And Plaintiffs lack any particularized allegation that any Individual Defendant fabricated the accounting misstatements, knew they were violating GAAP principles, or were deliberately reckless in not investigating inventory numbers further. At most, Plaintiffs have alleged that one defendant (DeVillers) was aware of a syncing issue (of unspecified magnitude or significance) between two disparate inventory software programs performing different functions. But Plaintiffs do not allege any facts suggesting DeVillers recklessly disregarded that issue (indeed, she sent e-mails on the subject, suggesting she was engaged in resolving the issue), or suggesting that the syncing issue had any nexus to the inventory numbers that Vintage Wine revised after an annual physical count. The syncing issue is just another example of Plaintiffs' allegation that Vintage Wine struggled to maintain accurate inventory records as the business grew in scale and complexity. SAC ¶ 43. That is not fraud. And where, as here, there is no allegation any Defendant sought to profit or had

- 23 -

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

any other motive to engage in a fraudulent scheme, and where the Company was open with investors about its challenges, any assertion of *fraud* is contrived.

## II.   PLAINTIFFS' DERIVATIVE CONTROLLING PERSON CLAIM SHOULD BE DISMISSED.

Section 20(a) of the Exchange Act makes certain "controlling" individuals also liable for violations of section 10(b) and its underlying regulations. *Zucco Partners*, 552 F.3d at 990; 15 U.S.C. § 78t(a). Because section 20(a) liability is premised on an underlying section 10(b) violation, section 20(a) claims may be dismissed summarily if the plaintiff fails to adequately plead a primary violation of section 10(b). *Zucco Partners*, 552 F.3d at 990; *Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 2d 1101, 1128-29 (D. Nev. 2020). Here, because Plaintiffs have not pled a predicate section 10(b) claim due to their failure to sufficiently allege scienter, Plaintiffs' section 20(a) claim also must fail and should be dismissed again. *See* SAC ¶¶ 164-169; ECF No. 45 at 32.

## III.   FURTHER LEAVE TO AMEND SHOULD BE DENIED.

Where, as here, "the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco Partners*, 552 F.3d at 1007 (citation omitted). The Court previously dismissed the First Amended Complaint for failure to plead scienter. The fact that Plaintiffs amended the SAC in an attempt to cure this deficiency, and failed to do so, is "'a strong indication that the plaintiffs have no additional facts to plead.'" *Id.* (citation omitted). Accordingly, for all of the above reasons, the Court should dismiss Plaintiffs' action with prejudice. *See Metzler*, 540 F.3d at 1072 (upholding a dismissal with prejudice where, inter alia, the deficiencies at issue "persisted in every prior iteration of the [complaint]").

## CONCLUSION

Defendants' motion to dismiss Plaintiffs' SAC should be granted with prejudice.

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA

Dated: May 10, 2024

KEMP JONES, LLP


By: */s/ Michael Gayan*
Michael Gayan, Bar No. 11135
Katrina Stark, Bar No. 16006
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada  89169

JONES DAY
John C. Tang, *Pro Hac Vice*
Dennis F. Murphy, Jr., *Pro Hac Vice*
555 California Street, 26th Floor
San Francisco, California  94104

Attorneys for Defendants
VINTAGE WINE ESTATES, INC.,
PATRICK RONEY, KATHERINE
DEVILLERS, and KRISTINA
JOHNSTON


## PROOF OF SERVICE

I hereby certify that on the 10th day of May, 2024, I served a true and correct copy of the foregoing **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** via the United States District Court's CM/EMF electronic filing system to all parties on the e-service list.


*/s/ Ali Lott*
An employee of Kemp Jones, LLP

- 25 -

Mot. to Dismiss Sec. Am. Class Action Compl.
2:22-cv-01915-GMN-DJA