John C. Tang (*Pro Hac Vice*)
JCTang@jonesday.com
Dennis F. Murphy, Jr. (*Pro Hac Vice*)
dennismurphy@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104
Telephone:    +1.415.626.3939
Facsimile:    +1.415.875.5700

Attorneys for Defendant
VINTAGE WINE ESTATES, INC.

Michael J. Gayan (#11135)
m.gayan@kempjones.com
Katrina Stark (#16006)
k.stark@kempjones.com
KEMP JONES, LLP
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, NV  89169
Telephone:    +1.702.385.6000
Facsimile:    +1.702.385.6001

Attorneys for Defendants
VINTAGE WINE ESTATES, INC., PATRICK RONEY, KATHERINE DEVILLERS, and KRISTINA JOHNSTON

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARILYN EZZES, Individually and on Behalf of All Other Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VINTAGE WINE ESTATES, INC., PATRICK RONEY, KATHERINE DEVILLERS, and KRISTINA JOHNSTON,<br><br>Defendants. | Case No. 2:22-cv-01915-GMN-DJA<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I. PLAINTIFFS DO NOT ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER. ............................................................................... 2

    A. To Plead Deliberate Recklessness, Plaintiffs Must Specifically Allege Defendants' Knowledge of Facts or Access to Information Contradicting Their Statements. ........................................................................................................ 2

    B. The Confidential Witnesses Do Not Allege Any Individual Defendant Had Access to Specific Internal Information Contradicting Their Public Statements. .......... 4

        1. Four Confidential Witnesses Have No Personal Knowledge About the Individual Defendants' State of Mind. ................................................................ 4

        2. FE 5 Identifies No Specific Internal Information to Which the Individual Defendants Were Privy that Contradicted Specific Public Statements. ................... 5

    C. As this Court Previously Held, the Core Operations Doctrine Does Not Apply. ............ 8

    D. As this Court Previously Held, Defendants' Transitions Do Not Support an Inference of Scienter. ....................................................................................... 10

    E. As this Court Previously Held, Failure to Follow GAAP Does Not Support an Inference of Scienter. ....................................................................................... 10

    F. Plaintiffs' Allegations Do Not Raise a Strong Inference of Scienter When Considered Holistically .................................................................................... 11

II. PLAINTIFFS' CONTROLLING PERSON CLAIM SHOULD BE DISMISSED. ............. 12

III. FURTHER LEAVE TO AMEND SHOULD BE DENIED. .............................................. 12

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

Page

Cases

*Cheng v. Activision Blizzard, Inc.*,
  2023 WL 2136787 (C.D. Cal. Jan. 22, 2023) .................................................................. 5

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .......................................................................................... 9

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
  81 F.4th 918 (9th Cir. 2023) .................................................................................. 1, 5, 6

*Gammel v. Hewlett-Packard Co.*,
  905 F. Supp. 2d 1052 (C.D. Cal. 2012) ........................................................................ 9

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ........................................................................................ 11

*In re China Educ. Alliance Sec. Litig.*,
  2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) ............................................................... 3

*In re Crocs, Inc. Sec. Litig.*,
  774 F. Supp. 2d 1122 (D. Colo. 2011) .................................................................... 9, 12

*In re Downey Sec. Lit.*,
  2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) .............................................................. 7

*In re Facebook, Inc. Sec. Litig.*,
  87 F.4th 934 (9th Cir. 2023) .......................................................................................... 4

*In re Hansen Nat. Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................................................................ 7

*In re Maxwell Techs., Inc. Sec. Litig.*,
  18 F. Supp. 3d 1023 (S.D. Cal. 2014) ........................................................................... 5

*In re Medicis Pharm. Corp. Sec. Litig.*,
  689 F. Supp. 2d 1192 (D. Ariz. 2009) .......................................................................... 4

*In re Northpoint Commc'ns Group, Inc., Sec. Litig.*,
  184 F. Supp. 2d 991 (N.D. Cal. 2001) ......................................................................... 4

*In re PetSmart Sec. Litig.*,
  61 F. Supp. 2d 982 (D. Ariz. 1999) .............................................................................. 9

