**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MARILYN EZZES, *et. al.*,

Plaintiffs,

vs.

VINTAGE WINE ESTATES, INC., *et al.*,

Defendants.

Case No.: 2:22-cv-01915-GMN-DJA

**ORDER DENYING SECOND MOTION TO DISMISS**

Pending before the Court is the Second Motion to Dismiss, (ECF No. 50), filed by Defendants Vintage Wine Estates, Inc., Patrick Roney, Katherine DeVillers, and Kristina Johnston. Plaintiffs Marilyn Ezzes and Jeffrey A. Davies filed a Response, (ECF No. 54), to which Defendants filed a Reply, (ECF No. 57). Because the Court finds that Plaintiffs have alleged a sufficiently strong inference of scienter, the Court **DENIES** Defendants' Second Motion to Dismiss.

## I. BACKGROUND[1]

This case arises from Defendants' alleged securities fraud that led to the decline of Vintage Wine's common stock value. (*See generally* Second Am. Compl. ("SAC"), ECF No. 48). The Lead Plaintiffs are stockholders who bring this class action against Vintage Wine and three of its executives on behalf of persons and entities who acquired Vintage Wine common stock between October 31, 2021, and February 8, 2023, (the "Class Period"). (*Id.* ¶¶ 1–2). Defendant Roney founded Vintage Wine and served as CEO until February 8, 2023, at which point he transitioned to Executive Chairman of the Board of Directors. (*Id.* ¶¶ 21, 74).

[1] For purposes of analyzing a Motion to Dismiss, a Court must accept all factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Defendant DeVillers served as CFO from August 2018 until March 7, 2022, and then served as Executive Vice President until her resignation on January 27, 2023. (*Id.* ¶ 22). Defendant Johnston took over as CFO on March 7, 2022. (*Id.* ¶ 23).

The Court's previous Order Granting the First Motion to Dismiss, (ECF No. 45), contains a detailed overview of the facts in this case, which the Court incorporates here. However, for purposes of this Order, the Court will provide a summary of Plaintiffs' allegations.

Vintage Wine went public in June 2021, and shortly thereafter announced that it had "identified a material weakness" in its financial reporting relating to inventory accounting. (SAC ¶ 4). Plaintiffs allege that while Vintage Wine claimed it was remedying the deficiencies, it was unable to maintain accurate inventory records due to staffing problems and proper procedures. (*Id.* ¶ 5). Their claim is based on the assertion that the Company's executives were aware of these problems, yet failed to disclose three things: (1) that Vintage Wine had not taken significant measures to remediate the inventory balance problems, (2) that the company's reported inventory did not reflect the value of inventory that was lost or destroyed, and that (3) as a result, its inventory balances were overstated. (*Id.* ¶ 6).

The following year, in September 2022, Vintage Wine disclosed that it had recorded $19.1 million in inventory adjustments and that its 2022 fourth quarter included $6.8 million in overhead burden from the first two quarters. (*Id.* ¶ 7). The price of Vintage Wine stock fell 40.3%. (*Id.* ¶ 8). Plaintiffs allege that this disclosure did not reveal the full extent of the accounting issues because their net income was overstated due to an accounting error relating to the classification of certain assets. (*Id.* ¶ 9). In February 2023, Vintage Wine disclosed that its next quarterly report would be delayed because management had identified impairment indicators, stated that certain previously issued financial statements should no longer be relied

on and should be restated, and noted that CEO Roney had been removed. (*Id.* ¶ 10). The stock price fell another 27.6%. (*Id.* ¶ 11).

The Court granted Defendants' First Motion to Dismiss because the facts alleged in the First Amended Complaint failed to provide a strong inference of scienter. (Order Granting First Mot. Dismiss, ECF No. 45). Plaintiffs filed their Second Amended Complaint, ("SAC"), which Defendants again move to dismiss. (Second Mot. Dismiss, ECF No. 50). A few months later, Vintage Wine filed a Notice of Pendency of Bankruptcy, (ECF No. 58), so Plaintiffs dismissed Defendant Vintage Wine, only. (Not. Voluntary Dismissal, ECF No. 59).

Plaintiffs again bring two claims: 1) violations of Section 10(b) of the Exchange Act and Rule 10b-5 against all Defendants and 2) violations of Section 20(a) of the Exchange Act against the Individual Defendants. (*Id.* ¶¶ 152–69). Defendants filed the instant Motion to Dismiss on the grounds that the SAC still fails to plead a claim for securities fraud because Plaintiffs did not allege facts sufficient for a finding of scienter. (*See generally* Second Mot. Dismiss).

## II. <u>LEGAL STANDARD</u>

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Beyond meeting the demands of Rule 12(b)(6), a plaintiff asserting securities fraud claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321–24 (2007). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). In other words, the complaint "must include 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)) (internal quotations omitted). Rule 9(b)'s particularity requirement ensures that defendants are on "notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106.

