Richard C. Gordon (Nevada Bar #9036)
Brian R. Reeve (Nevada Bar #10197)
SNELL & WILMER L.L.P.
1700 South Pavilion Center Drive
Suite 700
Las Vegas, Nevada 89135-1865
Telephone: 702.784.5200
Facsimile: 702.784.5252
Email: rgordon@swlaw.com
        breeve@swlaw.com

Joseph G. Adams *(Pro Hac Vice Forthcoming)*
Zachary G. Schroeder *(Pro Hac Vice Forthcoming)*
SNELL & WILMER L.L.P.
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: 602.382.6000
Facsimile: 602.382.6070
jgadams@swlaw.com
zschroeder@swlaw.com

*Attorneys for Defendants Patrick Roney,*
*Katherine Devillers, and Kristina Johnson*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARILYN EZZES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PATRICK RONEY, KATHERINE DEVILLERS, and KRISTINA JOHNSON,<br><br>Defendants. | Case No. 2:22-cv-01915-GMN-DJA<br><br>**ANSWER TO SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

Defendants Patrick Roney, Katherine DeVillers, and Kristina Johnson (collectively "Defendants") are all former employees of Vintage Wine Estates, Inc. ("Vintage Wine"). Defendants have been sued in their personal capacity and are responding to the Second Consolidated Amended Class Action Complaint [ECF 48] based on their personal knowledge. Defendants are not responding on behalf of Vintage Wine, do not speak for Vintage Wine, and do not have access to the information in Vintage Wine's possession, custody, or control.  Subject to

the foregoing, Defendants respond to Plaintiffs' Second Consolidated Amended Class Action Complaint as follows:

Introductory Paragraph: The allegations contained in the introductory paragraph constitute legal conclusions to which no response is required.  However, to the extent a response is required, Defendants deny that substantial evidentiary support exists for the allegations set forth in the Second Consolidated Amended Class Action Complaint.  Defendants further lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the introductory paragraph.

## I.   NATURE OF THE ACTION[1]

1.   Responding to the allegations in paragraph 1, Defendants admit that Plaintiffs Marilyn Ezzes, Jeffrey A. Davies, and Michael F. Salbenblatt (together, the "Plaintiffs") have brought a federal securities class action.  Defendants deny the remaining allegations of paragraph 1.

2.   Responding to the allegations in paragraph 2, Defendants admit that Vintage Wine Estates, Inc. ("Vintage Wine") was founded in 2007.  Defendants further understand that Vintage Wine is currently in Chapter 11 bankruptcy.  Therefore, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 2.

3.   Defendants admit the allegations in paragraph 3.

4.   Responding to the allegations in paragraph 4, Defendants admit that Vintage Wine filed a Form 10-K on or about October 13, 2021 which stated, in part:  "In the course of our financial close process for the fiscal year ended June 30, 2021, we identified a material weakness in our internal control over financial reporting. . . . The material weakness identified relates to our process and controls regarding the tracking of costs through the various stages of inventory accounting, particularly as they pertain to bulk wine and spirits."  Defendants deny the remaining allegations in paragraph 4 and deny any allegation inconsistent with the Form 10-K.

---

[1] Defendants adopt the headings in Plaintiffs' Second Consolidated Amended Class Action Complaint solely for the Court's convenience.  Defendants deny any fact or implication contained therein.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

5. In responding to the allegations in paragraph 5, Defendants admit that they were remedying internal control deficiencies. Defendants deny the remaining allegations in paragraph 5.

6. Defendants deny the allegations in paragraph 6.

7. Responding to the allegations in paragraph 7, Defendants admit that on September 13, 2022, Vintage Wine filed a Form 8-K, Form 10-K, and Form 10-Q/A with the Securities Exchange Commission ("SEC"). Defendants deny any allegation in paragraph 7 that is inconsistent with Vintage Wine's public SEC filings on September 13, 2022.

8. Responding to the allegations in paragraph 8, Defendants admit that on September 14, 2022, the price of Vintage Wine stock fell from the prior day's close of $5.53 per share to close at $3.30 per share. Defendants deny the remaining allegations contained in paragraph 8.

9. Defendants deny the allegations in paragraph 9.

10. Responding to the allegations in paragraph 10, Defendants admit that on February 8, 2023, Vintage Wine filed a Form 8-K and a Form 12b-25 (providing notice of late filing for Vintage Wine's Form 10-Q) with the SEC. Defendants deny any allegation in paragraph 10 that is inconsistent with Vintage Wine's SEC filings on February 8, 2023.

11. Responding to the allegations in paragraph 11, Defendants admit that on February 9, 2023, Vintage Wine's stock price fell from the prior day's close of $2.79 per share to close at $2.02 per share. Defendants deny the remaining allegations contained in paragraph 11.

12. Defendants deny the allegations in paragraph 12.

## II. JURISDICTION AND VENUE

13. Responding to the allegations in paragraph 13, Defendants admit that Plaintiffs' Second Consolidated Amended Class Action Complaint asserts claims under Section 10(b) and 20(a) of the Exchange Act and the rules and regulations promulgated thereunder. Defendants deny the remaining allegations in paragraph 13, including that Plaintiffs are entitled to any relief requested in the Second Consolidated Amended Class Action Complaint.

14. Defendants admit the allegations in paragraph 14.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

15. Defendants admit that venue is proper in this District. Defendants deny the remaining allegations contained in paragraph 15.

16. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16.

**III. PARTIES**

**A. Plaintiffs**

17. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.

18. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18.

19. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.

**B. Defendants**

20. Responding to the allegations in paragraph 20, Defendants admit that Vintage Wine is incorporated under the laws of Nevada. Defendants deny Vintage Wine's common stock is traded on the NASDAQ exchange under the symbol "VWE." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 20.

21. Responding to the allegations in paragraph 21, Defendants admit that Defendant Patrick Roney ("Roney") founded Vintage Wine in 2007 and served as its Chief Executive Officer until February 7, 2023. Defendants further admit that Roney began his career as a sommelier in Chicago. Defendants further admit that in 2000, Roney acquired and began to operate the fine wine brand Girard Winery of Napa Valley, CA. Defendants further admit that in 2007, Roney and his business partner Leslie Rudd acquired Windsor Vineyard, a direct-to-consumer winery, and merged it with Girard Winery. Defendants deny the remaining allegations contained in paragraph 21.

22. Responding to the allegations in paragraph 22, Defendants admit that Defendant Kathy DeVillers ("DeVillers") served as Vintage Wine's Chief Financial Officer ("CFO") from around August 2018 through March 2022. Defendants further admit that after DeVillers served as

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

Vintage Wine's CFO, she served as the Executive Vice President of Acquisition Integrations until DeVillers resigned in January 2023. Defendants further admit that before joining Vintage Wines, DeVillers was the CFO at a private wine maker. Defendants deny the remaining allegations contained in paragraph 22.

