Andrew R. Muehlbauer
Nevada Bar No. 10161
 *andrew@mlolegal.com*
MUEHLBAUER LAW OFFICE, LTD.
7915 West Sahara Ave., Suite 104
Las Vegas, Nevada 89117
Tel: (702) 330-4505
Fax: (702) 825-0141

*Liaison Counsel for Lead Plaintiffs*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARILYN EZZES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VINTAGE WINE ESTATES, INC., PATRICK RONEY, KATHERINE DEVILLERS, and KRISTINA JOHNSTON,<br><br>Defendants. | Case No. 2:22-cv-01915-GMN-DJA<br><br>**STIPULATION AND [~~PROPOSED~~] ORDER REGARDING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD-COPY DOCUMENTS** |

1.      **PURPOSES AND LIMITATIONS**

Discovery requests and subpoenas served in the Action may call for the production of electronically stored information.  Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulated Order Regarding the Production of Electronically Stored Information ("ESI") and Hard-Copy Documents ("ESI Protocol").

Unless otherwise agreed to or directed by the Court, each Party will bear the costs of collecting, processing, and reviewing Documents in that Party's possession, custody, or control according to this Protocol.

Nothing in this Protocol shall be construed to affect the discoverability, admissibility or confidentiality of any Document. All objections to the discoverability, admissibility, or confidentiality of any Document are preserved and may be asserted at any time in accordance with the applicable Federal Rules of Evidence, Federal Rules of Civil Procedure, and/or Local Rules.

Each production of ESI shall be accompanied by correspondence indicating the Bates range and any applicable passwords.

To the extent any of the provisions of this Protocol generate any undue or unanticipated burden on the Producing Party, the Parties will confer in good faith to consider all reasonable alternatives to any such provision

The Parties do not intend by this protocol to waive their rights to  any applicable attorney-client privilege or work product doctrine,, and there is no intent by this ESI Protocol, or the production of documents in accordance with this ESI Protocol, to in any way waive or weaken these privileges.  Documents produced are protected and covered by the Stipulated Protective Order entered by the Court in this Action ("Protective Order"), and orders of the Court effectuating same. Nothing in this ESI Protocol will be interpreted to supersede the Protective Order.  This ESI Protocol will govern the search for, processing of, and production of ESI and of Hard-Copy Documents after the execution of this ESI Protocol.

Nothing in this ESI Protocol is intended to limit the Parties' obligations under the Federal Rules of Civil Procedure and this District's local rules.  To the extent any disputes arise related to the production of ESI or Hard-Copy Documents, and those disputes are not addressed by any of the

1

agreements made here, they will be resolved in accordance with the Federal Rules of Civil Procedure, this District's local rules and other applicable orders, laws and rules.

**2.      DEFINITIONS**

2.1      <u>Action</u>: means the above-referenced action.

2.2      <u>Defendants</u>: means Patrick Roney, Katherine DeVillers, and Kristina Johnston.

2.3      <u>Document</u>: has the broadest possible meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A). The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

2.4      <u>Confidentiality Designation</u>: means the "Confidential" legend affixed to Documents, as defined by, and subject to, the terms of the Protective Order.

2.5      <u>Email</u>: means electronic messages sent or received over the Internet using simple mail transfer protocol or internally within an organization's mail service, including, but not limited to, Microsoft Exchange.

2.6      <u>Email Thread</u>: means a single Email conversation that starts with an original Email (the beginning of the conversation) and includes all subsequent replies and forwards pertaining to that original Email.

2.7      <u>ESI</u>: means an abbreviation of "electronically stored information," which has the broadest possible meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A).

2.8      <u>Extracted Text</u>: means text extracted from a Native Format file and includes at least all headers, footers, Document body information, and any hidden text, if available.  The Extracted Text must not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates numbers and Endorsements (except in the cases of redactions).

2.9      <u>Go-Get</u>: means a request to manually retrieve and produce a specifically-identified Document, or small number of Documents.

2.10    <u>Hard-Copy Document</u>: means Documents existing in paper form at the time of collection.

2.11    <u>Hash Value</u>: means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the

characteristics of the data set.  The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.  "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

2.12    Hyperlink: means an HTML link from an electronic Document to another electronic Document, typically activated by clicking on a highlighted word or image on the screen, and includes both the "anchor" text (i.e., the ordinarily visible, clickable text of the hyperlink, often presented in blue in the linking document) and the "target" text (i.e., the ordinarily invisible hypertext containing the Uniform Resource Locator ("URL") for the location of the linked document).

