Andrew R. Muehlbauer
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Ave., Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
andrew@mlolegal.com

Joseph D. Cohen (*pro hac vice*)
Casey E. Sadler (*pro hac vice*)
John C. Roberts, Jr. (*pro hac vice*)
**GLANCY PRONGAY WOLKE & ROTTER LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
jcohen@glancylaw.com
csadler@glancylaw.com
jroberts@glancylaw.com

*Liaison and Lead Counsel for Plaintiffs and
the Proposed Settlement Class*

*(Additional counsel on the signature page)*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| MARILYN EZZES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>VINTAGE WINE ESTATES, INC., PATRICK RONEY, KATHERINE DEVILLERS, and KRISTINA JOHNSTON,<br><br>Defendants. | Case No. 2:22-cv-01915-GMN-DJA<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS** |

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ............................................................................ 1

II.   BACKGROUND ............................................................................................... 2

     A.    Procedural History of the Action .......................................................... 2

     B.    The Settlement and Proposed Settlement Administration .......................... 5

III.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ....................... 7

     A.    The Ninth Circuit Strongly Favors Settlement ...................................... 7

     B.    The Proposed Settlement is Fair, Adequate, and Reasonable ................... 9

        1.    Plaintiffs and Lead Counsel Adequately Represented the Class ........ 9

        2.    The Settlement Was Negotiated at Arm's Length ........................ 10

        3.    The Relief Provided for the Settlement Class is Adequate ............. 12

          a.    The Settlement Amount is Reasonable ........................... 12

          b.    The Costs, Risks, and Delay of Further Litigation ........... 13

          c.    The Factors Established by Rule 23(e)(2)(C)(ii)-(iv) Support Preliminary Approval ................................................. 15

        4.    The Settlement Treats Class Members Equitably ........................ 17

IV.   CERTIFICATION OF A SETTLEMENT CLASS IS MERITED ............................ 18

     A.    The Settlement Class is Sufficiently Numerous .................................... 19

     B.    Common Questions of Law or Fact Exist ............................................ 19

     C.    Plaintiffs' Claims Are Typical of Those of the Settlement Class ............. 20

     D.    Plaintiffs and Lead Counsel Adequately Represent the Settlement Class .... 20

     E.    The Predominance and Superiority Requirements Are Satisfied ............. 20

     F.    The Court Should Appoint GPWR Class Counsel .................................. 21

V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE ..................................................................................................... 21

VI.   THE PROPOSED SCHEDULE OF EVENTS .................................................... 23

VII.  CONCLUSION .............................................................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................. 18, 21

*Baker v. SeaWorld Ent., Inc.*,
   2020 WL 4260712 (S.D. Cal. July 24, 2020) .................................................................... 13

*Barani v. Wells Fargo Bank, N.A.*,
   2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ...................................................................... 22

*Barnes v. AT&T Pension Benefit Plan*,
   270 F.R.D. 488 (N.D. Cal. 2010) ...................................................................................... 19

*Baron v. HyreCar Inc.*,
   2024 WL 3504234 (C.D. Cal. July 19, 2024) ................................................................. 9, 16

*Becker v. Bank of New York Mellon Tr. Co., N.A.*,
   2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) .................................................................... 16

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ............................................................................................. 19

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) .......................................................................................... 7, 9

*Christine Asia Co. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................................... 17

*City of Birmingham Relief & Retirement System v. Acadia Pharmaceuticals, Inc.*,
   348 F.R.D. 372 (S.D. Cal. 2024) ....................................................................................... 14

*Daniels v. Aria Resort & Casino, LLC*,
   2023 WL 2634613 (D. Nev. Mar. 23, 2023) ...................................................................... 11

*Dent v. ITC Serv. Grp., Inc.*,
   2013 WL 5437331 (D. Nev. Sept. 27, 2013) ....................................................................... 8

*Evans v. Wal-Mart Store, Inc.*,
   2020 WL 886932 (D. Nev. Feb. 24, 2020) ........................................................................... 7

*Fleming v. Impax Lab'ys Inc.*,
   2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ............................................................... 12, 15

*Goldman Sachs Grp., Inc., v. Arkansas Tchr. Ret. Sys.*,
   594 U.S. 113 (2021) ........................................................................................................... 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................. 9, 18, 19

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) .................................................................................. 19

*Hessefort v. Super Micro Comput., Inc.*,
2023 WL 7185778 (N.D. Cal. May 5, 2023) .............................................................. 15

*In re Adobe Sys., Inc. Sec. Litig.*,
139 F.R.D. 150 (N.D. Cal. 1991) ............................................................................. 19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................. 22

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ......................................................... 15

*In re Banc of California Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ........................................................... 16

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ............................................................ 17

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
2015 WL 224631 (S.D. Cal. Jan. 15, 2015) .............................................................. 20

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ............................................................ 11

*In re Cooper Cos. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ............................................................................. 19

*In re Diamond Foods, Inc.*,
295 F.R.D. 240 (N.D. Cal. 2013) ............................................................................. 20

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ...................................................................... 14

*In re Lenovo Adware Litig.*,
2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) ........................................................... 12

*In re Lyft Inc. Sec. Litig.*,
2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ............................................................ 10

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1035 (N.D. Cal. 2008) .................................................................... 14

iii

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)................................................................................................. 16

*In re Regulus Therapeutics Inc. Sec. Litig.*,
    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020).................................................................... 17

*In re Stable Road Acquisition Corp.*,
    2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)................................................................ 9, 17