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ...................................................................................... 3

*In re Silicon Graphics Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ........................................................................................ 3

# TABLE OF AUTHORITIES
(continued)

Page

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ............................................................................ 7

*In re Twitter, Inc. Sec. Litig.*,
  506 F. Supp. 3d 867 (N.D. Cal. 2020) ............................................................................... 7

*In re UTStarcom, Inc. Sec. Litig.*,
  617 F. Supp. 2d 964 (N.D. Cal. 2009) ............................................................................. 10

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................................. 8

*McCasland v. FormFactor Inc.*,
  2008 WL 2951275 (N.D. Cal. July 25, 2008) .................................................................... 7

*Mogensen v. Body Cent. Corp.*,
  15 F. Supp. 3d 1191 (M.D. Fla. 2014) ........................................................................... 7, 8

*Morgan v. AXT, Inc.*,
  2005 WL 2347125 (N.D. Cal. Sept. 23, 2005) .................................................................. 9

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) .............................................................................................. 3

*Nvidia Corp. v. Ohman J*,
  No. 23-970, 2024 WL 3014476 (U.S. June 17, 2024) ....................................................... 6

*Sanchez v. Crocs, Inc*,
  667 F. App'x 710 (10th Cir. 2016) ............................................................................. 10, 11

*Schueneman v. Arena Pharm., Inc.*,
  840 F.3d 698 (9th Cir. 2016) ............................................................................................. 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 311 (2007) ........................................................................................................... 1

*United States v. City of Redwood City*,
  640 F.2d 963 (9th Cir. 1981) ............................................................................................. 3

*Waterford Township Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*,
  2010 WL 1332574 (S.D. Fla. Mar. 30, 2010) .................................................................... 7

*Wozniak v. Align Tech., Inc.*,
  850 F. Supp. 2d 1029 (N.D. Cal. 2012) ............................................................................. 7

*Yates v. Mun. Mortg. & Equity, LLC*,
  744 F.3d 874 (4th Cir. 2014) ........................................................................................... 11

*Zucco Partners, LLC v. Digimarc Corp.*,
  445 F. Supp. 2d 1201 (D. Or. 2006) .................................................................................. 2

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .................................................................................... passim

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................................ 1, 3

**Rules**

Fed. R. Civ. P. 8 ........................................................................................................................ 3

## INTRODUCTION

In opposing dismissal of their Second Amended Complaint ("SAC"), Plaintiffs rely primarily on the statements of one confidential witness (FE 5) and a Ninth Circuit case that the United States Supreme Court subsequently elected to review. Plaintiffs' reliance on both is misplaced, and Defendants' motion to dismiss should be granted with prejudice.

As this Court well knows, to prevent securities fraud complaints from proceeding past the pleading stage in service of suits whose nuisance value outweighs their merits, Congress imposed heightened pleading standards through the Private Securities Litigation Reform Act ("PSLRA") that require plaintiffs to state with particularity "'facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14 (2007) (quoting 15 U.S.C. § 78u-4(b)(2)). Plaintiffs routinely seek to meet the PSLRA's scienter requirement by alleging that a company's internal documents or internal communications contradict its public statements to investors. It has long been the law that, in such cases, the plaintiff must plead with particularity the *actual contents* of those documents or communications. In the case upon which Plaintiffs rely, *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023), a split panel of the Ninth Circuit found scienter adequately pled where a confidential witness stated that an internal document *likely* would have contradicted the CEO's public statements. The Supreme Court granted certiorari almost certainly to confirm the majority view that a confidential witness must have personal knowledge of the specific contents of a document to plausibly allege it contradicts a public statement.

*NVIDIA* does not help Plaintiffs anyway. Plaintiffs here allege that FE 5 participated in conference calls and received e-mails where two Individual Defendants—Patrick Roney and Katherine DeVillers—discussed unspecified "inventory problems" and "discrepancies." *See* SAC ¶¶ 64-66. Because FE 5 was a participant in these calls and e-mails, he ought to know exactly what was discussed. The standard rule, then, applies: to be probative of scienter, FE 5 must identify (1) the *specific content* of those communications; (2) specific access to that information by the relevant principals; and (3) *specific public statements* that directly contradict the internal information accessed by the defendants.