## III. <u>DISCUSSION</u>

Plaintiffs allege that Defendants carried out a scheme to deceive the public and cause them to purchase Vintage Wine's securities at artificially inflated prices. (SAC ¶ 154). To state a claim for relief under Section 10(b), a plaintiff must allege six elements: (1) Defendants made a material misrepresentation or omission, (2) with scienter or intent to defraud, (3) in connection with the purchase or sale of a security, (4) Plaintiffs relied on that misrepresentation, (5) Plaintiffs suffered economic loss, and (6) that loss was caused by the misrepresentation or omission. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

Defendants again argue that the SAC should be dismissed for failure to allege scienter under the higher PSLRA pleading standard. (*See generally* Second Mot. Dismiss). Defendants first contend that because Plaintiffs did not allege facts bearing on the state of mind of CFO Kristina Johnston, the claims against her should be "dismissed out of hand." (*Id.* 1:21–23). Next, they argue that the SAC's two new confidential witnesses do not fix the issues identified in the Court's first order because they do not allege facts indicating that "Defendants had access to contradictory inventory and costs data, let alone knew or recklessly disregarded that contradictory information." (*Id.* 1:28–2:2).

To plead scienter, a plaintiff must "'state with particularity facts giving rise to a strong inference' that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) (quoting 15 U.S.C. § 78u–4(b)(2)). "[D]eliberate recklessness is 'an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009)). As such, "[f]acts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). "To meet this pleading requirement, the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001) (internal quotation marks and citation omitted). Courts must "accept all factual allegations in the complaint as true" and "must consider the complaint in its entirety." *Tellabs, Inc.*, 551 U.S. at 322.

To bolster their scienter allegations, Plaintiffs include additional statements from the former employees included in their FAC, as well as statements from two additional employees. They allege that the statements demonstrate that the Defendants knew the inventory figures were likely inaccurate, but still issued the inventory results without disclosing this fact. (Resp. 1:1–3). Plaintiffs contend that existing inventory management issues and the Company's inability to maintain accurate inventory records resulted in false statements. (*Id.* 1:6–11). The Company had not taken significant remedial steps, and its reported inventory did not reflect the inventory that was damaged or destroyed; thus, inventory balances were overstated. (*Id.*); (SAC ¶ 99).

"[A] complaint relying on statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements." *Zucco Partners*, 552 F.3d at 995. "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." *Id.* "Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Id.* "[G]eneral allegations about management's role in a corporate structure and the importance of the corporate information about which management made . . . misleading statements" is not enough to satisfy the PSLRA if the allegations are not supplemented by "detailed and specific allegations about management's exposure to factual information within the company." *Id.* at 1000. And "generalized claims about corporate knowledge are not sufficient to create a strong inference of scienter, since they fail to establish that the witness reporting them has reliable personal knowledge of the defendants' mental state." *Id.* at 998. When analyzing the first prong, a court must "look to 'the level of detail provided by the confidential sources, the corroborative nature of the other facts alleged (including from other sources), the coherence and plausibility of the

allegations, the number of sources, the reliability of the sources, and similar indicia.'" *Id.* at 995 (quoting *In re Cabletron Sys., Inc.*, 311 F.3d 11, 29 (1st Cir. 2002).

The Court previously found that Plaintiffs failed to allege scienter through the statements of its former employees because the statements lacked "details establishing personal knowledge of the Defendants' state of mind." (Order Granting Mot. Dismiss 9:21–22). After evaluating the statements of four Former Employee ("FEs") together, the Court noted that while "the statements may support a finding of negligence in the way Vintage Wine manages and tracks its inventory, these statements do not imply that Defendants acted intentionally, or were deliberately reckless in not investigating overstated inventory numbers and understated costs." (*Id.* 16:9–12).

The SAC adds allegations from two new former employees: FE 5 and FE 6. Particularly relevant to Defendants' state of mind are the allegations of FE 5. FE 5 worked as an inventory management analyst from August 2020 until July 2023 and was responsible for coordinating shipments and ensuring that the Company had the wines that were needed to fulfil demand. (SAC ¶ 29). He reported to Karla Reed, Vice President of Finished Goods Supply Chain, until March 2023, and then reported to David Soldavini, the Director of Warehouse and Distribution. (*Id.*).

FE 5 stated that there were issues with the syncing of the Company's two management software systems: Microsoft NAV and CoreSense. (*Id.* ¶ 64). NAV was the company's "system of record" with accounting and finance functionality, and CoreSense managed inventory levels. (*Id.*). He noted that because these systems weren't syncing, inventory levels were regularly "overstated and understated." (*Id.*). For example, on various occasions, NAV would indicate that the company had inventory of a brand not actually in stock, and other times it did not account for obsolete inventory. (*Id.*).