23. Responding to the allegations in paragraph 23, Defendants admit that Defendant Kristina Johnston ("Johnston") was hired as Vintage Wine's CFO in March 2022. Defendants deny the remaining allegations contained in paragraph 23.

24. Defendants deny the allegations in paragraph 24.

**C.    Former Employees**

25. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26.

27. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27.

28. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28.

29. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29.

30. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30.

**IV.    SUBSTANTIAL ALLEGATIONS**

**A.    Special Purpose Acquisition Companies And Their Inherent Conflicts of Interest**

31. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31.

32. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32.

33. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33.

34. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34.

35. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35.

36. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36.

**B.     Bespoke Capital, A SPAC Focused On The Cannabis Industries, Rushes Into A Transaction Taking Vintage Wine Public**

37. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37.

38. Responding to the allegations in paragraph 38, Defendants admit that in February 2021, Bespoke Capital entered into an agreement with Vintage Wine to take the company public. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 38.

39. Responding to the allegations in paragraph 39, Defendants admit that after the merger, Vintage Wine's common stock began trading under the ticker symbol "VWE" on the NASDAQ. Defendants deny that Vintage Wine's common stock is still traded on the NASDAQ.

**C.     Defendant Failed To Disclose Vintage Wine's Mismanagement Of Inventory And Improper Accounting Practices**

**1.     The Company Touted A Growth By Acquisition Strategy**

40. Upon information and belief, Vintage Wine filed for Chapter 11 bankruptcy. Defendants are not current employees of Vintage Wine and have no knowledge regarding Vintage Wine's current operations, if any. As such, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40.

41. Responding to the allegations in paragraph 41, Defendants admit that, during certain periods of their employment, Vintage Wine's growth strategy included a focus on acquisitions.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 41.

42.    Defendants deny the allegations contained in paragraph 42.

**2.    Defendants Failed To Manage Inventory Properly**

43.    Responding to the allegations in paragraph 43, Defendants admit that Vintage Wine experienced inventory issues as set forth in public disclosures.  Defendants deny the implication that Defendants knew of any inaccuracies before the time period when they were publicly disclosed. Defendants also deny that Vintage Wine's accounting department was not robust enough to manage the scale and complexity of Vintage Wine's business.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 43.

44.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44.

45.    Responding to the allegations in paragraph 45, Defendants admit that the warehouse previously kept paper records.  Defendants deny the remaining allegations contained in paragraph 45.

46.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46.

47.    Responding to the allegations in paragraph 47, Defendants admit that employees from multiple departments assisted with physical inventory counts.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 47.

48.    Responding to the allegations in paragraph 48, Defendants deny that Vintage Wine's inventory methods were "archaic." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 48.

49.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49.

50.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50.

- 7 -

51. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51.

52. Responding to the allegations in paragraph 52, Defendants deny that Vintage Wine's inventory issues frustrated its marketing efforts. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52.

53. Responding to the allegations in paragraph 53, Defendants admit that Vintage Wine used a direct-to-consumer sales platform called "CORESense." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 53.

54. Responding to the allegations in paragraph 54, Defendants deny that Vintage Wine mismanaged its inventory. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 54.

55. Responding to the allegations in paragraph 55, Defendants admit that employees from multiple departments assisted with physical inventory counts. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 55.

56. Responding to the allegations in paragraph 56, Defendants deny that Vintage Wine's marketing efforts were frustrated, that it failed to maintain its product quality, or that product quality affected the value of Vintage Wine's inventory. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 56.

57. Responding to the allegations in paragraph 57, Defendants deny that contamination and poor recordkeeping combined to have a corrosive effect on the value of Vintage Wine's inventory. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 57.

58. Defendants deny the allegations contained in paragraph 58.

59. Responding to the allegations in paragraph 59, Defendants deny there was a lack of good leadership. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 59.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

60. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60.

61. Responding to the allegations in paragraph 61, Defendants admit that, after Vintage Wine went public, physical counts of Vintage Wine's inventory were conducted. Defendants further admit that after physical counts, inventory numbers would be updated to reflect the results of the physical count. Defendants deny the remaining allegations contained in paragraph 61.

**3.    The Company Did Not Accurately Record Costs Of Goods Sold**

62. Responding to the allegations in paragraph 62, Defendants deny that Vintage Wine's internal calculations of accrued costs on its inventory were "screwed up." Defendants further deny that Vintage Wine's internal calculations of costs were wrong, impaired the ability of Vintage Wine to sell its products profitably, or get an accurate sense of the value of its inventory. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 62.

63. Defendants admit that Vintage Wine switched its inventory management system to Microsoft Navision in or around August 2018. Defendants deny that Vintage Wine wrote "formulas" to calculate the cost-of-goods for units of inventory, or volumes, sales prices, or estimated margins. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63.

64. Responding to the allegations in paragraph 64, Defendants admit that Microsoft Navision was Vintage Wine's accounting and finance system whereas the CoreSense system was primarily used to manage customer data and shipping transactions. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 64.

65. Responding to the allegations in paragraph 65, Defendants admit that there were issues with the Microsoft Navision and CoreSense systems communicating with one another. Defendants deny that they were "always informed with what was going on." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

66.     Responding to the allegations in paragraph 66, Defendants admit they were copied on various emails in which certain inventory issues were discussed. Defendants deny that "there were a lot of emails that were sent out about these kinds of issues." Defendant DeVillers further admits that she had access to the Microsoft Navision system. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 66.

67.     Defendants deny the allegations contained in paragraph 67.

68.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 68.

69.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69.

70.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70.

71.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71.

72.     Defendants deny the allegations contained in paragraph 72.

73.     Defendants deny the allegations contained in paragraph 73.

74.     Defendants deny the allegations contained in paragraph 74.

75.     Responding to the allegations in paragraph 75, Defendants admit that Vintage Wine monitored the costs associated with making products. Defendants also admit that winemakers were expected to track costs that went into the wine they were producing. Defendants deny the remaining allegations contained in paragraph 75.

76.     Responding to the allegations in paragraph 76, Defendants admit that certain expenditures needed prior approval by DeVillers. Defendants further admit that DeVillers had authority to approve or deny these requests. Defendants deny DeVillers was highly knowledgeable about specific product pricing, but admit that DeVillers was generally knowledgeable about product pricing and inventory. Defendants lack knowledge or information sufficient to for a belief as to the truth of the remaining allegations contained in paragraph 76.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

77. Responding to the allegations in paragraph 77, Defendants admit that, at some point in 2022, Vintage Wine informally began using a draft spreadsheet to estimate product costs and profitability. Defendants deny that this was a document created or implemented by the finance department. Defendants further deny that winemakers could obtain approval for large expenditures solely through this communal spreadsheet. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 77.

78. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 78.

79. Responding to the allegations in paragraph 79, Defendants admit only that Vintage Wine experienced turnover with some departments and some positions. Defendants deny the remaining allegations contained in paragraph 79.

**D.     The Company Admits That Its Financial Statements Were Overstated And Announces The Removal Of Its Founder And CEO**

80. Defendants admit the allegations contained in Paragraph 80.

81. Responding to the allegations in paragraph 81, Defendants admit that on September 13, 2022, after the close of trading, Vintage Wine filed a Form 10-K with the SEC. Defendants further admit that Roney and Johnston signed the Form 10-K which stated, in part: "For the year ended June 30, 2022, the Company recorded a $19.1 million non-cash inventory write down. Specifically, the inventory write down related to physical inventory count adjustments of $12.4 million, $3.7 million related to the establishment of inventory reserves and $3.0 million related to the impact of additional remediation efforts." Defendants further admit that the Form 10-K stated, in part: "Gross profit for the year ended June 30, 2022 increased $14.6 million, or 19.4%, to $90.0 million, from $75.4 million for the year ended June 30, 2021. The increase in gross profit was primarily driven by the strong DTC post-COVID growth of $10.6 million. Acquisitions contributed an additional $13.1 million of gross profit. These increases were partially offset by $19.1 million of non-cash inventory write-downs identified through material weakness remediation efforts." Defendants further admit that the Form 10-K stated, in part: "Loss from operations for the year ended June 30, 2022 was $7.9 million, a decrease of $17.1 million from income of $9.2 million for

the year ended June 30, 2021. The decrease was driven by $19.1 million non-cash inventory write-downs identified through material weakness remediation efforts, offset by increased growth in our B2B and DTC segments." Defendants deny paragraph 81 to the extent it mischaracterizes any statement in the Form 10-K.

82. Responding to the allegations in paragraph 82, Defendants admit that on September 14, 2022, the price of Vintage Wine stock fell from the prior day's close of $5.53 per share to close at $3.30 per share. Defendants deny the remaining allegations contained in paragraph 82.

83. Responding to the allegations in paragraph 83, Defendants admit that on February 8, 2023, after the close of trading, Vintage Wine filed a Form 8-K with the SEC. Defendants further admit that the Form 8-K stated, in part: "the Company and Patrick Roney, founder of VWE, entered into a letter agreement (the "Letter Agreement") whereby Mr. Roney voluntarily elected to transition from Chief Executive Officer of the Company to Executive Chairman of the Board, effective February 7, 2023." Defendants further admit that the Form 8-K stated, in part:

Item 4.02 — Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review

On February 5, 2023, the Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of the Company, after discussion with management and the Company's independent registered public accounting firm, determined that the Company's previously issued financial statements as of and for the three months ended September 30, 2022 (the "Subject Period") should no longer be relied upon and should be restated due to the identification of an accounting error.

The restatement results from an accounting error relating to the classification of certain assets and the classification and timing of recording certain costs for the Subject Period. Accordingly, investors should no longer rely on the Company's previously issued financial statements, earnings release or similar communications relating to the Subject Period.

These required adjustments were identified during the Company's financial close process for the second quarter of fiscal 2023 and did not involve any misconduct with respect to the Company, its management or employees.

As a result of the accounting error identified, the Company will:

a)   restate its unaudited condensed consolidated financial statements and the notes thereto for the Subject Period; and
b)   amend its Management's Discussion and Analysis of Financial Condition and Results of Operations ("MD&A") for the Subject Period.

- 12 -

For the Subject Period, the restatement is expected to result in an increase in net revenue of approximately $0.7 million, an increase in cost of goods sold of approximately $2.9 million and a decrease in selling, general, and administrative expenses of approximately $0.6 million, resulting in an approximately $0.8 million decrease in net income. After giving effect to these changes, the Company expects diluted earnings per share allocable to common stockholders for the Subject Period as previously reported will be reduced from $0.02 to $0.00. The restatement is not expected to impact the Company's historical net earnings beyond the Subject Period. In addition, current assets decreased $1.3 million and current liabilities decreased $0.5 million. The description in this report of the accounting error, the required adjustments and the expected impacts of the restatement are preliminary, unaudited and subject to further change in connection with the completion of the restatement.

The Company intends to file an amendment to its Quarterly Report on Form 10-Q for the quarterly period ended September 30, 2022 (the "Amended Q1 10-Q") in order to restate the financial statements for the Subject Period as soon as practicable.

The Company's management and the Audit Committee have discussed the matters disclosed in this Item 4.02 with the Company's independent registered public accounting firm, Cherry Bekaert LLP.

Defendants deny paragraph 83 to the extent it mischaracterizes any statement in the Form 8-K.

84.    Responding to the allegations in paragraph 84, Defendants admit the Form 8-K Vintage Wine filed on February 8, 2023 stated, in part:  "On February 8, 2023, the Company issued a press release announcing, among other things, that the filing of the Company's Quarterly Report on Form 10-Q for the quarterly period ended December 31, 2022 and the announcement of the related financial results will be delayed due to management identifying impairment indicators, which require additional analysis, late in the financial reporting and closing process. Due to the time required to complete this process, the Company expects it will file its second quarter financial results in mid-March 2023 following the filing of the Amended Q1 10-Q. A copy of the press release is furnished as Exhibit 99.1 hereto and incorporated herein by reference."  Defendants deny paragraph 84 to the extent it mischaracterizes any statement in the Form 8-K.

85.    Responding to the allegations in paragraph 85, Defendants admit that attached to the February 8, 2023 Form 8-K were two press releases that also issued on February 8, 2023. Defendants further admit that one press release was titled: "Vintage Wine Estates to Restate First Quarter Fiscal 2023 Financial Statements; Announces Preliminary Unaudited/Unreviewed Second

Quarter Fiscal 2023 Financial Results." Defendants further admit that the press release stated, in part:

> **INCLINE VILLAGE, NV, February 8, 2023 –** Vintage Wine Estates, Inc. (Nasdaq: VWE and VWEWW) ("VWE" or the "Company"), one of the top wine producers in the U.S. with an industry leading direct-to-consumer platform, today announced that it plans to restate its previously issued consolidated financial statements for first quarter fiscal 2023 which ended September 30, 2022. The restatement relates to the misclassification and accounting for certain assets and also the timing of recording certain costs. These required adjustments were identified by the Company's finance team in the process of closing the second quarter fiscal 2023.
>
> Preliminary indications from the Company's evaluation are that the restatement is expected to result in an increase in net revenue of $0.7 million, an increase in cost of goods sold in the first quarter of fiscal 2023 by approximately $2.9 million and a decrease in selling, general & administrative expenses of $0.6 million; resulting in a $0.8 million decline in net income. After giving effect to this change, diluted earnings per share allocable to common stockholders for the first quarter fiscal 2023 as previously reported will be reduced from $0.02 to $0.00. In addition, current assets decreased $1.3 million and current liabilities increased $0.5 million.
>
> The Company intends to amend and file its first quarter 2023 10-Q as soon as practical. Investors should no longer rely upon the Company's previously released financial statements for the first quarter of fiscal 2023. Similarly, related press releases, earnings releases, and investor communications describing the Company's financial statements for that period should no longer be relied upon.
>
> **Postponement of Second Quarter Fiscal 2023 Financial Results Release and Conference Call and Preliminary Unaudited Financial Results**
>
> The filing of the Company's second quarter fiscal 2023 results will be delayed due to the Company's management identifying impairment indicators, which require additional analysis, late in the financial reporting and closing process. The Company believes that due to the time required to complete this process, it now currently expects it will be filing its second quarter financial results in mid-March following the filing of its first quarter 2023 amended 10-Q.

Defendants deny paragraph 85 to the extent it mischaracterizes any statement in the press release.

86.     Responding to the allegations in paragraph 86, Defendants admit the other press release accompanying Vintage Wine's February 8, 2023 Form 8-K was titled: "Vintage Wine Estates Announces Changes in Executive Leadership and Board Structure; Executing Business Realignment Plan to Deliver Stronger Earnings Power." Defendants further admit that the press release stated, in part:

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

- 14 -

**INCLINE VILLAGE, NV, February 8, 2023 –** <u>Vintage Wine Estates, Inc</u>. (Nasdaq: VWE and VWEWW) ("VWE" or the "Company"), one of the top wine producers in the U.S. with an industry leading direct-to-consumer platform, today announced that Pat Roney, Founder of Vintage Wine Estates, has elected to transition from Chief Executive Officer to Executive Chairman of the Board of Directors. The Board has initiated a comprehensive search process to identify a replacement CEO. In the interim and until a successor is named, the Board has appointed Jon Moramarco, independent director, as Interim CEO, effective immediately. Paul Walsh, who has been Chairman of the Board, will assume the role of Independent Lead Director. Terry Wheatley, President of VWE, will continue in her role leading the sales and marketing efforts of the Company including distributor network relationship management. Together with Kris Johnston, Chief Financial Officer and Zach Long, Chief Operations Officer, they will maintain responsibility for continuity of personnel and day-to-day operations. The Company also announced that it has retained Arthur Bert, a corporate strategy and acquisition integration advisor, to assist in the reorganization and simplification of VWE. Mr. Bert was previously the Managing Director – Global Corporate Strategy and M&A Practice Lead for Accenture and prior to that was the M&A practice lead at A.T. Kearney.

Paul Walsh, Lead Independent Director, commented, "Pat successfully grew VWE over the last 20 plus years and we have greatly appreciated his contributions as we advanced VWE as a public company. We have mutually determined that his role as CEO has changed significantly since our IPO, adding a complex dimension to his responsibilities, and taking him from what he has truly enjoyed. It was critical that the Board make the necessary leadership changes to find the right talent to continue to execute our strategy while maintaining the years of institutional knowledge and industry relationships that Pat has to offer. As a result, we have implemented our succession plan and have begun a search for a new CEO. We are fortunate to have Jon take on this interim role given his deep understanding of the wine industry combined with his financial and managerial skills. Importantly as well, we have the bench strength and leadership skills of Terry, Kris, and Zach who can drive the organization to execute our plans for change."

Defendants deny paragraph 86 to the extent it mischaracterizes any statement in the press release.

87.     Responding to the allegations in paragraph 87, Defendants admit that on February 9, 2023, Vintage Wine's stock price fell from the prior day's close of $2.79 per share to close at $2.02 per share.  Defendants deny the remaining allegations contained in paragraph 87.

88.     Defendants admit the allegations contained in paragraph 88.

**E.     Defendants Violated Generally Accepted Accounting Practices During The Class Period**

- 15 -

89. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89.

90. Responding to the allegations in paragraph 90, Defendants admit that throughout the Class Period, Vintage Wine SEC filings were prepared in accordance with GAAP. Defendants deny the remaining allegations contained in paragraph 90.

91. Defendants deny the allegations contained in paragraph 91.

92. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92.

93. Responding to the allegations contained in paragraph 93, Defendants admit that Vintage Wine recognized a $19.1 million write-down of the value of its inventory in its September 13, 2022 Form 10-K. Defendants further admit that the press release titled "Vintage Wine Estates Revenue Grew 32% to $75.5 Million in Fourth Quarter Fiscal 2022; Fiscal Year 2022 Revenue Increased to $293.8 Million" stated, in part: "Gross profit was down $11.1 million to $38 thousand reflecting adjustments identified through processes implemented to improve internal controls. Specifically, the Company recorded $19.1 million in non-cash inventory adjustments identified through efforts t [*sic*] improve and strengthen inventory management, processes and reporting. This included physical inventory count adjustments of $12.4 million, $3.7 million related to the establishment of inventory reserves and $3.0 million related to the impact of additional remediation efforts." Defendants deny the remaining allegations contained in paragraph 93 and deny any statement in paragraph 93 that mischaracterizes the September 13, 2022 Form 10-K or press release.

94. Responding to the allegations in paragraph 94, Defendants admit that Vintage Wine's press release dated September 13, 2022 stated, in part:

Gross profit was down $11.1 million to $38 thousand reflecting adjustments identified through processes implemented to improve internal controls. Specifically, the Company recorded $19.1 million in non-cash inventory adjustments identified through efforts t [*sic*] improve and strengthen inventory management, processes and reporting. This included physical inventory count adjustments of $12.4 million, $3.7 million related to the establishment of inventory reserves and $3.0 million related to the impact of additional remediation efforts. In addition, the quarter included approximately $6.8 million in overhead burden that was related to the first and second quarter of fiscal 2022, but not material to the respective periods. Also impacting gross profit were inefficiencies created by supply chain

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

constraints and inflation. These impacts were partially offset by gross profit contributions of the acquisitions and improved pricing in DTC.

Kristina Johnston, Chief Financial Officer, commented, "Since joining VWE in March, I have been impressed by this team of very dedicated people who are intent upon executing our strategy to drive growth and deliver on our mission to provide the finest quality wines and create incredible customer experiences. We are now diligently applying this focus and intensity in our financial processes in order to remediate our material weakness. We have instituted improved accountability metrics, updated assumptions for overhead absorption processes better reflecting the current business and created greater discipline around timeliness in reporting throughout the organization. The implementation of more stringent processes drove the adjustments in inventory, but we expect this will also drive greater transparency and better future results for the Company."

The Company has implemented significant change in financial processes and personnel throughout the organization. Changes included more rigorous procedures with inventory management, expanding and upgrading the accounting and finance team, and measurably increased training throughout the organization regarding inventory, reporting and reconciliation procedures. In addition, VWE added a chief information officer to establish and maintain effective governance for information technology controls.

Defendants deny paragraph 93 to the extent it mischaracterizes any statement in the press release.

95.    Defendants deny the allegations contained in paragraph 95.

## V.    DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

96.    Responding to the allegations in paragraph 96, Defendants admit that on October 13, 2021, Vintage Wine filed a Form 10-K with the SEC which Roney and DeVillers each signed. Defendants further admit that the Form 10-K stated, in part:

We have identified a material weakness in our internal control over financial reporting, and if our remediation of such material weakness is not effective, or if we fail to develop and maintain an effective system of disclosure controls and internal control over financial reporting, our ability to produce timely and accurate financial statements or comply with applicable laws and regulations could be impaired.

In the course of our financial close process for the fiscal year ended June 30, 2021, we identified a material weakness in our internal control over financial reporting. A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis. The material weakness identified relates to our process and controls regarding the tracking of costs through the various stages of inventory accounting, particularly as they pertain to bulk wine and spirits. Management concluded

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

that this material weakness arose because we did not have effective business processes and controls to perform reconciliations of certain inventory-related account balances.

Defendants further admit that the Form 10-K stated, in part:

**Material Weakness**

Despite not conducting a formal assessment regarding internal control over financial reporting, management identified the material weakness described below during the fiscal 2021 audit. A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis.

Control Activity—The Company did not have effective business processes and controls to perform reconciliations of certain account balances related to inventory, and the received not invoiced and cellar accruals, on a regular basis.

The Company is actively pursuing resources necessary to remediate this deficiency in an effort to remediate this material weakness. We have engaged third party consultants to assist with business processes and control activities related to inventory and account reconciliations.

Defendants deny paragraph 96 to the extent it mischaracterizes any statement in the Form 10-K.

97.     Defendants deny the allegations contained in paragraph 97.

98.     Defendants admit the allegations contained in paragraph 98.

99.     Defendants deny the allegations contained in paragraph 99.

100.    Defendants admit the allegations contained in paragraph 100.

101.    Defendants deny the allegations contained in paragraph 101.

102.    In responding to the allegations contained in paragraph 102, Defendants admit that on November 15, 2021, Vintage Wine filed a Form 10-Q with the SEC.  Defendants further admit that the Form 10-Q stated, in part:

**Material Weakness in Internal Control Over Financial Reporting**

As previously disclosed in our Annual Report on Form 10-K for the year ended June 30, 2021, during the audit of our fiscal 2021 consolidated financial statements, management identified a material weakness in our internal control over financial reporting relating to business processes and controls to perform reconciliations of certain account balances related to inventory and the received not invoiced and cellar accruals, on a regular basis.

- 18 -

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis.

**Management's Plan to Remediate the Material Weakness**

The Company has developed a comprehensive strategy and is actively pursuing resources necessary to remediate this deficiency in an effort to remediate this material weakness. We are recruiting additional finance staff with expertise in inventory costing and management; engaged a consulting firm to assist the Company in development of improved business processes and control activities; and conducted an assessment of long-term staffing needs to support the Company's organic growth and acquisition strategy. During the first quarter of fiscal 2022, we hired two permanent finance team members with relevant wine industry experience.

**Changes in Internal Control over Financial Reporting**

Other than changes intended to remediate the material weakness noted above, there have been no changes in our internal control over financial reporting during our most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

Defendants further admit that the summary of inventory on September 30, 2021 and June 30, 2021 is derived from the Form 10-Q. Defendants deny the remaining allegations contained in paragraph 102 and deny paragraph 102 to the extent it mischaracterizes any statement in the Form 10-Q.

103. Defendants deny the allegations contained in paragraph 103.

104. Defendants admit the allegations contained in paragraph 104.

105. Defendants deny the allegations contained in paragraph 105.

106. Responding to the allegations contained in paragraph 106, Defendants admit that on February 14, 2022, Vintage Wine filed a Form 10-Q with the SEC. Defendants further admit that Roney and DeVillers signed the Form 10-Q. Defendants further admit that the Form 10-Q stated, in part:

**Material Weakness in Internal Control Over Financial Reporting**

As previously disclosed in our Annual Report on Form 10-K for the year ended June 30, 2021, during the audit of our fiscal 2021 consolidated financial statements, management identified a material weakness in our internal control over financial reporting relating to business processes and controls to perform reconciliations of certain account balances related to inventory and the received not invoiced and cellar accruals, on a regular basis.

- 19 -

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis.

**Management's Plan to Remediate the Material Weakness**

The Company has developed a comprehensive strategy and is actively pursuing resources necessary to remediate this deficiency in an effort to remediate this material weakness. We engaged a consulting firm to assist the Company in the development of improved business processes and control activities; we have hired additional finance staff with expertise in inventory costing and management; we have engaged a consultant to focus specifically on inventory system processes; and we have conducted an assessment of long-term staffing needs to support the Company's organic growth and acquisition strategy. During fiscal 2022, we hired four permanent finance team members with relevant wine industry experience. In addition, the Company hired a Chief Information Officer who has expertise in leading internal business implementations to establish and maintain effective governance for information technology controls.

**Changes in Internal Control over Financial Reporting**

Other than changes intended to remediate the material weakness noted above, there have been no changes in our internal control over financial reporting during our most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

Defendants further admit that the summary of inventory on September 31, 2021 and June 30, 2021 is derived from the Form 10-Q. Defendants deny the remaining allegations contained in paragraph 106 and deny paragraph 106 to the extent it mischaracterizes any statement in the Form 10-Q.

107.	Defendants deny the allegations contained in paragraph 107.

108.	Defendants admit the allegations contained in paragraph 108.

109.	Defendants deny the allegations contained in paragraph 109.

110.	Responding to the allegations contained in paragraph 110, Defendants admit that on May 16, 2022, Vintage Wine filed a Form 10-Q with the SEC. Defendants further admit that Roney and Johnston signed the Form 10-Q. Defendants further admit that the Form 10-Q stated, in part:

**Material Weakness in Internal Control Over Financial Reporting**

As previously disclosed in our Annual Report on Form 10-K for the fiscal year ended June 30, 2021, during the audit of our fiscal 2021 consolidated financial statements, management identified a material weakness in our internal control over financial reporting relating to business processes and controls to perform reconciliations of certain account balances related to

inventory and the received not invoiced and cellar accruals, on a regular basis.

A material weakness is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a possibility that a material misstatement of a company's annual or interim financial statements will not be prevented or detected on a timely basis.

**Management's Plan to Remediate the Material Weakness**

The Company has developed a comprehensive strategy in an effort to remediate this material weakness. We engaged a consulting firm to assist the Company in the continued development of improved business processes and control activities and we have engaged a separate consultant to focus specifically on inventory system processes improvements. During fiscal 2022, we also conducted an assessment of long-term staffing needs to support the Company's organic growth and acquisition strategy. Since this assessment, we have hired nine permanent finance team members with relevant wine industry and accounting process experience. The Company also hired a Chief Information Officer who has expertise in leading internal business implementations to establish and maintain effective governance for information technology controls. Additionally, on March 7, 2022, the Company appointed Kristina L. Johnston as Chief Financial Officer of the Company. The Company believes Ms. Johnston's experience with public company internal controls and accounting processes, as well as her significant leadership experience will further enhance our internal control environment.

**Changes in Internal Control over Financial Reporting**

Other than changes intended to remediate the material weakness noted above, there have been no changes in our internal control over financial reporting during our most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

Defendants further admit that the summary of inventory on March 31, 2022 and June 30, 2021 is derived from the Form 10-Q. Defendants deny the remaining allegations contained in paragraph 110 and deny paragraph 110 to the extent it mischaracterizes any statement in the Form 10-Q

111. Defendants deny the allegations contained in paragraph 111.

112. Defendants admit the allegations contained in paragraph 112.

113. Defendants deny the allegations contained in paragraph 113.

114. Responding to the allegations in paragraph 114, Defendants admit that on September 13, 2022, Vintage Wine filed a Form 10-Q with the SEC. Defendants further admit that Roney and Johnston signed the Form 10-Q. Defendants further admit that the summary of net

- 21 -

revenue, cost of revenue, and net income were derived from the Form 10-Q. Defendants deny paragraph 114 to the extent it mischaracterizes any statement in the Form 10-Q.

115. Defendants deny the allegations in paragraph 115.

116. Defendants admit the allegations contained in paragraph 116.

117. Defendants deny the allegations contained in paragraph 117.

## VI.    ADDITIONAL SCIENTER ALLEGATIONS

118. Defendants deny the allegations contained in paragraph 118.

119. Defendants deny the allegations contained in paragraph 119.

### 1.    The Individual Defendants Were Actively Involved In Running The Business And Were Certainly Aware Of The Facts That Were Central To Vintage Wine's Business

120. Responding to the allegations contained in paragraph 120, Defendants admit that the Defendants were involved in the day-to-day operations of Vintage Wine when they were employed by Vintage Wine. Defendants also admit that Vintage Wine produced a popular wine brand Bar Dog, which Vintage Wine focused on growing. Defendants deny that Vintage Wine's public filings describe Roney as "hands-on in every aspect of the wine and spirits business." Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 120.

121. Responding to the allegations contained in paragraph 121, Defendants admit that Roney was generally involved in decisions on which brands to develop. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 121.

122. Responding to the allegations in paragraph 122, Defendants admit that certain expenditures needed prior approval by DeVillers. Defendants further admit that DeVillers had authority to approve or deny these requests. Defendants deny DeVillers was highly knowledgeable about specific costs of goods sold or inventory value, but admits that DeVillers was generally knowledgeable about costs and inventory. Defendants lack knowledge or information sufficient to respond to the remaining allegations contained in paragraph 122.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

123. Responding to the allegations contained in paragraph 123, Defendants admit that a major portion of Vintage Wine's business was the production and sale of wine. Defendants deny the remaining allegations contained in paragraph 123.

**2. The Fact That The Individual Defendants Were Aware Of Weaknesses In The Company's Internal Control Further Supports Their Scienter**

124. Responding to the allegations contained in paragraph 124, Defendants admit that on September 29, 2021, Vintage Wine filed a Form 12b-25 (providing notice of late filing of its Form 10-K) which stated, in part:

> Vintage Wine Estates, Inc. ("VWE" or the "Company") is unable to file its Annual Report on Form 10-K for the fiscal year ended June 30, 2021 (the "Form 10-K") within the prescribed time period without unreasonable effort or expense due to personnel shortages, the untimely death of a key staff member and turnover in the Company's finance and accounting department, which circumstances encumbered the Company's efforts to complete its year-end procedures as originally scheduled.

> During its financial close process, the Company identified a material weakness in its internal control over financial reporting relating to the process and controls surrounding inventory. Specifically, the Company did not have effective business processes and controls to perform reconciliations of certain inventory-related account balances. The Company is preparing the required Form 10-K disclosures with respect to the identified material weakness and has discussed the material weakness with the Audit Committee of the Company's Board of Directors and the Company's independent registered public accounting firm, Moss Adams LLP. The Company is actively pursuing resources necessary to remediate this material weakness.

Defendants deny the remaining allegations contained in paragraph 124 and deny paragraph 124 to the extent it mischaracterizes any statement in the Form 12b-25.

125. Defendants deny the allegations contained in paragraph 125.

126. Defendants deny the allegations contained in paragraph 126.

**3. The Full Truth Was Only Revealed After Long-Standing Management Of Vintage Wine Were Removed From Their Positions**

127. Responding to the allegations contained in paragraph 127, Defendants admit DeVillers served as Vintage Wine's CFO from August 2018 until March 2022. Defendants further admit that DeVillers then served as Vintage Wine's Executive Vice President of Acquisition Integrations until January 2023. Defendants further admit that Roney was Vintage Wine's co-

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

founder and served as Vintage Wine's CEO from 2007 until he resigned in 2023. Defendants further admit that Vintage Wine's press release dated February 8, 2023 stated, in part:

> **INCLINE VILLAGE, NV, February 8, 2023 –** <u>Vintage Wine Estates, Inc</u>. (Nasdaq: VWE and VWEWW) ("VWE" or the "Company"), one of the top wine producers in the U.S. with an industry leading direct-to-consumer platform, today announced that Pat Roney, Founder of Vintage Wine Estates, has elected to transition from Chief Executive Officer to Executive Chairman of the Board of Directors. The Board has initiated a comprehensive search process to identify a replacement CEO. In the interim and until a successor is named, the Board has appointed Jon Moramarco, independent director, as Interim CEO, effective immediately. Paul Walsh, who has been Chairman of the Board, will assume the role of Independent Lead Director. Terry Wheatley, President of VWE, will continue in her role leading the sales and marketing efforts of the Company including distributor network relationship management. Together with Kris Johnston, Chief Financial Officer and Zach Long, Chief Operations Officer, they will maintain responsibility for continuity of personnel and day-to-day operations. The Company also announced that it has retained Arthur Bert, a corporate strategy and acquisition integration advisor, to assist in the reorganization and simplification of VWE. Mr. Bert was previously the Managing Director – Global Corporate Strategy and M&A Practice Lead for Accenture and prior to that was the M&A practice lead at A.T. Kearney.
>
> Paul Walsh, Lead Independent Director, commented, "Pat successfully grew VWE over the last 20 plus years and we have greatly appreciated his contributions as we advanced VWE as a public company. We have mutually determined that his role as CEO has changed significantly since our IPO, adding a complex dimension to his responsibilities, and taking him from what he has truly enjoyed. It was critical that the Board make the necessary leadership changes to find the right talent to continue to execute our strategy while maintaining the years of institutional knowledge and industry relationships that Pat has to offer. As a result, we have implemented our succession plan and have begun a search for a new CEO. We are fortunate to have Jon take on this interim role given his deep understanding of the wine industry combined with his financial and managerial skills. Importantly as well, we have the bench strength and leadership skills of Terry, Kris, and Zach who can drive the organization to execute our plans for change."

Defendants deny the remaining allegations contained in paragraph 127 and deny paragraph 127 to the extent it mischaracterizes any statement in the press release.

128. Defendants deny the allegations contained in paragraph 128.

**4.      Defendants' Violations Of Basic Accounting Guidelines Further Support Scienter**

129. Responding to the allegations contained in paragraph 129, Defendants admit that Vintage Wine was required to comply with GAAP in certain circumstances. Defendants lack

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 129.

130.   Defendants deny the allegations contained in paragraph 130.

131.   Responding to the allegations contained in paragraph 131, Defendants admit that GAAP rules and regulations have importance for public companies.   Defendants deny the remaining allegations contained in paragraph 131.

### 5.   Corporate Scienter And *Respondeat Superior*

132.   Defendants deny the allegations contained in paragraph 132.

## VII.   LOSS CAUSATION

133.   Defendants deny the allegations contained in paragraph 133.

134.   Responding to the allegations contained in paragraph 134, Defendants admit that certain of Vintage Wine's financial information was disclosed on September 13, 2022 and February 8, 2023.  Defendants deny the remaining allegations contained in paragraph 134.

135.   Responding to the allegations contained in paragraph 135, Defendants admit that Vintage Wine's press release dated September 13, 2022 stated, in part:

> Gross profit was down $11.1 million to $38 thousand reflecting adjustments identified through processes implemented to improve internal controls. Specifically, the Company recorded $19.1 million in non-cash inventory adjustments identified through efforts t [*sic*] improve and strengthen inventory management, processes and reporting. This included physical inventory count adjustments of $12.4 million, $3.7 million related to the establishment of inventory reserves and $3.0 million related to the impact of additional remediation efforts. In addition, the quarter included approximately $6.8 million in overhead burden that was related to the first and second quarter of fiscal 2022, but not material to the respective periods. Also impacting gross profit were inefficiencies created by supply chain constraints and inflation. These impacts were partially offset by gross profit contributions of the acquisitions and improved pricing in DTC.

Defendants admit that on September 14, 2022, the price of Vintage Wine stock fell from the prior day's close of $5.53 per share to close at $3.30 per share.   Defendants deny the remaining allegations contained in paragraph 135 and any allegation contained in paragraph 135 that mischaracterizes any statement in the September 13, 2022 press release.

136.   Responding to the allegations in paragraph 136, Defendants admit the Form 8-K Vintage Wine filed on February 8, 2023 stated, in part: "On February 8, 2023, the Company issued

- 25 -

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

a press release announcing, among other things, that the filing of the Company's Quarterly Report on Form 10-Q for the quarterly period ending December 31, 2022 and the announcement of the related financial results will be delayed due to management identifying impairment indicators, which require additional analysis, late in the financial reporting and closing process. Due to the time required to complete this process, the Company expects it will file its second quarter financial results in mid-March 2023 following the filing of the Amended Q1 10-Q. A copy of the press release is furnished as Exhibit 99.1 hereto and incorporated herein by reference."  Defendants further admit that a press release accompanying Vintage Wine's February 8, 2023 Form 8-K stated, in part:

> **INCLINE VILLAGE, NV, February 8, 2023 –** Vintage Wine Estates, Inc. (Nasdaq: VWE and VWEWW) ("VWE" or the "Company"), one of the top wine producers in the U.S. with an industry leading direct-to-consumer platform, today announced that Pat Roney, Founder of Vintage Wine Estates, has elected to transition from Chief Executive Officer to Executive Chairman of the Board of Directors. The Board has initiated a comprehensive search process to identify a replacement CEO. In the interim and until a successor is named, the Board has appointed Jon Moramarco, independent director, as Interim CEO, effective immediately. Paul Walsh, who has been Chairman of the Board, will assume the role of Independent Lead Director. Terry Wheatley, President of VWE, will continue in her role leading the sales and marketing efforts of the Company including distributor network relationship management. Together with Kris Johnston, Chief Financial Officer and Zach Long, Chief Operations Officer, they will maintain responsibility for continuity of personnel and day-to-day operations. The Company also announced that it has retained Arthur Bert, a corporate strategy and acquisition integration advisor, to assist in the reorganization and simplification of VWE. Mr. Bert was previously the Managing Director – Global Corporate Strategy and M&A Practice Lead for Accenture and prior to that was the M&A practice lead at A.T. Kearney.
>
> Paul Walsh, Lead Independent Director, commented, "Pat successfully grew VWE over the last 20 plus years and we have greatly appreciated his contributions as we advanced VWE as a public company. We have mutually determined that his role as CEO has changed significantly since our IPO, adding a complex dimension to his responsibilities, and taking him from what he has truly enjoyed. It was critical that the Board make the necessary leadership changes to find the right talent to continue to execute our strategy while maintaining the years of institutional knowledge and industry relationships that Pat has to offer. As a result, we have implemented our succession plan and have begun a search for a new CEO. We are fortunate to have Jon take on this interim role given his deep understanding of the

- 26 -

wine industry combined with his financial and managerial skills. Importantly as well, we have the bench strength and leadership skills of Terry, Kris, and Zach who can drive the organization to execute our plans for change."

Defendants further admit that on February 9, 2023, Vintage Wine's stock price fell from the prior day's close of $2.79 per share to close at $2.02 per share.   Defendants deny the remaining allegations in paragraph 136 and deny paragraph 136 to the extent it mischaracterizes any statement in the Form 8-K or in the press release.

137.   Defendants deny the allegations contained in paragraph 137.

## VIII.   CLASS ACTION ALLEGATIONS

138.   The allegations contained in paragraph 138 constitute legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that Plaintiffs have brought a purported class action, but deny Plaintiffs are entitled to any relief.

139.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 139.

140.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 140.

141.   Defendants deny the allegations contained in paragraph 141.

142.   Defendants deny the allegations contained in paragraph 142.

143.   Defendants deny the allegations contained in paragraph 142.

## XI.   FRAUD ON THE MARKET

144.   Defendants deny the allegations contained in paragraph 144.

145.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 145.

146.   Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 146.

147.   Defendants deny the allegations contained in paragraph 147.

## X.   NO SAFE HARBOR

148.   Defendants deny the allegations contained in paragraph 148.

- 27 -

149.   Defendants deny the allegations contained in paragraph 149.

150.   Defendants deny the allegations contained in paragraph 150.

151.   Defendants deny the allegations contained in paragraph 151.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Against All Defendants)**

152.   Defendants repeat and re-allege each and every response contained above as if fully set forth herein.

153.   The allegations contained in paragraph 153 constitute a legal conclusion to which no response is required.   However, to the extent a response is required, Defendants admit that Plaintiffs' asserted claim is based upon Section 10(b) of the Exchange Act and Rule 10b-5 promulged thereunder.   Defendants deny Plaintiffs are entitled to any relief.

154.   Defendants deny the allegations contained in paragraph 154.

155.   Defendants deny the allegations contained in paragraph 155.

156.   Defendants deny the allegations contained in paragraph 156.

157.   Defendants deny the allegations contained in paragraph 157.

158.   Defendants deny the allegations contained in paragraph 158.

159.   Defendants deny the allegations contained in paragraph 159.

160.   Defendants deny the allegations contained in paragraph 160.

161.   Defendants deny the allegations contained in paragraph 161.

162.   Defendants deny the allegations contained in paragraph 162.

163.   Defendants deny the allegations contained in paragraph 163.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

164.   Defendants repeat and reallege each and every allegation contained above as if fully set forth herein.

165.   Defendants deny the allegations contained in paragraph 165.

166.   Defendants admit the allegations contained in paragraph 166.

167.   Defendants deny the allegations contained in paragraph 167.

- 28 -

168. Defendants deny the allegations contained in paragraph 168.

169. Defendants deny the allegations contained in paragraph 169.

170. Defendants deny each and every allegation contained in Plaintiffs' Second Consolidated Amended Class Action Complaint that is not expressly admitted herein.

## XI.   PLAINTIFFS' PRAYER FOR RELIEF

171. Defendants deny that Plaintiffs are entitled to any relief. Defendants ask that Plaintiffs take nothing by way of their complaint.

## XII.   DEMAND FOR TRIAL BY JURY

172. Defendants demand a jury trial on all issues so triable to a jury.

## XIII.   AFFIRMATIVE DEFENSES

1. Defendants did not make a misstatement or omission of material fact.

2. Defendants did not, and in the exercise of reasonable care could not have known, that any statement made by Defendants contained an untrue statement of material fact or an omission of a material fact necessary in order to make the statement, in light of the circumstances under which they were made, not misleading.

3. Defendants lack the requisite scienter, including specific intent to deceive, and/or willfulness, necessary to establish a violation of the securities laws.

4. Defendants are not liable because they acted in good faith at all times, and any alleged misrepresentation or omission by Defendants was based on good faith and in reasonable reliance upon information provided by others upon whom Defendants were entitled to rely.

5. Defendants are not liable because any alleged misrepresentations by Defendants were forward-looking statements accompanied by meaningful cautionary language and/or risk disclosures and are not actionable under the safe harbor provisions of the Private Securities Litigation Reform Act of 1995, and/or are not actionable under the bespeaks caution doctrine.

6. Plaintiffs' claims are barred, in whole or in part, because the alleged misstatements and omissions were non-actionable expressions of opinion.

7. Plaintiffs' claims are barred, in whole or in part, because the allegedly undisclosed material facts were publicly known.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

- 29 -

8.      Plaintiffs' claims are barred, in whole or in part, because they did not actually rely, or did not reasonably rely, on any statement or omission by Defendants.  Further, Plaintiffs are not entitled to any presumption of reliance.

9.      Plaintiffs' claims are barred, in whole or in part, and/or Plaintiffs are not entitled to a presumption of reliance, because the purported misstatements or omissions alleged in the Second Amended Class Action Complaint did not impact the market price of Vintage Wine's securities.

10.     Plaintiffs cannot demonstrate that any alleged conduct or inaction of Defendants caused the losses for which Plaintiffs seek to recover damages.

11.     Plaintiffs have not demonstrated loss causation.

12.     Plaintiffs' claims are improperly brought, and cannot be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

13.     The putative class period is overbroad and, therefore, many of the alleged putative class members are not entitled to any recovery.

14.     Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs or any person on whose behalf they purport to act, did not purchase or sell Vintage Wine securities to the relevant time period, and/or because Plaintiffs otherwise lack standing.

///

///

///

///

///

///

///

///

///

///

///

///

- 30 -

## XIV.   DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, Defendants deny any and all liability and demand judgment in their favor and dismissal of Plaintiffs' Second Amended Class Action Complaint with prejudice, together with such other relief as the court deems just and proper.

Dated: May 9, 2025                           Respectfully submitted,

                                             SNELL & WILMER L.L.P.


                                             By:  */s/ Richard C. Gordon*
                                                  Richard C. Gordon (Nevada Bar #9036)
                                                  Brian R. Reeve (Nevada Bar #10197)
                                                  1700 South Pavilion Center Drive, Suite 700
                                                  Las Vegas, Nevada 89135-1865

                                                  Joseph G. Adams
                                                  *(Pro Hac Vice Forthcoming)*
                                                  Zachary G. Schroeder
                                                  *(Pro Hac Vice Forthcoming)*
                                                  SNELL & WILMER L.L.P.
                                                  1 East Washington Street, Suite 2700
                                                  Phoenix, Arizona 85004

                                                  *Attorneys for Defendants Patrick Roney,*
                                                  *Katherine Devillers, and Kristina Johnson*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2025, I electronically transmitted the foregoing **ANSWER TO SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

*/s/ Laurie McConnell*
An employee of Snell & Wilmer L.L.P.

Snell & Wilmer
L.L.P.
LAW OFFICES
1700 South Pavilion Center Drive, Suite 700
Las Vegas, Nevada 89135-1865
702.784.5200

- 32 -