2.13    Instant Messages: means real-time communications sent via chat client, short messaging service ("SMS"), Multimedia Messaging Service ("MMS"), or Rich Messaging Service ("RMS"), including but not limited to: Slack, Microsoft Teams, Google Talk, Google Chat, Google Hangouts, Skype, Facebook Messenger, Instagram Messenger, Signal, Telegram, Snapchat, Discord, WhatsApp, Bloomberg Messenger, WeChat, TikTok, or any similar or proprietary instant messaging system.

2.14    Load File: means an electronic file that is used to import all required production information into a Document database, including, if available, Document images, Extracted Text or OCR text, Native Format files where required by this ESI Protocol, and Metadata, as well as information indicating Document breaks, and Document relationships such as those between an Email or Instant Message and its attachments, and a Document and information related to embedded content.

2.15    Metadata: ESI means (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified,

transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the device on which it was stored, or the custodial data source from which it was collected.  Metadata of the ESI describes, inter alia, the characteristics, origins, usage, and validity of the collected ESI.

2.16    Native Format: means the format of ESI in the application in which such ESI was originally created.

2.17    OCR: means the optical character recognition technology used to read Hard-Copy Documents or electronic images of Documents and output such Documents to a searchable text format.

2.18    Producing Party: means any Party or third-party in the Action that produces Documents.

2.19    Protective Order: means the Confidentiality Stipulation and Protective Order that was entered in this Action, as amended by any subsequent order(s) of the Court.

2.20    Receiving Party: means a Party in the Action to whom Documents are produced.

2.21    Requesting Party:  means a Party that serves a request for production of Documents.

2.22    Responsive Document: means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure and/or Court order.

2.23    Searchable Text: means the text extracted or generated using OCR from any Document that allows the Document to be electronically searched.

2.24    Tagged Image File Format or TIFF: refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

**3.    PRESERVATION AND IDENTIFICATION OF POTENTIALLY RELEVANT INFORMATION AND ESI**

The Parties acknowledge their obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control. Nothing in this ESI Protocol shall affect the Parties' respective preservation obligations imposed by rule or law.

**4.    SEARCH, COLLECTION, & REVIEW**

The Parties will meet and confer in good faith to discuss any methodologies to be employed for the collection and production of Documents in response to any Fed. R. Civ. P. 34 request for production, such as the use of search terms, date ranges, electronic sources, or other filters. Where multiple Email messages are part of a single Email Thread, the Producing Party is required to produce only the most inclusive message and need not produce earlier messages, less inclusive Email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the most inclusive Email Thread. The Parties may use advanced search, analytical, and retrieval technologies like predictive coding or other technology-assisted review ("TAR") in order to prioritize the review of or the grouping of Documents requested or returned from the use of search terms, date ranges, electronic sources, or other filters as agreed to between the Parties, and the Parties agree to meet and confer if any Party believes that the use of predictive searching becomes necessary to limit the review of any Documents. The Producing Party, to the extent search terms are used and the Producing Party is seeking to modify those terms, will upon request undertake reasonable efforts to provide search term reports identifying the "hit" count of Documents per search term, Documents including family per search term, and the unique hit count of Documents per search term. To the extent such "hit" reports must be modified to avoid undue or unanticipated burden in the preparation of those reports, the Parties agree to consider all such reasonable modifications. Nothing in this paragraph requires a Producing Party to reveal information that constitutes attorney-work product in negotiating search terms for ESI searches. The fact that the Parties agree to a search protocol does not preclude a Producing Party from reviewing potentially responsive ESI that is returned by the search protocol to make final

5

determinations as to the responsiveness of the ESI and the privilege and other protections applicable to the ESI.

**5.      PRODUCTION FORMAT**

5.1      <u>Format for Hard-Copy Documents</u>: Except for redacted and logged Documents as described *infra*, the Parties will produce Documents originating from Hard-Copy Documents in CCITT Group IV single-page TIFF format (black and white, 300 dpi). If an original Document contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the Document. Color Documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting to as to preserve legibility. The Parties agree not to degrade the searchability or legibility of Documents as part of the document production process.

5.2      <u>Format for ESI</u>: Except for redacted and logged Documents as described *infra*, the Parties will produce Documents originating as ESI in TIFF format, with the exception of any spreadsheets, audio, video files, and any files that are not easily rendered in TIFF format which shall be produced in Native Format. ESI shall be produced with Extracted Text, along with the metadata fields listed in Exhibit A, where reasonably available. If an original Document contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the Document. Color Documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. TIFFs/JPGs will show any and all text and images, including track changes where applicable, that would be visible to the reader using the native software that created the Document. For example, TIFFs/JPGs of Email messages should include the BCC line, to the extent technically feasible without undue burden. If the image does not accurately reflect the Document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the Parties agree to meet and confer in good faith on production format options. The Parties agree that embedded Documents and hyperlinks need not be extracted as separate Documents, except that if any Party identifies a Document during the review of discovery materials and determines that such extraction for that Document is truly necessary,

6

then upon request, the Producing Party shall in good faith attempt to produce that Document's embedded files as attachments. Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level Document or file is extracted. The Parties will provide a standardized load file.

5.3     De-Duplication and Document Families: The Parties may perform de-duplication of ESI within and across custodians and sources according to MD5 or SHA-1 Hash Values at a family level and may produce only a single copy of identical ESI. De-duplication shall not break up Document families. The custodian associated with the first copy of a Document processed will be considered the primary custodian for that Document (the custodian who will be used as the basis for determining which other collected Documents are duplicates). The Producing Party shall produce an "Other Custodians" metadata field with each production as defined in Exhibit A.If additional Documents are produced after substantial completion of Document discovery, the Receiving Party may request that the Producing Party produce an overlay that provides an updated "Other Custodians" field.

Any Document that contains an alteration, marking on, or addition to the original Document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting or redlining. If a Document with alterations contains color, it need not be produced in color in the first instance. However, the Producing Party will honor reasonable requests for a color image, if color is necessary to understand the meaning or content of the Document. Color Documents shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image.

For purposes of production, and to the extent feasible on an automated, scalable basis with existing technology, responsive Documents should include all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to Email to internal or nonpublic Documents, or other items), with the parent/child relationship preserved, except any family members that are withheld or redacted on the basis of privilege, work product, or other grounds.

The foregoing will not impose on a party any obligation to produce duplicative documents.

7

5.4     Preservation of Parent-Child Relationships: The Parties agree that if any part of an Email or its attachments is responsive, the entire family of Email and attachments will be produced, to the extent feasible on an automated, scalable basis with existing technology, except any family members that must be withheld or redacted on the basis of privilege, work product, or other grounds. The Parties shall use reasonable efforts to preserve parent-child relationships (the association between an attachment and its parent Document). The Parties will provide a BEGATTACH and ENDATTACH for each produced attachment in the load file, as those terms are defined in Exhibit A. If any member of a Document "family" (e.g., an Email attachment) is withheld as privileged, then the Producing party shall produce a one-page slipsheet TIFF image bearing a unique Bates number and noting that the Document has been withheld as privileged.

5.5     Documents to Be Produced Natively: Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files, video files, audio files, animation files, Power Point and other presentation files, and files that are not easily rendered in to TIFF format shall be produced in native format.  If a Document to be produced in Native Format contains privileged information, the Document will be produced by producing the Document in TIFF format with redactions and OCR text to remove the privileged material from the searchable text.  If excel files contain privileged information the parties may elect to redact the excel file natively provided the redactions made are conspicuous.  Each electronic file produced in Native Format shall be assigned a unique Document Number, and the database record for that file shall include a single page TIFF image branded with this unique Document Number in the lower right corner of the image as a Bates number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page.  To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Protective Order must appear on the associated TIFF placeholder in no less than 10-point font.  Any Party printing the Native File for use in this matter will append and use the placeholder TIFF as a cover sheet to the Native File at all times.  Files produced in Native Format shall be given file names identical to the Document Number, followed by the file extension and include the confidentiality designation after the file number, *e.g.*, VINTAGEWINE0000000001_CONF.xlsx.

5.6     Embedded Files: Files that are embedded in other files ("Embedded Objects"), including email inline images and Microsoft Office embedded images, need not be extracted as separate files and treated as attachments to the parent Document provided that all content contained in the Embedded Object is contained and/or visible within the parent Document, to the extent it is produced.

5.7     Production of Documents in Native Format:  The Parties further agree that to the extent any Party seeks production in Native Format of specifically identified ESI produced originally in TIFF format for good cause shown, the Producing Party shall respond reasonably and in good faith to any such request.

5.8     Attachments: The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege, work-product protection, immunity, or privacy laws.

5.9     Unitization: In scanning paper Documents, each page of paper should be output to a single page TIFF file.  Logical document breaks shall be maintained to the extent reasonably possible and documents will be produced consistent with the manner they were maintained in the ordinary course of business. Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document. The Parties shall make reasonable efforts to unitize the Documents in accordance with this paragraph, but recognize that certain Documents and categories of Documents might not reasonably be scanned to comply.

5.10    Bates Numbering: The Parties shall assign a Bates number to individual pages of TIFF Documents and a Bates number to each Document produced in Native Format. Bates numbers shall be unique across the entire document production and sequential within a given Document. All volumes of production from a Producing Party shall be identified by the same Bates prefix and a numerical sequence. Re-produced Documents shall include their original Bates numbers, if any.

5.11    Confidentiality Designations: If a Document or other ESI has a confidentiality designation, the designation shall be stamped on the face of all TIFF images pertaining to such Document pursuant to the Protective Order. If the Receiving Party believes that a confidentiality

9

designation obscures the content of a Document, then the Receiving Party may request that the Document be produced with the confidentiality designation in a different position. For each Document that is marked either "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," a confidentiality field will be populated with the word "Confidential" or the words "Highly Confidential," as the case may be, in the .DAT file.

5.12    Metadata Fields and Processing: ESI will be processed in a manner that preserves the source native file and relevant metadata without modification except as described herein, including any applicable time, date, and time-zone metadata consistent with the requirements provided in this ESI Protocol. ESI items will be produced with all of the metadata and coding fields set forth in Attachment A, to the extent such metadata and coding fields exists and where reasonably feasible. This ESI Protocol does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the Producing Party must populate, where possible, the (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) NativeFileLink fields, if applicable, (g) TextLink, if applicable, (h) redaction status, (i) redaction grounds (e.g., privilege or other), (j) confidentiality designation. These fields, listed at (a)-(j) in the immediately preceding sentence, should be populated for all produced ESI regardless of whether the fields can be populated under an automated process, unless impracticable. To the extent providing these metadata fields is unduly burdensome, the Producing Party will provide notice to the Receiving Party as soon as reasonably practicable prior to production, and the Parties will meet and confer to determine appropriate solutions.

Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted or generated from a Document shall be produced for that Document. All ESI will be collected in a manner that preserves the associated metadata listed in Exhibit A intact, to the extent reasonably feasible. Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. All metadata will be produced in UTF-7 or UTF-8 with Byte Order Mark format. The first line shall be the header with field names, and each subsequent line shall contain the fielded data

for each Document. The Parties also agree that every production of previously unproduced Documents with a Concordance-format delimited file with a .DAT file extension shall contain all of the Metadata field headers and that the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, all Metadata fields will be provided and will include all non-privileged non-redacted data. Redacted Documents shall be identified as such in the Load File provided with the production. Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically accessible. If the Producing Party is unable to produce Metadata for a particular field or ESI Document, it will provide an explanation of that inability with its Document production. The Parties shall then meet and confer to attempt to resolve the problems. With respect to ESI, data on the load file will include the metadata fields set forth in Exhibit A or their equivalents (when reasonably collectable, feasible, and not privileged).

5.13    Original Documents: Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain original and Native Format copies of Documents, including associated Metadata, of all ESI preserved for and produced in the litigation and/or original versions of all Hard Copy Documents preserved for and produced in the litigation. Nothing in this section alters a Party's obligation to retain data pursuant to the Federal Rules of Civil Procedure and/or Court Order.

5.14    Color: Hard-Copy Documents or redacted ESI that contain color necessary to decipher the meaning, context, or content of the Document or ESI shall be produced as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image where reasonably feasible. To the extent any potentially color Documents are produced in black and white, upon reasonable request, the Producing Party will produce additional Documents in color, or will provide the bases for objecting to the Receiving Party's request, within seven (7) days of the Receiving Party's request.

5.15    Lost, Destroyed, or Irretrievable ESI: If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Federal Rule of Civil Procedure 26(b)(2)(B), that Party shall timely identify such ESI with reasonable particularity and shall provide

11

the Receiving Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the likely costs that might be incurred in producing such ESI, the method used for storage of such ESI (*e.g.*, the type of system used to store the ESI) and the places in which such ESI is kept. The Parties shall negotiate in good faith concerning the production of any such ESI. Provided that the parties comply with this Order, the Parties will not seek sanctions against another Party for failing to produce ESI lost inadvertently.

5.16    <u>Third Party Documents and ESI</u>: A Party that issues a subpoena upon any third-party ("Issuing Party") after the execution of this ESI Protocol shall include a copy of this ESI Protocol and the Protective Order with the subpoena and state that the Parties in this Action have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce a copy to all other Parties of any ESI or Hard-Copy Documents (including any metadata) obtained under subpoena to a third party. If a third-party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties. If a member of a document family that has otherwise been determined to be responsive cannot be technically processed (e.g., unsupported file format, file corruption, inaccessible password-protected document) using reasonable efforts, those technical problems shall be identified and disclosed to the receiving party by production of a Bates numbered slip sheet that states "Technical issue—file cannot be processed." A receiving Party thereafter may raise with the Producing Party any questions or concerns, and the Parties shall meet and confer to attempt to resolve any issues.  Nothing herein will impact third-party productions made before the execution of this ESI Protocol.

5.17    <u>Additional Formatting Processes</u>: Any Producing Party may remove non-user-generated files ("De-NIST") from review and production before searching and review using the then-current NIST list published by the National Institute of Standards and Technology.  Additional culling of system files based on file extension may include: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary File (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook

Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers.  To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents or information in an acceptable format, including issues as may arise with respect to obtaining access to any such software.

5.18    Hyperlinked Documents ("Modern Attachments"): The Receiving Party may make reasonable and proportionate requests that the Producing Party conduct a reasonable search for internal or non-public documents identified via hyperlinks.  In such case, the Producing Party shall conduct a reasonable search for the document corresponding with the hyperlink. To the extent possible, the hyperlinked document produced should be the contemporaneous document version that was likely present at the time the underlying Document was sent.  To the extent a Producing Party determines that collection and/or relation back of Hyperlinked Documents from a specific repository might be unduly burdensome, the Requesting and Producing Parties shall meet and confer to negotiate a mutually-agreeable compromise.

5.19    Databases: To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in a database maintained in the normal course of business (e.g., Oracle or SQL databases), the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data in database or delimited text file format, as database reports.

5.20    Exception Files:  The Parties will use commercially reasonable efforts to address Documents that present processing or production problems (including encrypted, unsupported, and/or protected files) ("Exception Files").  A Party is not required in the first instance to produce Exception Files it has been unable to resolve through commercially reasonable efforts.  Exception Files that are attached to produced Documents will be produced as Bates stamped placeholder TIFF bearing a legend indicating the Document is unable to be processed.  If the Parties cannot reach

agreement on the handling of Exception Files through the meet-and-confer process, the matter may be submitted to the Court for resolution.

5.21    Searchable Text: Text will be extracted directly from the native electronic file of ESI unless the Document requires redaction, is an image file or is any other native electronic file that does not contain text to extract or is unable to be extracted (e.g., secured, view only PDFs), in which case, if possible, Searchable Text may be created using OCR.

5.22    Production Media:  The Producing Party will use the appropriate electronic media (secure FTP or other secure file transfer utility, hard drive or other mutually agreeable media) for its production, and will use high-capacity media to minimize associated overhead.  Electronic delivery via secure FTP or other secure file transfer utility will be preferred, and the Producing Party will notify the Requesting Party in cases of non-electronic delivery of any production.  The Producing Party will label any physical media with the Producing Party, media volume name and Bates number range.

## 6.    PROCESSING SPECIFICATIONS

The Producing Party will generate and preserve the MD5 or SHA-1 Hash Values of all ESI based on the Native Format file.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:  Where Documents are not otherwise produced natively, all TIFF images shall display deletions, revisions, tracked changes, comments, and other rich data (including, but not limited to, hidden text, strikethrough text, the identity of the person making the deletion or revision and the date and time thereof, etc.) as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible.  TIFF files will be named according to the corresponding Bates-numbered images.  Page size will be 8.5 x 11 inches, unless in the reasonable judgment of the Producing Party, a particular item requires a different page size.    Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions and shall make reasonable efforts for that time zone to be Unified Time Coordinated ("UTC").The Parties agree to

meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

## 7.    REDACTIONS AND PRIVILEGE LOG

The following information may appropriately be redacted:  (1) information subject to the attorney-client privilege, attorney work product doctrine, or other recognized protection or privilege under U.S. law and the law and rules applicable in this Court; (2) personally sensitive or identifiable information: bank and brokerage account numbers; social security numbers and similar identifiers; personal addresses; personal telephone numbers; other personal identifying information; and (3) the names of minor children.  For redacted items that were originally ESI, all metadata fields noted in this Protocol that do not contain privileged or protected information will be provided and will include all non-redacted data. The Parties will produce redacted Documents in TIFF format with corresponding searchable text and associated metadata for the Documents, ensuring the redacted content is fully protected from disclosure. To the extent spreadsheets contain redacted text, the Producing Party shall provide a copy of the native file with redactions. During the course of discovery, the Parties may meet and confer regarding the reasonable basis for any applied redaction.

The Parties agree to provide a privilege log produced and/or supplemented on a rolling basis contemporaneously with each partial production of documents, and in no event later than thirty (30) calendar days after each such logged document is produced (or would have been produced, but for withholding or redaction).  Any claim that produced Documents are covered by the attorney-client privilege, work product doctrine or other applicable privilege or immunity ("Privileged Material"), any belief that such Documents are not Privileged Materials and any challenge to such claim shall be subject to the terms of the Stipulated Protective Order agreed upon by the Parties and entered by the Court.  The Parties shall have no obligation to log communications involving counsel that post-date November 14, 2022 that concern or arise under this litigation.  Furthermore, activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) are protected from disclosure under Federal Rule of Civil Procedure 26(b)(3)(A)-(B) and need not be included in the privilege log.

For each document withheld or redacted, the privilege log shall contain the following information: (i) the date of the document; (ii) the identity of all persons who authored, signed, or otherwise prepared the document; (iii) the identity of all persons designated as addressees or copyees; (iv) a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privileged or immunity; (v) the type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.); and (vi) for redacted documents only, the bates numbers corresponding to the first and last page of any document redacted.  For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log shall contain some indication that the individual is an attorney (for example, an asterisk next to each attorney's name). The parties reserve the right to meet and confer to determine whether a categorical privilege log is appropriate for this Action.

Any e-mail chain (i.e., a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity or any similar claim shall be logged as one document and shall be identified by the top-most e-mail in the chain that is withheld or redacted.  The Parties shall not be required to log identical copies of an e-mail that is included in a chain that has been logged in accordance with this Paragraph.

Relatedly, each member of a family (i.e., e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity, or any similar claim shall be identified on the log separately.

If, after undertaking an appropriate meet-and-confer process, the Parties are unable to resolve any dispute they have concerning the protection of documents for which a claim of disclosure has been asserted, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material.  Any Protected Information submitted to the Court in connection with a challenge to the Disclosing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for in camera review.

16

**8.     LIMITS OF ORDER**

Nothing herein shall preclude any Party from seeking to amend this Order in writing for good cause shown; provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any Parties involved in the dispute.  Nothing herein shall be construed as a representation that a party is in possession, custody or control of any certain type of document or ESI or expands any Party's discovery obligations as provided for in the Federal Rules of Civil Procedure.  Further, nothing herein shall alter or limit rights provided by the Federal Rules of Civil Procedure or otherwise to object to or seek to limit any discovery, including but not limited to the right to object to discovery that imposes an undue burden on a party or to seek to shift or impose costs on the requesting Party for any such discovery.  Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, or by order of the Court.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated:  September 30, 2025                    By: */s/ Andrew R. Muehlbauer*

Andrew R. Muehlbauer
Nevada Bar No. 10161
  *andrew@mlolegal.com*
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Ave., Suite 104
Las Vegas, Nevada 89117
Tel: (702) 330-4505
Fax: (702) 825-0141

Casey E. Sadler (pro hac vice)
  *csadler@glancylaw.com*
Pavithra Rajesh
  *prajesh@glancylaw.com*
John C. Roberts (pro hac vice)
  *jroberts@glancylaw.com*
Amir Soleimanpour
  *asoleimanpour@glancylaw.com*
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: (310) 201-9150
Fax: (310) 201-9160

*Liaison Counsel for Lead Plaintiffs*
*Lead Counsel for Lead Plaintiffs*

Jeffrey C. Block (pro hac vice)

17

*jeff@blockleviton.com*
Jacob Walker
*jake@blockleviton.com*
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Tel: (617) 398-5600
Fax: (617) 507-6020

*Counsel for Additional Plaintiff Michael F. Salbenblatt*

By:  */s/ Joseph G. Adams*

Brian R. Reeve
*breeve@swlaw.com*
**SNELL & WILMER LLP**
1700 S Pavilion Center Dr., Ste 700
Las Vegas, NV 89135
Tel: (702) 784-5200

Richard Gordon
*rgordon@swlaw.com*
**SNELL & WILMER LLP**
3883 Howard Hughes Pkwy
Suite 1100
Las Vegas, NV 89169
Tel: (702) 784-5200

Joseph G. Adams
*jgadams@swlaw.com*
Zachary Schroeder
*zschroeder@swlaw.com*
**SNELL & WILMER LLP**
1 E Washington St, Ste 2700,
Phoenix, AZ 85004-2556
Tel: (602) 382-6000

*Attorneys for Defendants Patrick Roney, Katherine DeVillers, and Kristina Johnston*

**~~[PROPOSED]~~ ORDER**

IT IS SO ORDERED.

Dated:   10/2/2025

_____
Honorable Daniel J. Albregts
United States Magistrate Judge

18

**EXHIBIT A**

| Field Name | Description |
|---|---|
| BEGDOC | Begin Document Bates number |
| ENDDOC | End Document Bates number |
| BEGATTACH | Begin Bates number of family unit |
| ENDATTACH | End Bates number of family unit |
| CUSTODIAN | Individual from whom the Document originated |
| ALL CUSTODIAN | Name of the agreed-upon custodians, in addition to the primary custodian, from whose files the item would have been produced if it had not been de-duplicated |
| FROM | Author of the Email message |
| TO | Recipient(s) of the Email message |
| CC | Recipient(s) of "Carbon Copies" of the Email message |
| BCC | Recipient(s) of "Blind Carbon Copies" of the Email message |
| DOCUMENT SUBJECT | Subject field extracted from the metadata of the native file |
| EMAIL SUBJECT | Subject field extracted from the metadata of an Email file |
| DOCUMENT TITLE | The title of a Document |
| DOCUMENT AUTHOR | Author field extracted from the metadata of the native file |
| FILE EXTENSION | File extension of a Document |
| CREATE DATE | Date file was created |
| CREATE TIME | Time file was created |
| LAST MODIFIED DATE/TIME | Date and time Document was last modified |
| EMAIL SENT DATE/TIME | Date and time Email was sent |
| EMAIL RECEIVED DATE/TIME | Date and time Email was received |
| DATE/TIME APPOINTMENT START | Start date and time of calendar appointment entry |

19

| DATE/TIME APPOINTMENT END | End date of calendar appointment entry |
|---|---|
| TIMEZONEPROCESSED | The originating time zone of the document. |
| TIME ZONE OFFSET | UTC−00:00 |
| LAST EDITED BY | Name of the last person to edit the Document from extracted metadata |
| PGCOUNT | Number of pages in a Document (image records) |
| FILE SIZE | File size in bytes |
| LOGICALPATH | Original logical path location of the Document in the repository from which it was collected. |
| FILE TYPE | File Type: Email, image, spreadsheet, presentation, etc. |
| MD5 HASH | Unique identifier of the file |
| FILE NAME | Original name of the file or subject of Email, including file extension |
| CONFIDENTIALITY | User-generated field that will indicate confidentiality pursuant to the Protective Order (*i.e.*, CONFIDENTIAL or HIGHLY CONFIDENTIAL). Otherwise, blank. |
| REDACTED | YES if applicable. Otherwise, blank. |
| TECHNICAL ISSUE | YES where slip sheet reads "Technical issue—file cannot be processed." Otherwise, blank. |
| TEXTLINK | Contains Path to .TXT files |
| NATIVELINK | Contains Path to native files |

20