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008).............................................................................................. 7

*In re Tezos Sec. Litig.*,
    2020 WL 13699946 (N.D. Cal. Aug. 28, 2020)................................................................. 17

*In re Vaxart, Inc. Securities Litigation*,
    738 F. Supp. 3d 1259 (N.D. Cal. 2024) ............................................................................ 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. L*iab. Litig.,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) .................................................................. 17

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)............................................................... 11, 19

*Jaffe v. Morgan Stanley & Co., Inc.*,
    2008 WL 346417 (N.D. Cal. Feb. 7, 2008)....................................................................... 18

*Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ............................................................... 17, 20

*Lusk v. Five Guys Enterprises LLC*,
    2022 WL 4791923 (E.D. Cal. Sept. 30, 2022) .................................................................. 11

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) ............................................................... 10, 20

*Noll v. eBay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) ...................................................................................... 15

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982).......................................................................................... 7, 13

*Perks v. Activehours, Inc.*,
    2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) .................................................................. 10

*Persky v. Turley*,
    1991 WL 329564 (D. Ariz. Dec. 20, 1991)....................................................................... 21

*Riker v. Gibbons*,
2010 WL 4366012 (D. Nev. Oct. 28, 2010)..................................................................... 9

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009)......................................................................................... 14

*Siemer v. Assocs. First Capital Corp.*,
2001 WL 35948712 (D. Ariz. March 30, 2001)............................................................ 19

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)........................................................................................... 7

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021)................................................................. 13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010)....................................................................................... 18

*Wong v. Arlo Techs., Inc.*,
2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ................................................................ 9

**STATUTES**

15 U.S.C. § 78u ....................................................................................................*passim*

**RULES**

Fed. R. Civ. P. 23 .................................................................................................*passim*

**OTHER AUTHORITIES**

Advisory Committee Notes to 2018 Amendments,
324 F.R.D. 904 ............................................................................................................... 8

Court-appointed Lead Plaintiffs Marilyn Ezzes and Jeffrey A. Davies and additional named plaintiff Michael F. Salbenblatt ("Plaintiffs"), individually and on behalf of all members of the proposed Settlement Class, submit this memorandum of law in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement, which seeks: (i) preliminary approval of the proposed Settlement as set forth in the Stipulation and Agreement of Settlement dated April 24, 2026 ("Stipulation"); (ii) preliminary certification of the proposed Settlement Class; (iii) approval of the form and manner of providing notice to Settlement Class Members; and (iv) a hearing date for the Court to consider (a) final approval of the Settlement, (b) approval of the proposed Plan of Allocation, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses (the "Settlement Hearing").[1]

## I.    PRELIMINARY STATEMENT

After more than three years of vigorous litigation, Plaintiffs and Defendants Patrick Roney, Katherine DeVillers and Kristina Johnston (collectively, "Defendants"; and together with Plaintiffs, the "Parties") have reached an agreement to settle this Action, in its entirety, for a non-reversionary cash payment of seven million five hundred thousand dollars ($7,500,000) (the "Settlement"). As discussed below, the Settlement is an excellent result for the Settlement Class under the circumstances, and it was secured in a procedurally fair manner. Moreover, securities class actions are routinely certified for the purpose of effectuating a settlement. Preliminary approval is, therefore, proper under Rule 23(e)(1) of the Federal Rules of Civil Procedure.[2]

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation, which is attached as Exhibit 1 to the Declaration of Casey E. Sadler ("Sadler Decl."). All citations and internal quotation marks are omitted and all emphasis is added unless otherwise indicated.

[2] An agreed upon [Proposed] Order Preliminarily Approving Class Action Settlement and Providing for Notice and Settlement Hearing ("Prelim. Appr. Order" or "Preliminary Approval Order") is attached as Exhibit A to the Stipulation.

## II.    BACKGROUND

### A.    Procedural History of the Action

On September 13, 2022, after the close of trading, Vintage Wine Estates, Inc. ("Vintage Wine" or the "Company") disclosed, among other things, that it had recorded $19.1 million in inventory adjustments. The next day, on September 14, 2022, the price of Vintage Wine stock fell 40.3% on unusually heavy trading volume.

On November 14, 2022, plaintiff Marilyn Ezzes brought this action against Vintage Wine, the Company's former CEO (Patrick Roney), and two of its former CFOs (Katherine DeVillers and Kristina Johnston). ECF No. 1. On November 28, 2022, a second putative securities class action was brought based on similar claims by plaintiff Michael Salbenblatt. The two actions were consolidated on February 14, 2023, and the Court appointed lead plaintiff movants Marilyn Ezzes and Jeffrey A. Davies to serve as Lead Plaintiffs. ECF No. 22. By agreement, Lead Plaintiffs Ezzes and Davies continued to jointly investigate and litigate the Action, along with additional plaintiff Michael Salbenblatt. Plaintiffs filed an amended complaint on May 1, 2023 (the "First Amended Complaint"), which included allegations concerning corrective disclosures on February 8, 2023, delayed Securities and Exchange Commission ("SEC") reporting, forthcoming financial restatements, and the removal of the Company's founder and CEO, Defendant Patrick Roney, from his positions of leadership at the Company. ECF No. 36. Defendants moved to dismiss and Plaintiffs opposed. The First Amended Complaint was dismissed without prejudice on March 1, 2024, with the Court finding the facts alleged failed to provide a strong inference of scienter. ECF No. 45.

Plaintiffs filed the operative complaint (the "Second Amended Complaint") on April 5, 2024. ECF No. 48. Defendants moved to dismiss, Plaintiffs again opposed, and briefing on that motion was completed on July 12, 2024. *See* ECF Nos. 50, 54, and 57. On July 24, 2024, while the motion was pending, defendant Vintage Wine filed a notice of bankruptcy, and Plaintiffs subsequently voluntarily dismissed their claims only as to the Company. *See* ECF Nos. 58-59. On December 13, 2024, the Court denied Defendants motion to dismiss the Second Amended Complaint, finding Plaintiffs had adequately alleged claims strong enough to satisfy the heightened

2

pleading standards of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b). ECF No. 61.

The operative complaint alleges claims against Defendants under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as well as SEC Rule 10b-5, on behalf of a putative class consisting of all individuals and entities that purchased the publicly traded common stock of Vintage Wine between October 13, 2021 and February 8, 2023, inclusive, and were damaged thereby. Specifically, Plaintiffs allege that Defendants misled investors concerning their failure to take significant measures to remediate disclosed material weaknesses concerning inventory balances, that because of the mismanagement of inventory, Vintage Wine's reported inventory did not accurately reflect the value of inventory that was damaged and/or destroyed, and so, the Company's inventory balances were overstated. ECF No. 48. Plaintiffs also alleged that Defendants knew or recklessly disregarded information showing the Company's inventory figures were likely inaccurate, yet they still issued inventory results without disclosing this fact. *Id*. The Second Amended Complaint relied, in part, on statements attributed to former employees serving as confidential witnesses who confirmed the Individual Defendants were aware of both the endemic issues with Vintage Wine's inventory management systems and the Company's inability to maintain accurate records of its inventory – the direct result of which was the restatement of the Company's financial results. *Id*. In summary, Plaintiffs alleged the Company's failure to disclose the full extent of its known inventory management issues and their potential effect on the financial statements while reporting purportedly accurate inventory results constituted "deliberate recklessness" in violation of the securities laws.  Defendants denied that they deliberately or recklessly reported any inaccurate financial information.

Following the denial of the motion to dismiss and the start of discovery, on April 3, 2025, Lead Counsel and Defendants' counsel participated in a full-day, in-person mediation session with their agreed mediator, Jed Melnick, Esq., of JAMS. In advance of that session, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits, which addressed the issues of both liability and damages. The session ended without an agreement being reached.

3

With the denial of the motion to dismiss, the Court lifted the automatic stay of discovery imposed by the PSLRA. *See* 15 U.S.C. § 78u 4(b)(3)(B). On May 9, 2025, the Parties' joint discovery plan was approved by the Court. ECF No. 83. And, the Parties negotiated, and, subject to some modifications, the Court approved, a Stipulated Protective Order Governing the Production, Exchange, and Filing of Confidential Information. ECF Nos. 84-85.

Between May 2025 and December 2025, the Parties conducted far reaching discovery. The Parties exchanged interrogatories and requests for document production. Plaintiffs produced records of transactions in Vintage Wine securities to Defendants. Defendants produced more than 150,000 documents (totaling more than 515,000 pages) to Plaintiffs, including certain of Defendants' emails, text messages, and business records. The Parties also engaged in extensive third-party discovery, including issuing subpoenas *duces tecum* to the Company's former auditors and the Company's trustee in bankruptcy. Plaintiffs obtained from the trustee a copy of a document production that the Company previously made in response to two SEC subpoenas, which consisted of roughly 77,000 documents. Plaintiffs later obtained another 3.1 million documents from the Company's liquidating trustee.

The scope of discovery was fiercely contested. Defendants served their first set of interrogatories and requests for production of documents on May 23, 2025, and Plaintiffs served their responses and objections on June 23, 2025. The Parties engaged in a letter writing campaign to negotiate these requests: Defendants wrote letters on July 2, 2025, and August 6, 2025, and Plaintiffs wrote letters on July 14, 2025, and August 13, 2025. The Parties held a meet and confer on numerous issues on September 3, 2025, including Defendants' first set of document requests, and there were further letters following that, including on September 5, 2025, and September 12, 2025. Plaintiffs amended their responses and objections to the first interrogatories on September 19, 2025. Defendants moved to compel on November 24, 2025. The motion was fully briefed, but remained pending, at the time the agreement in principle to settle the Action was reached.

The Parties participated in a second in-person mediation session with their mediator, Jed D. Melnick, Esq. of JAMS, on December 3, 2025 in White Plains, New York. ECF No. 107. Before the mediation session the Parties exchanged, and provided to Mr. Melnick, briefs detailing their

respective positions on the strengths and weakness of their claims and defenses. *Id*. The full day in-person mediation session did not result in an agreement to settle the Action, but the Parties continued settlement discussions with the mediator in the weeks thereafter while simultaneously litigating the case. *Id*. The mediator issued a proposal to settle the Action for $7.5 million, which all Parties ultimately accepted. *Id*. The Settlement was reached with all Parties well informed and well positioned to evaluate the risks and advantages of Settlement as compared to continuing litigation.

### B.    The Settlement and Proposed Settlement Administration

After  reaching an agreement to settle in principle, the essential terms and conditions of the Settlement were memorialized in a binding and enforceable Term Sheet ("Term Sheet"), which the Parties executed on January 9, 2026.  Thereafter, the Parties negotiated the Stipulation and exhibits thereto.  The Stipulation was executed on April 24, 2026.

Pursuant to the Stipulation, the Parties' agree to, among other things, settle and release all Released Plaintiffs' Claims as against the Released Defendants' Parties in return for a cash payment by or on behalf of Defendants of $7,500,000 (the "Settlement Amount") for the benefit of the Settlement Class, subject to certain terms and conditions. The Settlement requires Defendants cause their D&O Insurers to pay the Settlement Amount into an Escrow Account for the benefit of Settlement Class Members. The Settlement Amount, plus any and all interest earned thereon, constitutes the Settlement Fund.

The Settlement Fund will cover the cost of providing notice to the Settlement Class. Solely for purposes of the Settlement and for no other purpose, Defendants have stipulated and agreed to: (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) certification of Plaintiffs as Class Representative for the Settlement Class; and (c) appointment of Lead Counsel as Class Counsel for the Settlement Class under Rule 23(g) of the Federal Rules of Civil Procedure.

If this Court grants preliminary approval of the Stipulation, a Claims Administrator will be appointed, notice will be provided to Settlement Class Members, and a Settlement Hearing will be scheduled to take place after the distribution of notice. To assist with identifying and providing notice to the Settlement Class, within ten (10) business days after the Court's entry of an order

5

preliminarily approving the Settlement, Defendants will provide to Lead Counsel the contact information in their possession, if any, for any former transfer agent(s) for Vintage Wine publicly traded common stock during the Settlement Class Period. Not later than twenty (20) business days after the date of entry of the preliminary approval order (the "Notice Date"), the Claims Administrator will mail the Postcard Notice, or email a link to the Notice and Claim Form (collectively, the "Notice Packet"), to those Settlement Class Members as may be identified through reasonable effort, and downloadable copies of the Stipulation, Notice, Claim Form and preliminary approval order will be made available online at www.VintageWineSecuritiesSettlement.com (the "Settlement Website"). Additionally, the Summary Notice will be published in *Investor's Business Daily* and transmitted via *PR Newswire* no later than ten (10) business days after the Notice Date.

Settlement Class Members will then have the opportunity to submit claims, object, or, alternatively, opt out of the Settlement Class. Settlement Class Members who wish to participate in the Settlement and to be eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form. The Claims Administrator will receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, to determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants. To the extent a Claim has a curable deficiency, Claimants will be provided with an opportunity to fix the problem.

The Stipulation contemplates that Lead Counsel will apply, on behalf of all Plaintiffs' Counsel, to the Court for an award of attorneys' fees to be paid from the Settlement Fund. Lead Counsel also will apply, on behalf of all Plaintiffs' Counsel, to the Court for reimbursement of Litigation Expenses, which may include a request for reimbursement of Plaintiffs' costs and expenses directly related to their representation of the Settlement Class, to be paid from the Settlement Fund.

Any member of the Settlement Class who wishes to exclude himself, herself or itself from the Settlement Class may submit an opt-out request in the manner described in the Notice. The Notice also instructs Settlement Class Members on how they may submit objections to the

Stipulation, the Plan of Allocation or Lead Counsel's anticipated motion for attorneys' fees and reimbursement of Litigation Expenses.

No later than thirty-five (35) days before the Settlement Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as a request for the award of attorneys' fees and Litigation Expenses. These papers will be posted on the Settlement Website. Any Settlement Class Member who objects to the Settlement or related matters must do so no later than twenty-one (21) calendar days before the Settlement Hearing and must send copies of such objections to the Court, as well as Lead Counsel and Defendants' Counsel. Lead Counsel will file reply papers, if any, no later than seven (7) days before the Settlement Hearing. These provisions and timeline are standard in securities class action settlements.

After claims processing is complete, Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order, which will, *inter alia*: (a) approve the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; and (b) if the Effective Date has occurred, direct payment of the Net Settlement Fund according to the Plan of Allocation to Authorized Claimants.

## III.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    The Ninth Circuit Strongly Favors Settlement

The Ninth Circuit has "repeatedly noted that there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . ."); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation," which is "particularly true in class action suits"); *Evans v. Wal-Mart Store, Inc.*, 2020 WL 886932, at *1 (D. Nev. Feb. 24, 2020) ("There is a strong judicial preference for pre-trial settlement of complex class actions as settlement of class actions is favored as a matter of strong judicial policy.").

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement of claims brought on a class-wide basis. A class action settlement should be approved if the Court finds it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Obtaining approval is a three-step process: (1) the court must provide "preliminary approval of the proposed settlement," (2) notice of the settlement must be provided to all affected class members, and (3) the Court holds a "final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented." *Dent v. ITC Serv. Grp., Inc.*, 2013 WL 5437331, at \*5 (D. Nev. Sept. 27, 2013).

At this stage, Plaintiffs only seek preliminary approval of the Settlement. Preliminary approval should be granted where "the parties[] show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) considers whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

(C) The relief provided for the class is adequate, taking into account:

i. The costs, risks, and delay of trial and appeal;

ii. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

iii. The terms of any proposed award of attorney's fees, including timing of payment; and

iv. Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 919.

These factors are not, however, either exclusive or intended to displace any factors previously adopted by the Courts. *Id.*, 324 F.R.D. 904, 918. Thus, the eight factors that the Ninth

Circuit has traditionally considered (the "*Hanlon* factors"), many of which overlap with Rule 23(e)(2), are still relevant:

> [(1)] The strength of the plaintiffs' case; [(2)] the risk, expense, complexity, and likely duration of further litigation; [(3)] the risk of maintaining class action status throughout the trial; [(4)] the amount offered in settlement; [(5)] the extent of discovery completed and the stage of the proceedings; [(6)] the experience and views of counsel; [(7)] the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Briseño*, 998 F.3d at 1023 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998));[3] *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors."). As discussed below, the proposed Settlement satisfies both the Rule 23(e)(2) factors and the *Hanlon* factors.

### B.  The Proposed Settlement is Fair, Adequate, and Reasonable

#### 1.  Plaintiffs and Lead Counsel Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether Plaintiffs and Lead Counsel have adequately represented the class, which requires a finding that Plaintiffs "[do] not have a conflict of interest" with the class and Plaintiffs are "represented by qualified and competent [lead] counsel." *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *5 (C.D. Cal. July 19, 2024). This overlaps with the sixth *Hanlon* factor, which considers the experience and views of counsel. "The recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010); *see also In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *9 (C.D. Cal. Apr. 23, 2024) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement. This makes sense, as counsel is most closely acquainted with the facts of the underlying litigation.").

Here, Plaintiffs and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement. Plaintiffs' claims are typical of and coextensive with

---

[3] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class. There is no government participant.

9

the claims of the Settlement Class, and they have no antagonistic interests; Plaintiffs' interest in obtaining the largest possible recovery in this Action are aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Plaintiffs worked closely with their counsel throughout the pendency of this Action to achieve the best possible result for themselves and the Settlement Class, including by responding to discovery requests.

Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Plaintiffs' Counsel have successfully prosecuted securities class actions in federal and state courts throughout the country. *See* Sadler Decl., Exs. 3 & 4 (firm résumés of Glancy Prongay Wolke & Rotter LLP ("GPWR") and Block & Leviton LLP, respectively). Plaintiffs' Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation, by conducting an extensive investigation of the claims through a detailed review of publicly available documents about Vintage Wine, as well as contacting former Company employees, drafting the detailed Amended Complaints, fully briefing and prevailing on a motion to dismiss, conducting discovery of Defendants and non-parties, and obtaining a $7.5 million Settlement for the benefit of the Settlement Class through an adversarial mediation process. *See PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPWR] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]"); *see also In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *12 (N.D. Cal. Aug. 7, 2023) (determining that Block & Leviton "litigated this case skillfully and professionally").

### 2.    The Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the Court to consider whether the Settlement was negotiated at arm's length. The fifth *Hanlon* factor (the extent of discovery completed and the stage of the proceedings) is relevant to this analysis. *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021) (stating the factor of whether the settlement was negotiated at arm's

10

length overlaps with the *Hanlon* factor requiring the Court to consider the extent of the discovery completed and the stage of the proceedings).

Here, the Parties participated in two full-day mediation session with Mr. Melnick and weeks of follow up negotiations, which culminated in a mediator's proposal that the Action be settled for $7.5 million. The arm's-length nature of the settlement negotiations and the involvement of a mediator with substantial experience in securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion. *See, e.g.*, *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive."); *see also see also Lusk v. Five Guys Enterprises LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) ("The fact … that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion.").

Moreover, the intermediate stage of the proceedings supports that the negotiations were at arm's length. As detailed above, before reaching the Settlement, the Parties extensively briefed motions to dismiss, engaged in expansive discovery and continued to litigate hotly contested issues concerning the scope of discovery. Further, Plaintiffs received hundreds of thousands of documents from Defendants and third parties during discovery, showing the Parties were well positioned to evaluate the strengths and weaknesses of their respective claims and defenses. That the Parties still could not reach an agreement until several weeks after a second full-day session conducted with the help of the mediator, strongly suggests that the terms of their decision to resolve this Action represents an amount that factors in both the risks of continued litigation and the objective of maximizing the recovery for the Class. *See Daniels v. Aria Resort & Casino, LLC*, 2023 WL 2634613, at *3 (D. Nev. Mar. 23, 2023) (finding "based upon the extent of discovery completed and the current stage of the proceedings," the parties "had a good grasp on the merits of their case before settlement talks," weighing in favor of granting preliminary approval); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the presence of discovery support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement."). Accordingly, this factor favors granting preliminary approval.

### 3.    The Relief Provided for the Settlement Class is Adequate

As set out in greater detail below, the amount offered in the Settlement, the risks posed by continued litigation and the other factors set out in Fed. R. Civ. P. 23(e) also favor preliminary approval.

#### a.    The Settlement Amount is Reasonable

The fourth *Hanlon* factor requires the Court to consider the amount offered in the settlement. "To evaluate whether the settlement amount is adequate, 'courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" *Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (quoting *In re Lenovo Adware Litig.*, 2018 WL 6099948, at *1 (N.D. Cal. Nov. 21, 2018)). "This requires the Court to evaluate the strength of Plaintiffs' case." *Fleming*, 2021 WL 5447008, at *10.

Here, the $7,500,000 Settlement is more than adequate in light of the risks of continuing litigation and the best possible recovery for the Settlement Class. The potential recoverable damages were highly contested throughout the litigation and no recovery was certain. Defendants prevailed in their first attempt to dismiss this Action, and class certification, summary judgment, trial and potential appeals thereafter each posed significant obstacles to a potential recovery and contributed to a high level of litigation risk for the Settlement Class. Under such circumstances, the $7.5 million Settlement, which equates to more than 29% of the estimated potentially recoverable damages attributable to the two statistically significant corrective disclosures identified by Plaintiffs' initial expert analysis, is an exceptional result.

Even assuming Plaintiffs were successful at every outstanding stage of litigation (*i.e.*, Plaintiffs successfully certified the class, defeated a motion for summary judgment, and obtained a jury verdict and judgment for the maximum amount of estimated damages), the Settlement would still fall within the range of reasonableness. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed and the Court accepted Plaintiffs' damages theory, the total *maximum* damages would be approximately $25.64 million. Thus, the $7.5 million Settlement Amount represents approximately 29.2% of the total *maximum* damages *potentially* available, which is more than *five (5) times* the median recovery in securities class actions with similar damages. *See* Sadler Decl., Ex.

12

2 (excepts from Edward Flores, Svetlana Starykh, and Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review*, at 27, Fig. 23 (NERA Jan. 21, 2026) (between January 2016 and December 2025 the median settlement as a percentage of estimated losses was 5.2% for securities class actions with estimated losses between $20-$49 million). And, of course, less than a complete victory on any aspect of the aforementioned assumptions would decrease recoverable damages or eliminate them altogether.

In the light of the risks of continued litigation, the percentage recovery is well within the range of reasonableness. *See Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving securities settlement of 2% of estimated damages as "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements."). Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615, 628 (N.D. Cal. 1982).

### b.  The Costs, Risks, and Delay of Further Litigation

Rule 23(e)(2)(C)(i) requires the Court to consider the adequacy of the Settlement in light of the "costs, risks, and delay of trial and appeal." "[C]ourts consistently acknowledge that securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020). As detailed above, this case was commenced in 2022, the Parties spent more than three years zealously litigating it, and the issues remained hotly contested. Millions of documents were produced and shortly before the Settlement was reached, the Parties briefed the first of what was likely to be several motions concerning the scope of discovery that would need to be resolved *before* fact and expert depositions could be undertaken. Both class certification and summary judgment posed the risk of substantially reducing the maximum recovery to the putative class if not eliminating that possibility outright. The Parties also had not yet begun expert discovery, which would have required the exchange of expert reports and depositions of the experts, and potentially culminated in *Daubert* motions seeking to exclude the opinions of some or all experts.

While Lead Counsel are confident that the Settlement Class meets the requirements for

13

certification, the class has not yet been certified, and there is a risk the Court could disagree. In securities fraud cases specifically, where defendants may use price-impact arguments under *Halliburton Co. v. Erica P. John Fund, Inc.* to defeat the fraud-on-the-market presumption of reliance—and thereby collapse class certification entirely—this certification risk carries particular force. *See, e.g., In re Vaxart, Inc. Securities Litigation*, 738 F. Supp. 3d 1259, 1267-68 (N.D. Cal. 2024) (finding plaintiff-investors in a securities fraud action failed to establish a valid class-wide damages methodology in part related to price impact issues, and denying class certification without prejudice); *City of Birmingham Relief & Retirement System v. Acadia Pharmaceuticals, Inc.*, 348 F.R.D. 372, 385-86 (S.D. Cal. 2024) ("[i]f a misrepresentation had no price impact, then *Basic's* fundamental premise completely collapses, rendering class certification inappropriate.") (quoting *Goldman Sachs Grp., Inc., v. Arkansas Tchr. Ret. Sys.*, 594 U.S. 113, 119 (2021)). Here, Lead Counsel expects that Defendants would have challenged class certification if the case reached that stage. Lead Counsel expected Defendants to argue, *inter alia*, that Plaintiffs could not demonstrate price impact based on a purported lack of statistically significant price movements in response to certain information, and that the market for VWE stock was not efficient at all relevant times, which would foreclose the fraud-on-the-market presumption of reliance. While Plaintiffs would vigorously dispute any such arguments, the risks and uncertainty surrounding class certification support approval of the Settlement. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated."). In short, the risk that the class might not be certified weighs heavily in favor of settlement.

This risk would have persisted through trial as even if the Court were to certify the class, there would still be a risk that the class could be decertified later in the proceedings. *See, e.g., In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (finding district court "did not have to analyze the probabilities that [Defendants]

would seek decertification of the nationwide class and succeed in the endeavor . . . to weigh this factor in favor of the settlement."); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("[a]lthough a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.").

Thus, while Plaintiffs and Lead Counsel are confident in the merits of Plaintiffs' claims, success was not guaranteed, and the road to success remained long and arduous. The issues relating to the Court's initial dismissal were resolved only as a matter of pleading by the Second Amended Complaint—actually proving that Defendants acted with scienter "is complex and difficult to establish at trial." *Hessefort v. Super Micro Comput., Inc.*, 2023 WL 7185778, at *4 (N.D. Cal. May 5, 2023). Further, proving loss causation would have required the Parties to present competing damages expert witnesses, and "in a battle of experts, the outcome cannot be guaranteed." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016). Even if Plaintiffs prevailed at class certification, summary judgment and trial, Defendants would likely have appealed to the Ninth Circuit. The appeal process could easily span several years, meaning, at a minimum, relief for the class after a fully litigated judgment was likely years away. At each step of that process, the class would not receive any relief and face the risk that any award in their favor would be reversed. Thus, the Settlement provides the Settlement Class with a certain, immediate recovery while avoiding these risks, and Plaintiffs and Lead Counsel believe it is in the best interest of the Settlement Class. Accordingly, this factor supports preliminary approval. *See Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *11 (N.D. Cal. Nov. 21, 2021).

### c. The Factors Established by Rule 23(e)(2)(C)(ii)-(iv) Support Preliminary Approval

Under Rule 23(e)(2)(C), the Court also considers (1) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (2) the terms of any proposed award of attorney's fees, including timing of payment; and (3) any agreement required to be identified under Rule 23(e)(3). For the reasons that follow, each of these factors favors preliminary approval.

15

First, the method for processing Settlement Class Members' claims includes well established and effective procedures that are used in virtually all securities class actions. Subject to Court approval, Plaintiffs have selected Strategic Claims Services ("SCS") as the Claims Administrator. Under the supervision of Lead Counsel, SCS will provide notice to Settlement Class Members, update the Settlement Website, respond to inquiries from Settlement Class Members, receive and process claims and requests for exclusion, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[4] *See Becker v. Bank of New York Mellon Tr. Co., N.A.*, 2018 WL 6727820, at \*7 (E.D. Pa. Dec. 21, 2018) (holding that "[t]he requirement that class members submit documentation to substantiate their holdings of the bonds as of the record date will facilitate the filing of legitimate claims, yet is not overly demanding given the range of permissible documentation."); *see also Ivan Baron v. HyreCar Inc. et al.*, 2024 WL 3504234, at \*9 (C.D. Cal. July 19, 2024) (finding nearly identical distribution process "effective" and granting preliminary approval).

Second, as disclosed in the Settlement Notice, Lead Counsel will apply for a percentage of the common fund for attorneys' fees no greater than 33⅓% to compensate counsel for their services rendered on behalf of the Settlement Class. The proposed fee amount is reasonable in light of the work performed and the results obtained, and Courts routinely approve similar fee requests in securities fraud class actions. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at \*1 (C.D. Cal. Mar. 16, 2020) (awarding one-third of a $19.75 million

---

[4] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶32.

16

settlement fund); *In re Tezos Sec. Litig.*, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund). Importantly, approval of the Fee and Expense Application is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to the Fee and Expense Application. *See* Stipulation ¶16.

Third, the Parties have entered into a confidential agreement that establishes conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of Vintage Wine common stock traded during the Settlement Class Period request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Stable Road*, 2024 WL 3643393, at *7; *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019).

#### 4.    The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires the Court to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, and Plaintiffs and the other Settlement Class Members will all receive their payment under the same formula. Accordingly, this factor supports preliminary approval. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *7–8 (S.D. Cal. Oct. 14, 2022) (finding *pro rata* distribution of settlement constituted equitable treatment of class members); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (*pro rata* distribution method of distributing relief "is standard in securities and class actions and is effective").

Plaintiffs' intentions to apply for a service award in the form of payment to reimburse them for the reasonable costs and expenses (including lost wages), are consistent with the Private Securities Litigation and Reform Act. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) ("The PSLRA expressly permits an award of 'reasonable costs and expenses' to 'any representative party serving on behalf of a class.'") (quoting 15 U.S.C. § 78u-4(a)(4)); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020) ("Moreover, the service award Lead Plaintiff seeks is

reasonable and does not constitute inequitable treatment of class members."). The Stipulation does not grant preference to any segment of the Settlement Class and has no obvious deficiencies.

## IV.   CERTIFICATION OF A SETTLEMENT CLASS IS MERITED

The Court should additionally certify the Settlement Class at the preliminary approval stage solely for purpose of facilitating the Settlement, and determine certification of the Settlement Class as part of final approval. *Hanlon*, 150 F.3d at 1019. Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the court must find that at least one of the three conditions of Rule 23(b) is satisfied. *Id.* Under subsection (b)(3), the Court must find the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).

The proposed Settlement Class consists of all persons and entities that purchased the publicly traded common stock of Vintage Wine between October 13, 2021 and February 8, 2023, inclusive, and were damaged thereby. Stipulation, ¶1(ss).[5] As detailed below, this Action satisfies all the factors for certification of a Settlement Class.[6] The Ninth Circuit and numerous courts within the Ninth Circuit have held that class actions are generally favored in securities fraud cases. *See, e.g.*,

---

[5] Excluded from the Settlement Class are: (a) persons and entities that suffered no compensable losses; and (b)(i) Defendants and Vintage Wine; (ii) any person who served as a partner, control person, officer and/or director of Vintage Wine during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Vintage Wine; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which a Defendant is the settlor or which is for the benefit of a Defendant and/or member(s) of their Immediate Family; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, predecessors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

[6] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

*Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).[7]

### A.    The Settlement Class is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is impractical to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Id.* Lead Counsel estimates that there were at least thousands of purchasers of Vintage Wine common stock during the Settlement Class Period. This more than suffices to establish numerosity. *See Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) ("As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.").

### B.    Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to the class members. *Hanlon*, 150 F.3d at 1019. Generally, commonality requires only that "the named plaintiffs share at least one question of fact or law with the grievances of the proposed class." *Siemer v. Assocs. First Capital Corp.*, 2001 WL 35948712, at *14 (D. Ariz. March 30, 2001). This factor is "construed permissively, and [t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Here, Plaintiffs' claims that Defendants violated the federal securities laws by misrepresenting material facts about Vintage Wine's business in publicly disseminated statements during the Settlement Class Period unquestionably raise issues of common interest to the Settlement Class. *See Zynga*, 2015 WL 6471171, at *6.

---

[7] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("Rule 23 is . . . liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.").

### C.       Plaintiffs' Claims Are Typical of Those of the Settlement Class

Like other Settlement Class Members, Plaintiffs allege that they purchased Vintage Wine common stock during the Settlement Class Period and were subsequently damaged due to Defendants' conduct. Similarly, the interest of Plaintiffs in obtaining a fair, reasonable, and adequate settlement of the claims asserted are identical to the interests of the other Settlement Class Members. Accordingly, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### D.       Plaintiffs and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. The adequacy inquiry also factors in competency and conflicts of class counsel." *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

As explained above, Plaintiffs and Lead Counsel are adequate representatives. *See also PPG*, 2019 WL 3345714, at *3 ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding "Lead Counsel has also adequately represented the class. [GPM] has significant experience in securities class action lawsuits.").

### E.       The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Here, common questions predominate—for example, whether Defendants' statements were materially misleading, and whether Defendants acted with scienter. Such questions predominate over individual issues such as the computation of Settlement Class Members' losses, which will be efficiently handled through the

claims administration process. *See Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991) (finding that common issues relating to defendants' alleged misrepresentations predominate even though "[i]n securities claims it is common for the representative's personal claims to differ from the claims of the other class members in such matters as dates of purchase and sale, size of transaction, sophistication of investors and degree of reliance"). A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because damages suffered by most Settlement Class Members would not be sufficient to make it economical to prosecute separate actions. *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]").

### F.	The Court Should Appoint GPWR Class Counsel

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

As described above, the Settlement Class's interests were well represented by counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel devoted hundreds of hours and substantial resources to identifying, investigating, litigating and settling the claims in this matter. The Court should approve the appointment of Lead Counsel to serve as Class Counsel.

### V.	THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE

Plaintiffs propose that the notice and claims process be administered by SCS, an independent settlement and claims administrator with extensive experience handling the administration of securities class actions. SCS was selected after a competitive bidding process, and has reliably administered other securities class actions for Lead Counsel.

The Claims Administrator will mail copies of the Postcard Notice (Stipulation Exhibit A-4), and/or email a link to the Notice and Claim Form, to all Settlement Class Members who can be identified with reasonable effort. The Claims Administrator will also provide notice of the Settlement to brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock, informing such firms of the methods by which notice may be provided to their clients. Copies of the Notice and the Claim Form (Stipulation Exhibits A-1 and A-2) will be posted on the Settlement Website that will be developed for the Settlement, and from which copies of the Notice and Claim Form, and other important documents, can be downloaded, and where claims can be submitted online. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Stipulation Exhibit A-3) will be published in the national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire*.

Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed postcard directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice).

The Court should also approve the form and content of the proposed Notice, Summary Notice, and Postcard Notice. *See* Stipulation, Exhibits A-1, A-3, and A-4. The Notice is written in plain language and clearly sets out all relevant information, including the nature of the Action, the definition of the Settlement Class, and the binding effect of a class judgment on Settlement Class Members. *See* Stipulation Exhibit A-1 at ¶¶1, 11-23, 27, 36-39. The Notice also satisfies the disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). The Notice also discloses the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Claim Forms, requests for exclusion from the Settlement Class, and objections to any aspect of the Settlement, the Plan of Allocation, or Lead Counsel's fee and expense application. *See* Stipulation Exhibit A-1 at ¶¶43, 75-76, 80-87.

## VI.    THE PROPOSED SCHEDULE OF EVENTS

Plaintiffs respectfully propose for the Court's consideration the following schedule of events in connection with the Settlement Hearing, as stated in the proposed Preliminary Approval Order filed herewith. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Settlement Hearing for a date no earlier than one hundred (100) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that the Court need schedule is the date for the final Settlement Hearing. The remaining dates will be determined by the date that the Preliminary Approval Order is entered on and the date that the Settlement Hearing is scheduled for.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's Fee and Expense Application (Prelim. Appr. Order ¶26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests (Prelim. Appr. Order ¶13) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing of objections (Prelim. Appr. Order ¶16) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 100 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the unopposed motion for preliminary approval of the Settlement and enter the proposed Preliminary Approval

23

Order. As this motion is unopposed, Plaintiffs also respectfully request that the Court consider this motion for preliminary approval on the papers.

Dated: April 27, 2026

By: */s/ Andrew R. Muehlbauer*
ANDREW R. MUEHLBAUER, ESQ.
Nevada Bar No. 10161
**MUEHLBAUER LAW OFFICE, LTD.**
7915 West Sahara Ave., Suite 104
Las Vegas, Nevada 89117
Telephone: (702) 330-4505
Facsimile: (702) 825-0141
andrew@mlolegal.com

*Liaison Counsel for Plaintiffs and the Proposed Settlement Class*

**GLANCY PRONGAY WOLKE & ROTTER LLP**
Joseph D. Cohen (*pro hac vice*)
Casey E. Sadler (*pro hac vice*)
John C. Roberts, Jr. (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
jcohen@glancylaw.com
csadler@glancylaw.com
jroberts@glancylaw.com

*Lead Counsel for Plaintiffs and the Proposed Settlement Class*

**BLOCK & LEVITON LLP**
Jeffrey C. Block (*pro hac vice*)
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jeff@blockleviton.com

*Counsel for Additional Plaintiff Michael F. Salbenblatt*

24