FE 5's statements do no such things. FE 5 does not describe the specific content of those communications beyond the generic topic of inventory "problems" and "discrepancies." Nor does FE 5 ever tie those communications to Defendants' allegedly inaccurate financial statements reflecting total inventory and cost of goods sold. The reader is left to speculate what connection, if any, there may be between the statements made or received by the Individual Defendants and the published statements, let alone whether those statements contradicted Vintage Wine's stated financials in any way. Under established precedent discussed *infra* at pages 7-8, this is not remotely good enough.

Plaintiffs also contend FE 5's account is corroborated by the five other confidential witnesses. But "a shared opinion among confidential witnesses does not necessarily indicate either falsity or a strong inference of scienter if the allegations themselves are not specific enough." *Zucco Partners, LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201, 1208 (D. Or. 2006) (quotation marks and citation omitted). And here, *none* of the six confidential witnesses offers any specific facts suggesting the Individual Defendants had access to information that contradicted, or even cast doubt upon, their public statements.

That leaves Plaintiffs with the same theories this Court previously rejected: the core operations doctrine, executive transitions, and Vintage Wine's restatement. As this Court already recognized, none of those theories finds traction here, where the most plausible explanation is that Vintage Wine was "a newly public company attempting quick growth … that [was] simply unable to keep up with the procedural demands of their achieved growth." ECF No. 45 at 32:3-5. This case is a story about the challenges of managing a fast-growing company, not fraud.

## ARGUMENT

**I.   PLAINTIFFS DO NOT ALLEGE FACTS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.**

**A.   To Plead Deliberate Recklessness, Plaintiffs Must Specifically Allege Defendants' Knowledge of Facts or Access to Information Contradicting Their Statements.**

To maintain a claim for securities fraud, the plaintiff must "state with particularity facts giving rise to a strong inference" of scienter, which means either an intent to deceive or deliberate

recklessness. 15 U.S.C. § 78u-4(b)(2)(A); *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017). Plaintiffs' opposition confirms that they cannot allege an intent to deceive, so they are relying on the deliberate recklessness prong. ECF No. 54 at 7:10-11. Deliberate recklessness is more than "*mere* recklessness or a motive to commit fraud." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (quotation marks and citation omitted). "It is instead 'an *extreme* departure from the standards of ordinary care,' … which 'presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it.'" *Id.* (citation omitted; emphasis in original).

Before addressing the merits of Plaintiffs' claim, it is worth emphasizing that Plaintiffs misconstrue the deliberate recklessness standard in two ways. *First*, Plaintiffs erroneously argue that dismissal is proper "only under extraordinary circumstances." ECF No. 54 at 19:15-17 (quoting *In re China Educ. Alliance Sec. Litig.*, 2011 WL 4978483, at *3 (C.D. Cal. Oct. 11, 2011)). The lone case cited by Plaintiffs' authority for that proposition—*United States v. City of Redwood City*, 640 F.2d 963 (9th Cir. 1981)—involved application of the notice pleading requirements for non-fraud claims under Rule 8, *not* the stringent requirements of the PSLRA. The PSLRA "ups the ante" (*Schueneman*, 840 F.3d at 705), by requiring plaintiffs to "plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999). This standard "'is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it.'" *Schueneman*, 840 F.3d at 705 (citation omitted).

*Second*, Plaintiffs dispute that, to establish deliberate recklessness, they must allege that Defendants had access to information that contradicted their public statements. ECF No. 54 at 9:20-25. But that is precisely what is required: To plead securities fraud based on deliberate recklessness, plaintiffs must "specifically allege[] defendants' knowledge of facts or access to information contradicting their public statements." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). For example, Plaintiffs may allege "contemporaneous receipt of a report with information directly at odds with an alleged misrepresentation," or "statements by witnesses that they told the actor the true facts before the false statement was made." *In re Northpoint Commc'ns Grp., Inc.*,

*Sec. Litig.*, 184 F. Supp. 2d 991, 997 (N.D. Cal. 2001) (quotation marks and citation omitted). Either way, to prove the type of *extreme* departure from the standards of ordinary care required, Plaintiffs must allege the Individual Defendants "actually knew of misconduct"; "[s]imply raising an inference that a company's executive '*should* have' discovered misconduct" is insufficient. *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 952 (9th Cir. 2023) (emphasis in original).

### B. The Confidential Witnesses Do Not Allege Any Individual Defendant Had Access to Specific Internal Information Contradicting Their Public Statements.

Plaintiffs seek to evade the governing standard because they cannot satisfy it. Plaintiffs attempt to establish scienter primarily by relying on six confidential witnesses. Confidential witness statements can support an inference of scienter only when (1) the witness is described with sufficient detail to establish their reliability and personal knowledge and (2) the statements reported are themselves indicative of scienter. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).

#### 1. Four Confidential Witnesses Have No Personal Knowledge About the Individual Defendants' State of Mind.

Four of the confidential witnesses—FE 1, FE 2, FE 4, and FE 6—never personally interacted with the Individual Defendants. *See* ECF No. 45 at 9:21-22, 16:15-19. The SAC "do[es] not provide any information linking [these four confidential witnesses] with the Defendants, or giving [them] personal knowledge of the Defendants' state of mind." *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1211 (D. Ariz. 2009). As to these confidential witnesses, Plaintiffs allege nothing more than "generalized claims about corporate knowledge" (*Zucco Partners*, 552 F.3d at 998), such as FE 1's conclusory statements that the Individual Defendants were "hyper aware" of inventory management problems (SAC ¶ 58) and that "senior officers knew" about problems with inventory (*id.* ¶ 68). Lacking any personal knowledge of the Individual Defendants' mental state, conclusory statements that they "knew" or "must have known" are flatly insufficient. *Zucco Partners*, 552 F.3d at 998; ECF No. 45 at 14:24-15:6, 22:14-23:2.

Plaintiffs continue to argue these four confidential witnesses are relevant because they

spoke with *other* managers about inventory problems and scienter may be inferred under the doctrine of *respondeat superior*. ECF No. 54 at 21 n.10. Plaintiffs are dead wrong. The purported scienter of non-defendants "cannot be imputed to the Company as Plaintiffs do not allege [they] made the statements at issue." *Cheng v. Activision Blizzard, Inc.*, 2023 WL 2136787, at *9 n.5 (C.D. Cal. Jan. 22, 2023). Plaintiffs' "claims are based upon statements by the individual defendants and in official filings signed by the individual defendants"; accordingly, Plaintiffs must prove "scienter as to the individuals who were responsible for the statements." *In re Maxwell Techs., Inc. Sec. Litig.*, 18 F. Supp. 3d 1023, 1032 (S.D. Cal. 2014). Plaintiffs' cited cases all concern imputing the knowledge of the individual defendants who made the allegedly false statements to the company itself, a different matter entirely.

### 2. FE 5 Identifies No Specific Internal Information to Which the Individual Defendants Were Privy that Contradicted Specific Public Statements.

Because four of the confidential witnesses lack any personal knowledge of the Individual Defendants' state of mind, Plaintiffs' opposition puts virtually all of their figurative eggs in the basket of FE 5, who worked as an "inventory management analyst" and was allegedly on conference calls and e-mails with Roney and DeVillers where software syncing issues were discussed.[1] *See* ECF No. 54 at 7:12-8:9, 12:9-14:20, 20:22-23:16; SAC ¶¶ 64-66. Plaintiffs argue that under the Ninth Circuit's decision in *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023), FE 5's statements are sufficient to support an inference of scienter. *Id.* at 23:17-24:7. Plaintiffs' argument is both legally and factually misguided.

Start with the law. In *NVIDIA*, the defendant CEO stated that the company's increased sales of processors were not driven by sales to crypto miners, a customer base with volatile demand. 81 F.4th at 925. The central issue was whether the CEO knew, from internal company documents he reviewed, how much of NVIDIA's revenue came from sales to crypto miners,

---

[1] FE 3, the other confidential witness who interacted with Defendants Roney and DeVillers, was a winemaker. SAC ¶ 27. He alleges that Roney helped to strategize how to increase inventory for popular brands, and how to not develop too much inventory for sluggish brands. SAC ¶ 121. Plaintiffs' opposition never explains how these utterly unremarkable interactions could possibly give rise to any inference of scienter.

- 5 -

Reply in Supp. of Mot. to Dismiss SAC
2:22-cv-01915-GMN-DJA

1  rather than gamers.  One confidential witness explained that NVIDIA kept track of who was
2  buying its processors, and input that data into a centralized sales database.  *Id.* at 938.  Another
3  confidential witness, who met monthly with the CEO, confirmed the CEO reviewed this sales
4  data.  *Id.* at 939.  The Ninth Circuit held these allegations supported an inference of scienter
5  because the CEO closely monitored sales data, which would have shown that a large portion of
6  processor sales were being used for crypto mining.  *Id.* at 940.

7  Dissenting, Judge Sanchez explained that the first confidential witness did not personally
8  access the global sales database, and so had no personal knowledge about what it said.  *Id.* at 958
9  (Sanchez, J., dissenting).  To be probative of scienter, Judge Sanchez explained, the confidential
10 witness must, first, "specifically describe the contents of that database," and, second, demonstrate
11 that the information therein "contradicted [the defendant's] public statements."  *Id.* at 958-59; *see*
12 *also id.* at 956 (to plead scienter, plaintiff must allege "the existence of specific internal
13 information, specific access to that information by the relevant principles, and specific public
14 statements that directly contradict the internal information accessed by the defendants").

15 On June 17, 2024—three days after Plaintiffs filed their opposition—the Supreme Court
16 granted certiorari in *NVIDIA*.  *Nvidia Corp. v. Ohman J*, No. 23-970, 2024 WL 3014476, at *1
17 (U.S. June 17, 2024).  The question presented is whether plaintiffs seeking to allege scienter
18 based on allegations about internal company documents "must plead with particularity the
19 contents of those documents."  Petition for Writ of Certiorari at *i, *NVIDIA Corp. v. E. Ohman J*,
20 No. 23-970, 2024 WL 989551 (U.S. Mar. 4, 2024).  As the petition explains, a majority of courts
21 have "ruled as a matter of law that plaintiffs seeking to plead scienter based on internal company
22 documents must plead with particularity the *actual contents* of those documents."  *Id.* at *4.

23 It is of course doubtful the Supreme Court granted certiorari to endorse the *NVIDIA*
24 majority's approach.  Ultimately, however, Plaintiffs' reliance on FE 5 fails regardless of what
25 the Supreme Court does.  Unlike in *NVIDIA*, Plaintiffs do not seek to meet the PSLRA's scienter
26 requirement by alleging that Vintage Wine's internal documents likely contradict its public
27 statements to investors.  Rather, Plaintiffs allege FE 5 was privy to internal communications
28 (conference calls and emails) with Defendants Roney and DeVillers that support an inference of

scienter. Because FE 5 was part of these conversations, and should be able to recount them, the law is clear.

*First*, Plaintiffs cannot base an inference of scienter on "unspecified … conversations." *In re Downey Sec. Litig.*, 2009 WL 2767670, at *12 (C.D. Cal. Aug. 21, 2009). Plaintiffs must allege not only when the communication occurred, and how they learned of it, but "specifics concerning information provided or received during such contact." *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1079-80 (N.D. Cal. 2001); *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1159 (C.D. Cal. 2007) (same). That is, a generalized allegation that the individual defendants participated in communications addressing a topic are insufficient without providing the *specific* information discussed. *See, e.g.*, *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 888 (N.D. Cal. 2020) (citing cases); *Waterford Twp. Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*, 2010 WL 1332574, at *14 (S.D. Fla. Mar. 30, 2010); *see also Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1219-20 (M.D. Fla. 2014) ("Simply put, courts remain 'skeptical' of confidential sources who, from behind the veil of anonymity, provide only non-specific descriptions of meetings.").

*Second*, the confidential witness must demonstrate that the specific communication "actually contradicted—or cast serious doubt upon—[the defendants'] public statements." *Mogensen*, 15 F. Supp. 3d at 1221; *McCasland v. FormFactor Inc.*, 2008 WL 2951275, at *8 (N.D. Cal. July 25, 2008). That is, Plaintiffs must establish a nexus between the allegedly contradictory internal communication and the challenged public statement.

FE 5 does not satisfy either requirement. FE 5 states that he participated in conference calls, "sometimes" attended by the Individual Defendants, in which "inventory problems and discrepancies with Microsoft NAV/CoreSense were discussed." SAC ¶ 65. This allegation is far too vague; it could mean anything. It identifies a general subject matter, but not the specifics of what was discussed. *See Wozniak v. Align Tech., Inc.*, 850 F. Supp. 2d 1029, 1042 (N.D. Cal. 2012) (complaint failed to allege scienter because "[a]lthough plaintiff refer[red] to the existence of sales and shipment data and ma[de] a general assertion about what the data showed, plaintiff allege[d] no hard numbers or other specific information") (alterations in original); *In re Wet Seal,*

*Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1174 (C.D. Cal. 2007) (allegations that defendants had access to real time reports allegedly showing defendants' deteriorating financial condition insufficient because plaintiffs did not allege any specific data that the individual defendants learned that was inconsistent with public statements).

The same is true for FE 5's statement that he was occasionally copied on emails sent by DeVillers "related to discussions about inaccurate inventory data in Microsoft NAV." SAC ¶ 66. What specifically did DeVillers say about the inventory data in Microsoft NAV? The SAC provides no specifics.

At the second step, Plaintiffs never connect the alleged communications with the public statements they claim were false. At core, Plaintiffs' theory is that Vintage Wine reported inventory and cost of goods numbers that "did not reflect the value of inventory that was damaged and/or destroyed." *E.g.*, SAC ¶ 99. Yet FE 5 never intimates that the conference calls or emails to which he was allegedly privy included specific information indicating that Defendants' public statements were inaccurate. FE 5 suggests there were discussions about "syncing issues" between two software programs. But FE 5 never links those syncing issues to the inventory numbers published in Vintage Wine's financial statements as required to state a claim. As a result, "this Court cannot draw a strong inference of scienter from [FE 5's] non-particularized descriptions of conference calls and" emails. *Mogensen*, 15 F. Supp. 3d at 1221.

### C.  As this Court Previously Held, the Core Operations Doctrine Does Not Apply.

Plaintiffs' reliance on the core operations doctrine also fails. In arguing otherwise, Plaintiffs must ignore what the core operations doctrine requires. ECF No. 54 at 27:25-27. As this Court previously explained, to demonstrate the Individual Defendants acted with scienter in misstating inventory and cost numbers reported in SEC filings, Plaintiffs must "put forward facts demonstrating that [Defendants] knew their reports conflicted with the SEC filing." ECF No. 45 at 25:7-8. That holding tracks Ninth Circuit law: the core operations doctrine requires particularized allegations suggesting that Defendants had actual "access to the underlying information from which the [challenged] accounting numbers were derived." *Zucco Partners*, 552 F.3d at 1001. For the reasons already explained, Plaintiffs' generalized allegations about

non-specific conversations over the syncing of two software programs does not equate to particularized allegations demonstrating access to information that conflicted with, or cast doubt on, Vintage Wine's SEC filings.

Plaintiffs regurgitate the argument this Court rejected (properly so)—it's enough Roney was described as a "hands-on" CEO with significant expertise.  ECF No. 54 at 26:18-20 (citing SAC ¶ 120).  But as this Court already held, ample Ninth Circuit precedent rejects such generalized allegations.  ECF No. 45 at 24 (citing cases).

Plaintiffs also invoke the second prong of the core operations doctrine, which permits an inference of scienter when "the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Zucco Partners*, 552 F.3d at 1000 (quotation marks and citation omitted).  Plaintiffs argue that "the scope of the inventory issues" supports application of the core operations doctrine because the $19.1 million write-down constituted 9% of inventory.  ECF No. 54 at 25:27-26:3.  But courts have rejected the argument that the magnitude of a write-down plays anything more than a "minor role in the scienter analysis"; "[i]f *intentional* misconduct could be inferred solely from … business losses, the PSLRA's heightened pleading requirements for scienter would be rendered meaningless." *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1077 (C.D. Cal. 2012); *see also* C*ity of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) (same).

Decisions about write-downs of inventory "involve the exercise of subjective judgments that do not lend themselves to allegations of securities fraud."  *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1150 (D. Colo. 2011).  For that reason, the decision to write off inventory "after the close of the Class Period does not necessarily read back on what the Company should have done, but did not do, during the Class Period, or on the falsity of the Company's financial statements during that period." *Morgan v. AXT, Inc.*, 2005 WL 2347125, at *14 (N.D. Cal. Sept. 23, 2005); *see also In re PetSmart, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 993 (D. Ariz. 1999) ("The pleading must provide some particularized support regarding inventory levels, the defendants' knowledge, and approximately when plaintiffs think the write-down should have occurred.").

### D. As this Court Previously Held, Defendants' Transitions Do Not Support an Inference of Scienter.

Plaintiffs' opposition provides no compelling reason why this Court should revisit its conclusion that the transition of Defendant Roney from CEO to Executive Chairman of the Board in February 2023, and Defendant DeVillers' transition from CFO to Executive Vice President in March 2022, and ultimate resignation in January 2023, do "not lead to a cogent or compelling inference of scienter." ECF No. 45 at 30:10-11. Plaintiffs argue that executive resignations "add one more piece to the scienter puzzle." ECF No. 54 at 28:15-16. But Plaintiffs still do not grapple with the fact that, unlike the cases upon which they rely, Roney and DeVillers were not forced to resign or terminated contemporaneously with the Company's financial restatements. *See In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975 (N.D. Cal. 2009). Both transitioned to new roles at Vintage Wine, which "cuts against the inference of scienter." ECF No. 45 at 31:9-11.[2]

### E. As this Court Previously Held, Failure to Follow GAAP Does Not Support an Inference of Scienter.

Nor does Plaintiffs' opposition provide any justification for revisiting the Court's well-supported conclusion that scienter cannot be inferred based on the fact that Vintage Wine restated financials, since "'the mere publication of a restatement is not enough to create a strong inference of scienter.'" ECF No. 45 at 20:20-22 (quoting *Zucco Partners*, 552 F.3d at 1000).

Quoting *Sanchez v. Crocs, Inc*, 667 F. App'x 710, 721 (10th Cir. 2016), Plaintiffs argue that scienter can be inferred from the restatement here because Defendants allegedly knew Vintage Wine's "'day-to-day inventory tracking system was error-prone.'" ECF 54 at 23:17-20. *Sanchez* is relevant here, but it does not help Plaintiffs.

The *Crocs* appeal involved only the plaintiffs' claims against Crocs' auditor, Deloitte. Plaintiffs argued that Deloitte was deliberately reckless in certifying Crocs' financials because the

---

[2] With respect to Defendant Kristina Johnston—who joined Vintage Wine as CFO in March 2022 and was the architect of Vintage Wine's remediation efforts—Defendants' motion to dismiss noted that the SAC contains no allegation that even purports to bear on Johnston's state of mind. ECF No. 50 at 16:3-4. Plaintiffs' opposition does not contest this point.

1    company used an error-prone Excel spreadsheet to track inventory, which meant "no one had
2    reliable data on inventory." 667 F. App'x at 712. This "archaic" tracking system ultimately
3    resulted in a $70 million inventory write-down. *Id.* at 713. Contrary to Plaintiffs' suggestion, the
4    Tenth Circuit did *not* hold that the scienter requirement would have been satisfied if Deloitte
5    knew Crocs' day-to-day inventory tracking system was error prone. Quite the opposite: the
6    Court held that "even accepting the complaint's allegations that Crocs's system for monitoring its
7    day-to-day inventory was flawed, a faulty data management system does not obviously suggest
8    either that Crocs's *annual* inventory was overvalued or that its controls over financial reporting
9    did not comply with" GAAP. *Id.* at 722. This is especially true given that Crocs conducted an
10   annual physical inventory count that was the basis for Crocs' financial reporting. *Id.*

This is precisely Defendants' point here: even assuming some Individual Defendants were involved in discussions about syncing two of Vintage Wine's day-to-day tracking systems, Plaintiffs never tether that syncing issue to the annual inventory count that Plaintiffs allege was inaccurate. "[T]he more compelling inference to be drawn from these facts is one of negligence," not fraud. *Sanchez*, 667 F. App'x at 724.

### F. Plaintiffs' Allegations Do Not Raise a Strong Inference of Scienter When Considered Holistically.

Considered holistically, the entire set of Plaintiffs' allegations fails to provide a strong inference of scienter at least as compelling as the alternative innocent explanation. "Only a few short months after going public, the company disclosed its material internal control failures and then set on a path to make things right by bringing in a CFO with public company experience and hiring more accounting staff." ECF No. 45 at 32:5-8. On its own accord, Vintage Wine disclosed to investors that it was taking remedial measures to improve its internal controls. It is illogical to think that a company intent on deceiving investors would identify, disclose, investigate, and remedy potential problems. *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th Cir. 2007) (management's disclosure of and investigation into potential problem "demonstrate[ed] a pursuit of truth rather than reckless indifference to the truth"); *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 888 (4th Cir. 2014) (same). Moreover, there is no allegation that any of the Individual

Defendants benefitted from these disclosed failures, either through stock sales or otherwise.

Against this, Plaintiffs rely on their six confidential witnesses. But those witnesses provide nothing more than generalized critiques and hearsay statements. Only two ever even interacted with the Individual Defendants, and one (FE 3) witness' most damning evidence is that Vintage Wine's CEO expressed an interest in promoting popular wine brands. At bottom, the SAC adds nothing to Plaintiffs' prior defective complaint but the statements of FE 5, who claims to have been on conference calls and e-mails with Roney and DeVillers where software syncing issues were discussed. As already explained, FE 5's statements lack any specificity about what the Individual Defendants said, and fail to connect those conversations with Vintage Wine's allegedly inaccurate financial statements. The fact remains that Plaintiffs have identified nothing—not an internal document, not a conversation, not any witness—suggesting that the Individual Defendants had access to facts that contradicted, or even cast doubt upon, the financial statements they published. As in *Crocs*, Plaintiffs' allegations about Vintage Wine's alleged shortcomings in tracking inventory perhaps describe mismanagement, but not at all actionable fraud. 774 F. Supp. 2d at 1147.

## II. PLAINTIFFS' CONTROLLING PERSON CLAIM SHOULD BE DISMISSED.

Plaintiffs do not dispute that if their primary section 10(b) is dismissed—which it should be—then their derivative section 20(a) claim fails as well. *Zucco Partners*, 552 F.3d at 990.

## III. FURTHER LEAVE TO AMEND SHOULD BE DENIED.

Having failed to cure the defects in their First Amended Complaint, further leave to amend should be denied. *See Zucco Partners*, 552 F.3d at 1007. Plaintiffs articulate no basis for further leave to amend because none exists. Plaintiffs have been on notice for two rounds of briefing now that their complaint fails to adequately allege scienter. This is not a curable defect. As such, dismissal should be with prejudice.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' SAC with prejudice.

Dated: July 12, 2024

KEMP JONES, LLP

By: */s/ Michael Gayan*
Michael Gayan, Bar No. 11135
Katrina Stark, Bar No. 16006
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada  89169

Attorneys for Defendants
VINTAGE WINE ESTATES, INC.,
PATRICK RONEY, KATHERINE
DEVILLERS, and KRISTINA
JOHNSTON

JONES DAY
John C. Tang, *Pro Hac Vice*
Dennis F. Murphy, Jr., *Pro Hac Vice*
555 California Street, 26th Floor
San Francisco, California  94104

Attorneys for Defendant
VINTAGE WINE ESTATES, INC.

**PROOF OF SERVICE**

I hereby certify that on the 12th day of July, 2024, I served a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** via the United States District Court's CM/EMF electronic filing system to all parties on the e-service list.

/s/ Ali Lott
An employee of Kemp Jones, LLP