Importantly to demonstrate Defendants' scienter, FE 5 stated that "Roney, DeVillers, and Johnston were aware of the inventory and software problems because he participated in periodic conference calls with these executives in which the inventory problems and discrepancies with Microsoft NAV/CoreSense were discussed." (*Id.* ¶ 65).[2] He recounted a "constant triage" on the systems to get them to match, which resulted in conference calls to address the problems. (*Id.*). He further stated that Defendants Roney and DeVillers, in addition to non-parties Soldavini and Wheatley, "were routinely copied on various emails in which inventory problems were discussed." (*Id.* ¶ 66). He recalled that he was copied on emails sent by Defendant DeVillers about inaccurate inventory data in NAV, in which she sent NAV screenshots. (*Id.*). FE 5 further noted that despite repeated complaints about these problems, the senior executives failed to adequately address them and overhaul the inventory systems. (*Id.* ¶ 67).

FE 5's allegations clear the first hurdle in the Ninth Circuit test because he, as a witness, is described with sufficient particularity to establish his reliability and personal knowledge. It is logical that an inventory analyst responsible for fulfilling orders would be included on calls regarding incorrect inventory levels. He provides a high level of detail and describes specific situations and occurrences in which the company's inventory tracking software did not match its financial and accounting software. Further, his allegations are corroborated by statements by other former employees, such as FE 1, FE 2, and FE 4, who reported that wines that were supposed to be in stock, were not in the warehouse. (*See* SAC ¶¶ 48–55). FE 3 corroborates the NAV system's issues and the problems it caused internally. (*Id.* ¶ 78). And new allegations by FE 6, a production logistics coordinator, IT support specialist, and assistant warehouse

---

[2] Defendants argue that the SAC does not include any facts about Defendant Johnston, but because FE 5 alleges that she was included in conference calls about the inventory problems, the Court disagrees. (*See* Second Mot. Dismiss 9:3–4).

supervisor, confirmed the unreliability of inventory numbers due to a lack of training and staff turnover. (*Id.* ¶¶ 30, 46).

As to the second prong of the test, the newly added allegations by FE 5 bridge the gap between the existence of inventory problems and Defendants' knowledge of them. The allegations that Defendants were included in conference calls and sent emails about the inventory reporting problems are themselves indicative of scienter and demonstrate Defendants' "exposure to factual information within the company." *Zucco Partners*, 552 F.3d at 1000. In the Company's initial 2021 acknowledgement in which it identified a weakness in its inventory financial report, it stated that it was working to remedy the deficiencies. But FE 5 stated that despite complaints about the inventory system, the Executives failed to take significant action to remedy the problems. Instead, they were in a constant "triage." And in the subsequent Form 10-Q Disclosures filed between October 2021 and November 2022, the forms stated that the weakness had still not been remediated but that additional staff had been hired to help. But taking the allegations of the FEs as true, it is plausible that the Defendant Executives acted with intent or deliberate recklessness by failing to disclose that they had not actually taken significant measures to remediate the problem or that their inventory numbers were likely overstated. The Defendant Executives were aware of the inventory problems yet failed to disclose the extent of those problems or their effect on costs.

Addressing FE 5's allegations, Defendants argue that his fatal flaw is that he does not tie the syncing issue to the inaccurate inventory numbers in Vintage Wine's disclosures. (*Id.* 14:11–12). They frame the issue as "whether Defendants released inventory numbers knowing, or having reason to know, of the existence of information materially contradicting those numbers." (*Id.* 14:18–20) (citing *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021)). They also point out that the allegations do not clarify what specific information was learned on the calls, or what information DeVillers relayed by

email. (*Id.* 15:7–9). In paragraph 74 of the SAC, however, Plaintiffs allege that the inaccurate numbers in the inventory management software were the *same numbers* used to calculate the value of the Company's inventory in SEC filings. (SAC ¶ 74) (emphasis added). If Defendants were on calls and emails confirming that these numbers were incorrect, as FE 5 alleges, then they did in fact know, or have reason to know, of information contradicting those numbers.

In *Zucco Partners*, the Ninth Circuit explained that courts first "determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter," and if "no individual allegations are sufficient," courts conduct a holistic review to determine whether all the allegations combined create a strong inference of scienter. 552 F.3d at 992. The Court finds that the newly added FE statements, particularly those from FE 5, are sufficient to create a strong inference of scienter that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc.*, 551 U.S. at 324. Thus, the Court does not reevaluate the parties' arguments around other potential scienter indicators such as the Core Operations Doctrine, the timing of resignations, and GAAP violations. The inference from the FEs statements "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences." *Id.* And even though only two of the FEs allege interaction with the Executive Defendants in this case, combining the allegations of all 6 FEs in this case supports an inference that Defendants were at least deliberately reckless in failing to disclose the extent of the Company's known inventory issues and its effects on financial statements. Therefore, because the Court finds that Plaintiffs' SAC added allegations sufficient for the Court to find a strong inference of scienter, the Defendants' Second Motion to Dismiss is DENIED.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Second Motion to Dismiss, (ECF No. 50), is **DENIED.**

**DATED** this 13 day of December, 2024.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT